# EXHIBIT 1

Common Cause Indiana
vs.
Connie Lawson, et al.

Cause No.: 1:17-cv-3936

Deposition of: J. Bradley King

Date: February 2, 2018



Associated Reporting
251 East Ohio Street, Suite 940
Indianapolis, Indiana 46204
www.associated-reporting.com
(317) 631-0940

```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF INDIANA
                   INDIANAPOLIS DIVISION


INDIANA STATE CONFERENCE OF  )
THE NATIONAL ASSOCIATION FOR )
THE ADVANCEMENT OF COLORED   )
PEOPLE (NAACP) and LEAGUE    )
OF WOMEN VOTERS OF INDIANA,  )
                             )
                 Plaintiffs, )
                             ) Case No. 1:17-cv-02897
         vs.                 )
                             )
CONNIE LAWSON, in her        )
official capacity as         )
Secretary of State of        )
Indiana, J. BRADLEY KING,    )
in his official capacity as  )
Co-Director of the Indiana   )
Election Division, and       )
ANGELA M. NUSSMEYER, in her  )
official capacity as         )
Co-Director of the Indiana   )
Election Division,           )
                             )
                 Defendants. )
```

**DEPOSITION OF J. BRADLEY KING**
**FEBRUARY 2, 2018**
**1:30 p.m.**

ASSOCIATED REPORTING, INC.
251 East Ohio Street
Suite 940
Indianapolis, Indiana  46204
(317) 631-0940
associated-reporting.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

COMMON CAUSE INDIANA,            )
                                 )
                Plaintiff,       )
                                 )Case No. 1:17-cv-3936
        vs.                      )
                                 )
CONNIE LAWSON, in her            )
official capacity as             )
Secretary of State of            )
Indiana, J. BRADLEY KING,        )
in his official capacity as      )
Co-Director of the Indiana       )
Election Division, and ANGELA)
M. NUSSMEYER, in her official)
capacity as Co-Director of       )
the Indiana Election             )
Division,                        )
                                 )
                Defendants.      )

    THE 30(b)(6) DEPOSITION UPON ORAL EXAMINATION
OF
        J.  B R A D L E Y  K I N G,

the deponent produced and sworn before me,
Lindsay N. Bola, Notary Public in and for
the County of Hamilton, State of Indiana, taken
on behalf of the plaintiff, at the Indiana
Government Center South, 302 West Washington
Street, Conference Center Room 2, Indianapolis,
Marion County, Indiana, on the 2nd day of February
2018, commencing at approximately 1:30 p.m.,
pursuant to the Indiana Rules of Trial Procedure,
with written notice as to the time and place.

```
                    A P P E A R A N C E S


ON BEHALF OF THE PLAINTIFFS NAACP and LEAGUE OF
WOMEN VOTERS OF INDIANA:

     Ellison Ward Merkel, Esq.
     Alexandre J. Tschumi, Esq.
     QUINN EMANUEL
     51 Madison Avenue
     22nd Floor
     New York, NY 10010

     Jonathan Brater, Esq.
     Myrna Perez, Esq.
     BRENNAN CENTER FOR JUSTICE
     120 Broadway
     Suite 1750
     New York, NY 10271


ON BEHALF OF THE PLAINTIFF COMMON CAUSE INDIANA:

     Jan Mensz, Esq.
     Stuart C. Naifen, Esq.
     Matthew Jedreski, Esq.
     ACLU
     1031 East Washington Street
     Indianapolis, IN 46202

     Sophia Lin Lakin, Esq.
     ACLU
     125 Broad Street
     18th Floor
     New York, NY 10004
```

1           addresses and notified the election division?
2    A.     I believe it would be the most recent voter
3           registration record that reflects the
4           transaction you described.
5    Q.     So the date effectively which they moved would
6           become their new date of registration; is that
7           correct?
8    A.     That's my understanding.
9    Q.     Is it your understanding that different states
10          who also participate in the crosscheck program
11          may use a different method to determine what
12          date populates that date of voter registration
13          field?
14   A.     Yes; that's correct.
15   Q.     And do the rules for the crosscheck hopper
16          within SVRS distinguish between states that
17          use a similar procedure to what Indiana uses
18          versus states which may have a completely
19          different definition for what date of
20          registration may mean?
21   A.     I'm not aware of any such distinction.
22   Q.     So regardless of what definition a particular
23          state applies to the date of registration
24          field, if the other state's date of
25          registration is subsequent in time to the

1   Indiana date, then that will show up as a
2   match in the crosscheck hopper; is that right?
3              MR. GARN: Objection; foundation.
4  A. Sorry, can I ask you to repeat that?
5  Q. I think I'm just trying to restate your prior
6      answer to make sure I've got it correctly.
7      The crosscheck hopper will only show a
8      match, if I understand you correctly, if the
9      date of registration for the other state is
10     subsequent in time to the date of registration
11     in the Indiana field; is this correct?
12             MR. GARN: Objection. You're using
13     the term hopper. Just make sure we're clear
14     on what you mean there. Are you talking about
15     the hopper, or are you talking about what's
16     going to the counties?
17             MS. MERKEL: Well, that's certainly a
18     great line of questioning, so maybe I'll
19     establish that first.
20  CONTINUED BY MS. MERKEL:
21  Q. So my understanding was that the crosscheck
22     hopper is the date the group of matching
23     records from the crosscheck program that
24     becomes available to the counties; is that a
25     misunderstanding?

A. I think it's a misphrasing, perhaps. Typically hopper is not a statutory term. Hopper is an administrative term. And we ordinarily use it to describe features of SVRS that are available to particular county users. I would not use the term hopper to describe the entirety of the data received by the state from the crosscheck program.

Q. Okay. So that's consistent with my understanding. So is it correct that the crosscheck file is received from Kansas and that some processing goes on before records are moved into the crosscheck hopper that's made available to the counties?

A. That is correct.

Q. And so is one of those steps in that processing a sorting out of records where the match reflects a subsequent date of registration to the one for the Indiana record?

A. That's my understanding; yes.

Q. Okay. And is it correct that that filtering is done without regard to what definition of a date of registration the other state applies?

A. Yes.

1  Q. Okay. Thank you. Now, once a county official
2     receives a record into the crosscheck hopper,
3     what options do they have available to them in
4     terms of taking action on that voter's
5     registration status?
6  A. They have a number of different options. They
7     are not required to take any immediate action
8     or any action with regard to a specific
9     record. They can mark it for further
10    research, which can go on indefinitely. They
11    can also reject the match or they can accept
12    the match.
13 Q. What is required in order for a county
14    registrar to accept the match?
15 A. The county registrar would need to examine the
16    voter registration record data and make a
17    determination that the individual described in
18    the data received from Kansas was the same
19    individual described in the Indiana SVRS.
20 Q. How would they go about making that
21    determination?
22 A. They would apply the confidence factors set
23    forth in material that we provided to the
24    voter registration offices and make that
25    determination.

1       That being said, the confidence factor,
2  even if it was the maximum possible, does not
3  require the county to act in a particular way
4  with regard to that record.  The county can
5  still use information it has independently of
6  the Kansas submission to determine if, in
7  fact, the two records were for the same
8  individual.
9  Q.  And so it's within the discretion of the
10     county registrar to do more investigation or
11     not before taking action on that --
12 A.  That's correct.
13 Q.  -- voter?
14     And it's correct, isn't it, that the
15     record before even making it into the county
16     hopper has met a certain confidence factor --
17     in 2018 it will be a confidence factor of 75;
18     is that right?
19 A.  That is correct.
20 Q.  So there's nothing that obligates them to do
21     additional research into the confidence factor
22     that that record shows, is there?
23          MR. GARN:  Objection; form.
24 A.  Sorry, could you repeat it?
25 Q.  Sure.  Let me reask it in a better way.  Are

|   |    |                                                           |
|---|----|-----------------------------------------------------------|
| 1 |    | they required or do you expect them to be                 |
| 2 |    | doing additional research into the confidence             |
| 3 |    | factors simply seeing that the match has                  |
| 4 |    | reached the confidence factor minimum that's              |
| 5 |    | applied for it to be a match?                             |
| 6 | A. | We would not -- the election division would               |
| 7 |    | not require them to do so.  We don't have the             |
| 8 |    | authority to require them to perform that                 |
| 9 |    | work.                                                     |
| 10| Q. | Do you provide them with guidance or set                  |
| 11|    | policies with respect to what additional work             |
| 12|    | they need to do?                                          |
| 13| A. | Not in the sense of rules beyond -- I                     |
| 14|    | shouldn't use the term rules.  Not beyond                 |
| 15|    | guidance with regard to what make up the                  |
| 16|    | confidence factors and providing the greatest             |
| 17|    | possible flexibility for them to see if they              |
| 18|    | wish to consider a match further based on the             |
| 19|    | particular confidence factors that make up the            |
| 20|    | score.                                                    |
| 21| Q. | So in order for a match to be marked match                |
| 22|    | approved, there's nothing further that you                |
| 23|    | would guide or direct a county registrar to do            |
| 24|    | beyond performing that the confidence factor              |
| 25|    | is, in fact, the minimum required for it to               |

1           make its way into the hopper?
2                   MR. GARN:  Objection; form.
3      A.   There's nothing specific with regard to
4           generic requirements.  We would, in general,
5           advise them to exercise caution and prudence
6           and to resolve any doubts or uncertainties
7           based on the information they have.
8      Q.   What steps would you advise them to take if
9           they, indeed, had doubts about the information
10          in front of them?
11     A.   To rely upon the knowledge that they
12          personally have or that's readily available.
13          So that if, for example, they happen to be
14          personally familiar with the individual, they
15          may have information that the individual has,
16          in fact, moved to another state and now they
17          have information that in addition to simply
18          changing residence, it appears that
19          individual's registered there.  But,
20          obviously, that would not be true in every
21          case with every record.
22     Q.   Can you give me other examples of information
23          that you might consider readily available?
24     A.   I think readily available would be information
25          regarding street addresses.  If, for example,