**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA, <br><br> Plaintiffs, <br><br> v. <br><br> CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, <br><br> Defendants. | No. 1:17-cv-02897-TWP-MPB |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR**
**STAY OF DISTRICT COURT PROCEEDINGS AND DISCOVERY**

Plaintiffs Indiana State Conference of the National Association for the Advancement of Colored People and League of Women Voters of Indiana (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Connie Lawson's, Bradley King's and Angela Nussmeyer's (collectively, "Defendants") Motion for Stay of District Court Proceedings and Discovery ("Defendants' Motion").

**INTRODUCTION**

This case is ripe for discovery, and Defendants' Motion, if granted, would only cause unnecessary delay and severely undermine Plaintiffs' ability to conduct discovery necessary to resolve this case in advance of the 2020 elections. Defendants' Motion transparently mischaracterizes the nature of Plaintiffs' claims and the discovery necessary to assess them.

1

This Court should reject Defendants' effort to create the false impression that there is presently nothing to discover by dismissing the clear relevance of Defendants' past and current practices to their prospective use of Crosscheck. In fact, the inconsistent and discriminatory procedures for removing voters from the registration rolls in place under the predecessor law would, as the Court has recognized, continue under the framework of SEA 442, (Dkt. 63, at 8-10), as would the unreliable and discriminatory nature of Crosscheck data itself. These practices are thus inextricably linked to the serious risks of arbitrary and erroneous use of the program that form part of the basis of Plaintiffs' claims. Accordingly, there is considerable outstanding discovery concerning Defendants' past practices and their impact that will be necessary no matter the ultimate disposition of Defendants' Seventh Circuit appeal.

Regardless of the Seventh Circuit's decision, it is imperative that Plaintiffs' claims be adjudicated prior to the 2020 elections. Defendants' Motion would make such a resolution a practical impossibility. A stay would deny Plaintiffs the time needed to adequately develop relevant discovery including discovery concerning Defendants' existing and prior practices. Pursuant to federal election law, all systematic removals from the voter rolls must be completed 90 days prior to an election. In order to resolve the parties' dispute regarding whether it is proper to remove voters from registration rolls pursuant to SEA 442 before the May 2020 primary election, this case must reach resolution by February 2020. But Defendants' request would effectively stay this case until mid- to late 2019, at the earliest. Defendants' proposed stay would, thus, have the effect of preventing Plaintiffs from developing their case over the next eight months, if not longer and then, following the Seventh Circuit's adjudication of the Court's preliminary injunction decision, require the parties to conduct fact discovery, expert discovery, resolve dispositive motions, and try the case within merely months. Not only is such a schedule

seemingly impossible, it would immeasurably prejudice Plaintiffs and unnecessarily burden the Court.

Since this case was filed, the Court and Magistrate Judge Brookman have carefully tailored the schedule and discovery to meet the needs of the parties and the inherently stiff deadlines associated with elections. Those procedures and oversight more than protect against Defendants' purported prejudice. Plaintiffs respectfully suggest that the Court continue to follow those practices and deny Defendants' request for a stay so that Plaintiffs can adequately develop their record and this dispute can be resolved before the 2020 election without imposing the burdens of incredibly compressed and expedited proceedings on the parties and the Court.

## BACKGROUND

On August 23, 2017, Plaintiffs initiated this action by filing their Complaint asserting claims that SEA 442 violates the National Voter Registration Act ("NVRA"). In the Complaint, Plaintiffs allege that SEA 442 requires voters to be purged from the registration rolls without proper notice under the NVRA. Plaintiffs also allege that SEA 442 violates the NVRA requirement that any program for removing voters from registration rolls must be "uniform" and "nondiscriminatory," 52 U.S.C. § 20507(a)(4), because Crosscheck data is itself unreliable and, further, because the manner in which Defendants have implemented Crosscheck data and the manner in which they will continue to do so under SEA 442 is arbitrary, unreasonable, unreliable and discriminatory.

In December 2017, Plaintiffs served limited discovery on Defendants for the purpose of gathering information necessary to file a motion for preliminary injunction. Plaintiffs' requests included, in general terms, requests for documents and information pertaining to: (1) policies, procedures and instructions governing the implementation of SEA 442; (2) Defendants' past

policies, procedures and instructions for the use of Crosscheck data; (3) Defendants' policies, procedures and instructions for the use of Crosscheck data under SEA 442; (4) Defendants' policies, procedures and instructions for providing notice to voters prior to removal from registration rolls; (5) Defendants' policies, procedures and instructions for providing notice to voters under SEA 442; and (5) communications between Defendants and County Voter Registration offices concerning SEA 442. In response to Plaintiffs' requests, Defendants indicated that they would not be able to produce all non-privileged responsive documents prior to the parties' preliminary injunction briefing, and so the parties agreed to narrow the scope of production, including by limiting the applicable timeframe. Even so, Defendants' production was limited.[1]

To be clear, the discovery requested by Plaintiffs in December 2017 does not constitute the full breadth of discovery Plaintiffs require and are entitled to in order to support their claims. For instance, Plaintiffs also intend to seek discovery on: (1) the reliability of Crosscheck and its underlying data; (2) Defendants' past and present practices and communications relating to the provision of notice to voters; (3) Defendants' past and present practices and communications concerning the use of Crosscheck data; and (4) Defendants' past and present practices and communications concerning the analysis or auditing of Crosscheck data and any related results.

On March 9, 2018, Plaintiffs moved for a preliminary injunction prohibiting the implementation of SEA 442. (Dkt. 41). On June 8, 2018, the Court granted Plaintiffs' motion. (Dkt. 63), In its decision, the Court recognized the relevance of Defendants' prior practices. As the Court explained, most of the statutory framework instated by SEA 442 is identical to its

---

[1] For example, Plaintiffs requested categories of communications between Defendants and County Voter Registration offices regarding, *inter alia*, the use of Crosscheck, the removal of voters from voter registration rolls, the notice given to Crosscheck-matched voters pursuant to the NVRA. In total, Defendants produced only 26 emails.

predecessor law. (*Id.* at 8-10). Under the predecessor law, county registrars were required to make three determinations prior to purging a Crosscheck-matched voter: "(1) [the individual] identified in the report provided by the NVRA official under this subsection is the same individual who is a registered voter of the county; (2) registered to vote in another state on a date following the date that voter registered in Indiana; and (3) authorized the cancellation of any previous registration by the voter when the voter registered in another state." Indiana Code § 3-7-38.2-5(d). If the registrar determined prongs (1) and (2), (but not (3)), had been satisfied the registrar was required to "send an address confirmation notice to the Indiana address of the voter." Indiana Code § 3-7-38.2-5(e). SEA 442 amended its predecessor law to remove prong (3) and to require registrars determining prongs (1) and (2) to "cancel the voter registration of that voter." (*Id.*) The two determinations required by SEA 442 prior to purging a voter from the rolls match the first two required determinations of its predecessor law *verbatim*. Thus, discovery into past practice is perhaps the *most* probative evidence in this case, aside from the statute's language itself. Discovery into how registrars make determinations (1) and (2), how Defendants advised them to make determinations (1) and (2), and the effects of such determinations is uniquely relevant to this case.

Over a month after the Court issued its decision, and on the very deadline for doing so, Defendants filed a Notice of Appeal of the Court's preliminary injunction decision on July 9, 2018. Defendants have since sought, and received, a 42-day extension for filing their opening brief.

Because it is an interlocutory appeal of the Court's preliminary injunction decision, regardless of the Seventh Circuit's determination, any issues presented regarding likelihood of success on the merits or Plaintiffs' standing will continue to be litigated in this Court.

Nonetheless, on August 10, 2018, Defendants filed a motion requesting that discovery and all court proceedings be stayed pending the Seventh Circuit appeal.

## ARGUMENT

"A stay of a civil proceeding is an extraordinary remedy." *S. Freedman & Co. Inc. v. Raab*, Civ. No. 06-3723, 2008 WL 4534069, at *2 (D.N.J. Oct. 6, 2008). The party seeking a stay "has no absolute right to a stay; rather, that party bears the burden of proof to show that the Court should exercise its discretion in staying the case." *Selective Ins. Co. of Am. v. Smiley Body Shop, Inc.*, No. 1:16-cv-00062, 2016 WL 6277618, at *4 (S.D. Ind. Oct. 27, 2016) (internal quotation marks omitted). A movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (quoting *Landis*, 299 U.S. at 255, 257).

In deciding whether a stay is appropriate, courts consider "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Se-Kure Controls, Inc. v. Sennco Sols., Inc.*, 675 F. Supp. 2d 877, 879 (N.D. Ill. 2009).

### I. A Stay Will Unduly Prejudice and Tactically Disadvantage Plaintiffs

Defendants make two arguments to support their position that Plaintiffs will not be prejudiced by a stay. First, Defendants argue Plaintiffs will not be prejudiced, because with the injunction in place Defendants are not undergoing any Crosscheck activity pursuant to SEA 442,

therefore, there are presently no relevant facts or information to be discovered. If Defendants' argument were true (which it clearly is not) it would mean that if the Seventh Circuit upholds the Court's stay, there would *never* be any relevant discovery to be had in this case. For obvious reasons, that simply cannot be true. Indeed, there is substantial non-duplicative outstanding discovery to be sought, including that which has already been requested by Plaintiffs prior to Defendants' Seventh Circuit appeal.

To begin with, in order to support their claims, Plaintiffs are entitled to evidence regarding Defendants' prior and current practices. In their Motion, Defendants argue that Plaintiffs are not entitled to such discovery because it is "stale" and "irrelevant." But the Court has already rejected that premise. (Dkt. 63, at 8-10). As the Court has recognized, the statutory requirements as to notice under SEA 442 are identical to those under the predecessor law, the only difference is one of the requirements has been removed. (*Id.*) Evidence regarding Defendants' prior notice practices is thus clearly probative. Likewise, evidence regarding the nature in which Defendants have and continue to analyze and implement Crosscheck data is of integral importance to Plaintiffs' claims that Defendants' use of such data will lead to inconsistent and discriminatory removal, as is evidence regarding the unreliability of Crosscheck data itself. All of these categories of discovery can be pursued presently.

Plaintiffs are also entitled to discovery regarding Defendants' intended implementation of SEA 442. That includes any policies or procedures Defendants' have developed, communications concerning implementation and any instruction that has been provided. The theoretical possibility that Defendants may choose to change their policies and procedures in the future does not make their past or present practice irrelevant. Such discovery can also be pursued at this time.

7

Second, Defendants argue that Plaintiffs will not suffer prejudice because there is currently an injunction preventing Defendants from implementing SEA 442 until this case is resolved. Defendants' argument completely ignores the possibility that Defendants might succeed in their appeal to the Seventh Circuit, in which case Plaintiffs would undoubtedly be extremely prejudiced by the requested stay.

If Defendants were to succeed with their petition to the Seventh Circuit to reverse or alter this Court's grant of a preliminary injunction, Plaintiffs would have just over six months, if not less, to complete discovery, resolve dispositive motions and conduct a trial in order to ensure that no voters are improperly removed from the voter registration rolls prior to the 2020 election. Federal election law requires that all systematic removals from the voter registration rolls must be finalized 90 days prior to an election, meaning that any determination regarding SEA 442 must be reached by February 2020 in order to prevent any improper removal of voters from the registration rolls prior to the May 2020 election. Without taking into account the likely delay in scheduling the appellate hearing caused by end-of-year holidays, it is already unlikely the appeal will be resolved prior to mid-2019. As explained above, Defendants recently sought and received a 42-day extension to file their opening brief, because Solicitor General Fisher is "engaged in [at least 13 other listed] litigation matters that impede the State's ability to prepare and file an adequate appellants' brief," making Plaintiffs' opposition due October 30, 2018. (Dkt. 18-02492 Nos. 18-19). Assuming Defendants do not make any other requests for extension to accommodate obligations associated with the other pending litigations or for any other reasons, Seventh Circuit statistics suggest oral argument will likely be held by mid January

2019, and the parties should expect a decision by sometime in May of 2019,[2] leaving just a matter of months for this case to be resolved.

If placed in the position of needing to resolve this case within months, Plaintiffs would be prejudiced by being forced to make strategic decisions in order to comply with an impossible schedule. For instance, Plaintiffs may have to severely limit their fact and expert discovery by cutting document requests or skipping depositions and foregoing retention of an expert. And Plaintiffs could face the Hobson's choice of foregoing dispositive motion practice in favor of an expedited trial. Such choices would unduly prejudice and tactically disadvantage Plaintiffs. Where, in similar situations, a party would be prejudiced by a potential delay to discovery, Courts have declined requests to impose a stay. *Bussing v. Cor Clearing, LLC*, No. 18-cv-238, 2014 WL 3548278 at *3 (D. Neb. July 17, 2014).

Moreover, even if Defendants did not succeed on their appeal, a stay would prejudice Plaintiffs. Even if an injunction remains in place, allowing the propriety of the state's list-maintenance practices under the NVRA to remain unsettled at the time of the May 2020 elections would only prejudice the parties and the citizens of Indiana. In order to reach resolution prior to the elections, Plaintiffs would be in the same impossible position of having to conduct discovery in an impossibly expedited manner if a stay was imposed.

In short, there is plenty of discovery—including that which has already been requested by Plaintiffs prior to Defendants' Seventh Circuit appeal—that can be taken immediately. A stay of that discovery would only prejudice Plaintiffs and burden the Court.

---

[2] Seventh Circuit statistics suggest the average civil appeal requires 2.3-2.6 months between appellees' last brief and oral argument and 3.1-3.3 months between oral argument and a last opinion or final order. *See* http://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2016.pdf; http://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2017.pdf.

## II. A Stay Will Not Simplify the Issues in Question or Streamline the Trial

Defendants argue that a stay will streamline the case, because absent a stay, some discovery may have to be repeated following the Seventh Circuit's decision. Defendants' argument, which is based on pure speculation, is not a sufficient basis for staying discovery. *Bussing v. Cor Clearing, LLC*, 2014 WL 3548278, at *3 (D. Neb. July 17, 2014) (denying a stay despite the fact that a pending appeal might narrow discovery on the basis that "the plaintiff has more to lose from a stay, in terms of additional delay in these already lengthy proceedings, than defendants stand to gain"). The parties and the Court cannot afford to waste valuable time simply because some of the discovery the parties could presently engage in *may* or *may not* need to be revisited following the Seventh Circuit's decision.

What's more, as explained above, there is substantial non-duplicative discovery that could be taken while Defendants' appeal is pending including, but not limited to, discovery regarding Defendants' prior policies, procedures and practices, which the Court has already recognized as relevant. Even to the extent Defendants choose to change existing procedures or policies in the future, there is no reason the parties could not work together to ensure future discovery is tailored to new, non-duplicative material. Plaintiffs have no more interest in reviewing duplicative material than Defendants have in producing it. Defendants have not explained why that non-duplicative discovery should not go forward immediately.

## III. A Stay Will Not Reduce the Burden of Litigation on the Parties and on the Court

Apart from reiterating their complaint that there is no relevant non-duplicative discovery to be had prior to resolution of Defendants' Seventh Circuit appeal—which again, is pure speculation and does not justify the prejudice to Plaintiffs and burden to the Court that a stay would impose—the only argument Defendants offer to support their position that a stay would

cause undue burden is to point out "if this case were to proceed, the defendants would need to undertake their own discovery, which would include discovery about standing." But it is unclear how imposing a stay would relieve any burden associated with Defendants' intent to pursue discovery. Absent a stay, Defendants would be free to seek discovery, including discovery regarding Plaintiffs' standing. Importantly, Defendants' appeal is an interlocutory appeal of a preliminary injunction, meaning that the Seventh Circuit will not be making a final determination as to any of the issues presented, including standing. *S. Glazier's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, No. 2:16-cv-861, 2016 WL 10637077 at *2-4 (S.D. Ohio, Dec. 14, 2016) (denying a stay of proceedings pending an interlocutory appeal of a preliminary injunction reasoning that the court of appeals would "not make a final determination" on appeal from a preliminary injunction). Thus, Defendants will need to take discovery on the issue of standing regardless of the Seventh Circuit's decision, and there is no reason they could not get started immediately. That said, although Defendants have never raised the issue directly with Plaintiffs, if Defendants are interested in postponing discovery on the narrow topic of standing until after the Seventh Circuit has ruled on their challenge, Plaintiffs would be willing to meet and confer in an effort to reach an agreement.

      If anything, granting Defendants' request for a stay would only *exacerbate* the burdens of litigation on the parties and this Court. As explained above, a stay would force all parties to pursue this case, post-appeal, at impossible speed and require the parties and the Court to dedicate extraordinary resources to meet associated deadlines, when Plaintiffs stand ready to begin developing the record immediately. This Court would likely face a barrage of expedited discovery motion practice, as well as pressure to resolve dispositive motions in record time and conduct a fast-track trial.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Stay of District Court Proceedings and Discovery should be denied.

DATED:  August 24, 2018                Respectfully submitted,

*/s/ Trent A. McCain*
Trent A. McCain
McCAIN LAW OFFICES, P.C.
5655 Broadway
Merrillville, IN 46410
(219) 884-0696

Sascha N. Rand
Ellyde R. Thompson
Ellison Ward Merkel
Geneva McDaniel
Alexandre J. Tschumi
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Myrna Pérez
Jonathan Brater
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271