UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), et al., <br><br> Plaintiffs, <br> v. <br><br> CONNIE LAWSON, in her official capacity as Secretary of State of Indiana, et al., <br><br> Defendants. | No. 1:17-cv-02897-TWP-MPB |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Ever since the plaintiff organizations sued Indiana election officials almost three years ago, these two cases, 1:17-cv-03936 and 1:17-cv-02897,[1] have been about Indiana's participation in the Interstate Voter Crosscheck Program (Crosscheck). That is because Plaintiffs brought suit against Indiana officials to challenge Indiana's use of information gathered through the Crosscheck voter data-sharing system, asserting that the way Indiana election officials used the data violated § 8(d) of the National Voter Registration Act (NVRA). Plaintiffs alleged that the Crosscheck data were unreliable and that Indiana officials didn't use the data in a way that complied with the NVRA. But Indiana's General Assembly has amended

---

[1] For purposes of efficiency, the defendants' memoranda in support of the motions to dismiss address both cases.
.

1

the law to end Indiana's participation in Crosscheck, and the Indiana Secretary of State has formally withdrawn Indiana from Crosscheck. Consequently, these cases are moot and should be dismissed.

## I. BACKGROUND

Plaintiffs in these two cases sued the Indiana Secretary of State and the Co-Directors of the Indiana Election Division in their official capacities, challenging the State's use of Crosscheck data, which plaintiffs allege resulted in the violation of the NVRA. (Common Cause Comp., Dkt. 1, ¶ 1; NAACP Comp., Dkt. 1, ¶ 1).

The plaintiffs' claims arise from the National Voting Registration Act of 1993, which was passed to encourage states to both simplify and encourage voter registration, while maintaining accurate lists of voters. *See* National Voter Registration Act of 1993, H.R.2, 103rd Cong. (1993). Specifically at issue within the act is section 8, which provides a notice requirement in some circumstances before removing individuals from voting rolls for changing addresses. *Id*. Plaintiffs alleged that, due to inaccuracies in the Crosscheck system, voters could be wrongly identified as having changed addresses and that, previously under Indiana Code § 3-7-38.2-5(d)—(e), counties could remove those voters from voting rolls immediately, without following the notice requirement in the NVRA. (Common Cause Comp., Dkt. 1, ¶ 6; NAACP Comp., Dkt. 1, ¶ 4).

On March 21, 2020, Governor Eric Holcomb signed Senate Enrolled Act 334. This law amended the Indiana code concerning elections and mandated Indiana's withdrawal from the Crosscheck program. S.E.A. 334, 121st Gen. Assemb. (Ind.

2020). Further, it required notification of cancellation of one's voter registration to be sent to that voter's Indiana address if no cancellation of that voter's registration had been previously authorized. *Id*.

With respect to the Crosscheck program, on March 25, 2020, in accordance with section 7 of SEA 334, Secretary of State Lawson informed Kansas Secretary of State Scott Schwab of the passage of SEA 334, and that Indiana was withdrawing from the memorandum of understanding previously entered into with Kansas and other states regarding the Crosscheck program, effective immediately. *See* Exhibit 1 (Letter from Connie Lawson, Sec'y of State, State of Ind., to Scott Schwab, Sec'y of State, State of Kan. (Mar. 25, 2020)).[2]

The passage of SEA 334 moots this lawsuit. All issues that the plaintiffs allege arise from the State's use of the Crosscheck program. But, as of March, Indiana is no longer, in any way,[3] a participant in the Crosscheck program. Because of this, intervening circumstances resulted in there no longer existing any live issues concerning Crosscheck. Should the Plaintiffs take issue with any current protocol the State uses to manage voting rolls, that would be a matter for a new case.

---

[2] When determining whether subject-matter jurisdiction exists, the court may consider evidence beyond the jurisdictional allegations of a complaint. *St. John's Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2006); *see infra* part II.

[3] Indeed, no state has participated in Crosscheck since 2017 because Crosscheck has not been operating since then. *See, e.g.*, Hegeman, *Multistate Voter Database Suspended in Lawsuit Settlement*, AP News, December 10, 2019, https://apnews.com/2c82eb782e578bbb81c121ec453fbee8.

But SEA 334 moots the issues before the Court in these cases. While Crosscheck only used voters' first and last names and date of birth to determine if a voter was registered in two states, SEA 334 requires a holistic review that uses name and date of birth, as well as social security number, address, zip code, and driver's license or identification card numbers, with each factor assigned a different point value. *See* S.E.A. 334, 121st Gen. Assemb. (Ind. 2020). Below is a breakdown of all factors and point totals:

>   (A) Full Social Security number: 40 points.
>   (B) Last four (4) digits of Social Security number: 10 points.
>   (C) Indiana driver's license or identification card number: 50 points.
>   (D) Date of birth: 25 points.
>   (E) Last Name: 15 points.
>   (F) First Name: 15 points.
>   (G) Middle Name: 5 points.
>   (H) Suffix: 5 points.
>   (I) Street Address 1: 10 points.
>   (J) Zip Code (first five (5) digits): 5 points.

Under this system, a voter's registration would be looked into only if the points totaled from each factor reach a threshold confidence factor of 75 points. *Id.* A shared first and last name, and date of birth, the only criteria used by Crosscheck, only totals 55 points. *Id.* Furthermore, regarding the issue of notice, SEA 334 requires that voting registration may be canceled only once the voter authorizes the cancellation of registration after having moved to another state, or notice is sent to the voter's Indiana address. *Id* at §7(e).

But, more to the point, Plaintiffs through their lawsuits sought the injunctive relief of barring the State from using Crosscheck and restoring all voters removed from registration rolls after July 1, 2017. But this outcome was already achieved

with the passage of SEA 334, which eliminated all use of the Crosscheck system. Accordingly, this issue should be regarded as moot, and Plaintiffs' complaints should be dismissed under FRCP 12(b)(1) because no more relief can be granted for the claims the plaintiffs brought and mootness divests this Court of subject-matter jurisdiction.

## II. STANDARD OF REVIEW

Plaintiffs' Complaints should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, because, as a result of intervening circumstances, there is no longer a case or controversy. This court therefore lacks subject-matter jurisdiction.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies. *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016). "This requires an actual controversy at 'all stages of review, not merely at the time the complaint is filed.'" *Id.* (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, 133 S. Ct. 663, 669 (2016). "Moot cases run afoul of the live case or controversy requirement under U.S. Const. art. III" because "the expiration of the complained-of conduct has transformed a once 'distinct and palpable injury' to a mere 'abstract proposition' existing 'purely in the hypothetical.'" *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 972 (7th Cir. 2013). "The mere theoretical possibility of a repeat violation" is insufficient to defeat mootness. *Wernsing v. Thompson*, 423 F.3d 732, 744 (7th Cir. 2005) (internal quotation omitted). Dismissing claims for mootness "ensures that the federal courts remain faithful to the case or controversy limitation

imposed by Article III of the Constitution by refraining from pronouncements on legal questions that do not affect existing controversies between parties before the court." *Protestant Mem. Med. Ctr. V. Maram*, 471 F.3d 724, 729 (7th Cir. 2006). Federal courts "may not give opinions upon moot questions or abstract propositions." *Id.* (quoting *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005)).

Accordingly, motions to dismiss claims as moot are properly brought under Rule 12(b)(1) for lacking subject-matter jurisdiction. *See, e.g.*, *St. John's Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2006); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Snyder v. King*, 745 F.3d 242, 251 (7th Cir. 2014) (Wood, J., concurring) ("If [the case] were moot, then the dismissal would have to be under Rule 12(b)(1), for lack of subject-matter jurisdiction"). Federal Rule of Civil Procedure 12(b)(1) provides that a case may be dismissed for "lack of subject-matter jurisdiction." When ruling on a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 229 (7th Cir. 1993). The court may also "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's Church*, 502 F.3d at 625; *see also Ciarpaglini*, 817 F.3d at 543 (noting that courts may "view evidence to determine

6

whether subject matter jurisdiction exists in fact" and considered a declaration by a party submitted in response to a motion to dismiss).

### III.   ARGUMENT

**A. Because intervening circumstances have provided the relief sought in Plaintiffs' Complaints, mooting these cases, this Court lacks subject-matter jurisdiction**

Plaintiffs' claims under the NVRA are no longer cognizable causes of action because the passage of SEA 334 and the State's withdrawal from the Crosscheck program moot these cases.

In *City of Los Angeles v. Davis*, the Supreme Court articulated a two-element test for analyzing mootness. A matter should be regarded as moot when: 1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur;" and 2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 498 (1969)). Specifically, the Court held that, "A case is moot when the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome." *City of L.A.,* 440 U.S. at 631. Because of this, the Court has held that a case must be dismissed as moot if a plaintiff loses a "personal stake in the outcome" of the case as a result of intervening circumstances. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013).

Following the two-element test established in *City of Los Angeles v. Davis,* the allegations raised in Plaintiffs' complaints are moot because 1) there is no

reasonable expectation that the alleged violation of the NVRA will recur, and 2) any effects of the alleged violation have been ameliorated. 440 U.S. 625, 631 (1979). Indiana will not use Crosscheck information. The State formally removed itself from taking part in the Crosscheck system and has amended the challenged section of the Indiana Code. Further, in 2019, the Crosscheck program was indefinitely suspended, and even before that, numerous states had ceased participation in the program. Mark McCormick, *ACLU of Kansas Settlement Puts "Crosscheck" out of Commission for Foreseeable Future*, ACLU Kansas (Dec. 10, 2019), https://www.aclukansas.org/en/press-releases/aclu-kansas-settlement-puts-crosscheck-out-commission-foreseeable-future-program.

Regarding the second element, the remedy of effects, from the alleged violation, no further relief could be granted than for the State to cease participation in the Crosscheck program. Although plaintiffs may have originally sought relief in the reinstatement of individuals removed from the voter rolls, since July 2017, a suit against the State is the improper means to achieve this remedy. During this timeframe, State officials did not remove individuals from voter rolls. Rather, this was the responsibility of each county. Because the State did not remove any individuals from voting rolls, the reinstatement of any individuals cannot be sought through a claim against the state. Furthermore, the Plaintiffs have not pointed to a single individual who has been incorrectly identified as having moved, when in fact, he or she did not. Additionally, the plaintiffs filed their complaints seeking

injunctive relief. The purpose of this was to proscribe the State from acting in a particular manner, not to remedy some past problem.

But an even bigger problem with the plaintiffs' request for reinstatement is that no data were provided through Crosscheck under the challenged statute. In other words, there are no voters to be reinstated. Indeed, Plaintiffs seem to have conceded this and have abandoned this specific request for relief in that they did not pursue this in their motions for preliminary injunction. (Common Cause, Memorandum in Support of Preliminary Injunction, Dkt. 74; NAACP, Memorandum in Support of Preliminary Injunction, Dkt. 41 at 33).

By withdrawing from the Crosscheck program and passing SEA 334, Indiana has provided all relief that could have been sought through an injunction. Accordingly, these cases are moot.

**B. This Court lacks subject-matter jurisdiction to hear any claim plaintiffs allege that does not arise from SEA 442.**

The plaintiffs in this case filed their claims specifically to address SEA 442 and the use of data from Crosscheck with voter list maintenance. Any possible claims that the plaintiffs allege regarding SEA 334, the 2020 law, would need to be addressed in a separate lawsuit. Any claims alleged regarding SEA 334 are not the claims alleged regarding SEA 442, because SEA 334 completely ameliorated the alleged violations that existed under the previous law. Any alleged violations under SEA 334, would be entirely new claims, and should be treated as such, by, for example, allowing for discovery and a full hearing of the issues that would arise from that purely speculative case.

These cases have always been about Crosscheck data. Specifically, the NAACP and the League of Women Voters start their complaint by alleging that, "Indiana Code § 3-7-38.2-5(d), as amended by **Senate Enrolled Act No. 442** . . . flagrantly violates" NVRA requirements. (NAACP Complaint, Dkt. 1, ¶4) (emphasis added). Further, those plaintiffs asserted that, "[b]y using the Kansas-administered Crosscheck program to identify voters who have allegedly moved and registered in another state without the necessary protections, the Indiana Code, as amended by SB 442, also exposes voters to removal based on a list maintenance procedure that is neither reasonable, uniform, nor nondiscriminatory." *Id.* Thus, the target of the plaintiffs' grievances was what was permitted under SEA 442, which was the information received from Crosscheck. Likewise, Common Cause flatly stated in its complaint that, "At issue here is Indiana's program that utilizes second-hand data from [Crosscheck…]." (Common Cause Comp., Dkt. 1, ¶ 4).

The violations Plaintiffs alleged were specific to the Crosscheck program and the State's use of that data. Because of this, the relief that the plaintiffs sought was that the State cease participation in the Crosscheck program and provide greater notice before allowing county officials to remove individuals from voting rolls. (Common Cause Comp. Dkt. 1, ¶ 63; NAACP Comp. Dkt. 1, ¶ 58). These goals have been achieved through with the passage of SEA 334. There is no longer any controversy and these cases should be dismissed because they are moot.

## IV. CONCLUSION

Plaintiffs' complaints should be dismissed for the foregoing reasons.

Respectfully submitted,

OFFICE OF THE INDIANA ATTORNEY GENERAL

Date: July 1, 2020

By: Jefferson S. Garn
Attorney No. 29921-49
Section Chief, Administrative & Regulatory Enforcement Litigation

Courtney L. Abshire
Attorney No. 35800-49
Deputy Attorney General

Parvinder K. Nijjar
Deputy Attorney General
Attorney No. 33811-41

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Phone: (317) 234-7119
Email: Jefferson.Garn@atg.in.gov

11