UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 1:17-cv-3936-TWP-MPB |
| v. | )<br>)<br>) |
| CONNIE LAWSON, in her official capacity as Secretary of State of Indiana, J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division, and ANGELA M. NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**SUPPLEMENTAL DECLARATION OF JULIA VAUGHN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Julia Vaughn, hereby state, under penalty of perjury, that the following information is true to my knowledge, information, and belief:

1. I hereby incorporate my affidavit testimony submitted on March 8, 2018, ECF No. 74-24, addressing my personal background, my position, Common Cause Indiana, Common Cause Indiana's mission and efforts to expand and protect access to voting, and the resources Common Cause Indiana had to devote in response to Senate Enrolled Act 442 ("SEA 442").

2. In late 2019, I became aware that the Indiana legislature was contemplating an amendment to its voter list maintenance law, particularly to address provisions that had been amended by SEA 442. This law eventually passed in 2020 as Senate Enrolled Act 334 ("SEA 334").

3. Before SEA 334's passage, I became concerned because it contained the same process that existed in SEA 442 for cancelling voter registration without notice to the voter, an

1

opportunity for the voter to respond, or waiting period, which violated the National Voter Registration Act ("NVRA"), and which formed the basis for the court injunction of SEA 442.

4. As with SEA 442, when the Indiana legislature was considering SEA 334, Common Cause Indiana had to spend time and resources educating state officials and legislators about the NVRA and its requirements.

5. Specifically, I met with Republican State Senator Greg Walker on November 19, 2019, after I learned he was involved in the effort to pass new voter list maintenance legislation. I told him my understanding that the new law was intended to fix SEA 442, and asked whether he would sponsor the bill. State Senator Walker confirmed he would sponsor of the bill. I then asked him how SEA 334 would fix SEA 442, and it became clear he had been misinformed about SEA 442 and the court decisions in this case.

6. State Senator Walker said it was his understanding nobody had their registration cancelled without notice, an opportunity for the voter to respond, or waiting period under SEA 442, which he had sponsored. I asked if he recalled the text of the law and the court decisions finding that SEA 442 allowed counties to cancel registration without notice. State Senator Walker responded by reiterating it was his understanding that counties went ahead and gave notice notwithstanding what the law said. He said that his understanding, and his support of SEA 334, were informed by what he had been told by the Indiana Secretary of State and the Indiana Election Division. I told him that simply stopping the state's use of Crosscheck was not going to fix the problems surfaced by this litigation, but he maintained that the language of the statute did not matter because the counties were going to follow notice and waiting procedures.

7. Once the legislative session started in January 2020, the language of SEA 334 became available. As I had feared, the new law still allowed counties to cancel the registrations

of voters without notice, an opportunity for the voter to respond, or waiting period. I had another discussion with State Senator Walker about this and again flagged the fact that SEA 334's allowance of voter registration cancellation without notice, an opportunity for the voter to respond, or waiting period violated the NVRA, per the court opinions in this case.

8. The State Senate Elections Committee heard testimony on SEA 334 on January 16, 2020, where I testified about the same concerns I had raised to State Senator Walker, and emphasized that just getting rid of Crosscheck did not solve the fundamental NVRA violations in SEA 442. Still, SEA 334 passed the State Senate and moved to the State House of Representatives.

9. After my attempts to correct the apparent misinformation in the Senate failed, I sent a letter to State Representative Timothy Wesco, the House sponsor of SEA 334. My letter outlined my concerns – including that SEA 334 still violated the NVRA by allowing counties to cancel registrations without notice, an opportunity for the voter to respond, or waiting period. On February 16, 2020, the Indy Star published an op-ed that I authored about how the Indiana legislature was in the process of passing a law intended to "fix" the enjoined SEA 442, but which instead repeated the same NVRA violations.[1]

10. On February 20, 2020, there was a hearing on SEA 334 before the House Committee on Elections and Apportionment. I testified at the hearing, and repeated my concerns regarding SEA 334 violating the NVRA for the same reasons as SEA 442. State Representative Wesco asked me at the hearing a question to the effect of, "Ms. Vaughn are you aware that, when it comes to elections, counties don't have 'home rule.'?" He meant that the counties could

---

[1] https://www.indystar.com/story/opinion/2020/02/16/op-ed-indiana-senate-again-tries-purge-voters-without-notice/4764155002/ (last visited June 30, 2020).

not do different things because the State alone controlled voter list maintenance procedures. At the hearing, Indiana Election Division Co-Director Bradley King was the only one who testified on behalf of SEA 334. It was clear to me that the Legislature was being misled by Mr. King and Secretary Lawson, both in what the language of SEA 334 meant and how counties were implementing voter list maintenance. Mr. King stressed to the Committee that this litigation "is not over and the Seventh Circuit has not issued a final opinion." Mr. King also told the Committee that counties performed voter list maintenance in a uniform way that complied with the NVRA – the same claim Senator Walker told me in November 2019.

11.     After the Committee hearing, State Representative Wesco approached me and told me he wanted to respond in writing to my concerns. He gave me a letter, a true and correct copy of which is attached as **Exhibit A**. I told him that Mr. King's testimony about how voter list maintenance takes place at the county level was inaccurate, and asked him to read documents from this lawsuit, including testimony from county clerks establishing their practices were not uniform at all. I wanted him to see there was sworn testimony that counties were purging voters without notice, an opportunity for the voter to respond, or waiting period, and with no uniformity in their protocols. Nonetheless, SEA 334 passed out of the Committee, and was eventually passed by the Indiana legislature and signed into law on March 21, 2020.

12.     These lobbying efforts necessarily took time away from other important issues for which Common Cause Indiana was lobbying and advocating at the time, including increasing early voting and non-partisan redistricting. Nonetheless, Common Cause Indiana believed and continues to believe that SEA 334 threatens an individual's right to vote.

13.     Common Cause Indiana believes that SEA 334, like SEA 442, makes it more likely that Indiana voters will have their registrations cancelled by failing to provide voters

identified by the new IDEA "cross-check" program with a conformation notice and waiting the requisite two election cycles before canceling that voter's registration record. This belief is based in part on the organization's experience prior to SEA 442 and SEA 334, when the Indiana Election Division required counties to send such notices and wait the requisite two election cycles. The notice and waiting period did in fact alert voters who were being erroneously removed from the voter rolls. This process provides safeguards that reduce the risk of being improperly removed from the voter rolls; this risk is only likely to increase under SEA 334, as it did under SEA 442, because both laws lack that notice and waiting process.

14. Prior to SEA 442, some voters who had received cancelation notices would call Common Cause Indiana asking for advice. Common Cause Indiana would generally advise them to contact their county voter registration office if the voter believed they were being erroneously removed from the rolls. In these cases, the error could be fixed prior to Election Day.

15. However, because voters erroneously canceled through the IDEA procedures under SEA 334 will not be notified of their cancelation, many will first learn about the cancelation on Election Day, when they show up at their polling place.

16. Common Cause Indiana is aware of such voters because it received calls asking about erroneously-cancelled voters at the polls in previous elections. Common Cause Indiana also sends member volunteers into the field to serve as poll monitors, who provide a number of services to voters who have questions or concerns at the poll. Occasionally, a volunteer will call Common Cause Indiana asking what to do with an erroneously canceled voter who is at the poll.

17. In such cases, some voters will simply not cast a ballot if they are told their voter registration has been canceled. Others are not even offered a provisional ballot or provided any information from the poll worker regarding the possibility of casting a regular ballot if their

registrations have been erroneously cancelled. The most unfortunate part of that complexity is that the affected voter is unaware they cannot vote until they show up to vote.

18. By increasing the risk that a voter registration record will be erroneously removed from the voter roll, SEA 334 harms Common Cause Indiana's mission of reducing barriers to voting, and imposes additional burdens on Common Cause Indiana that take time and resources away from lobbying and advocacy efforts on other issues, including, but not limited to, nonpartisan gerrymandering, and increasing early satellite voting.

19. For example, Common Cause Indiana has devoted additional time and resources to addressing the effects of SEA 334, including conducting activities such as training sessions aimed at educating voters and community activists about the increased risk of erroneous voter registration cancelations.  This included a training session leading up to the June 2, 2020 primary.

20. Similarly, six to eight times a year, Common Cause Indiana conducts citizen advocacy trainings for members and the general public.  Topics have included redistricting, early voting, and other electoral issues that affect the state.

21. In past elections, Common Cause Indiana has also conducted training sessions for member volunteers to serve as poll monitors.  It anticipates doing so again for the 2020 general election.  Topics for these trainings have focused on polling place procedures, voter rights, and what to do when a poll monitors thinks a voter's rights are being violated. I have had to make significant adjustments to my long-term planning for these trainings because of SEA 334. If it were to go into effect, much more of these trainings will have to focus on voter purging. Voter purging is a very difficult topic to train volunteers on, which will require an inordinate amount of

education. Therefore my long-term planning for our standard trainings has been broadly effected by SEA 334 because I must plan to lose a lot of training time to voter purge education.

22. Common Cause Indiana's volunteer staff similarly spends considerable time developing a curriculum and presentation materials for these sessions. They have similarly had to spend a greater portion of their fixed time to discussing SEA 334's effects, diverting resources from other issues.

23. Discussing the impact of SEA 334 on voters also generates questions both during and after the sessions to which Common Cause Indiana has to respond. As the only Common Cause employee in Indiana, fielding these calls always fall on me.

24. In the past, Common Cause Indiana volunteers and voters have called Common Cause Indiana on Election Day because their names had been erroneously removed from the voter roll. I believe that the number of these calls will increase significantly once Indiana begins implementing the IDEA process under SEA 334, and these calls will take away from my ability to work on Common Cause's other priorities in Indiana.

25. In past elections, we have had 50-80 volunteers serving as poll monitors in the field. Because I am also usually the only person fielding calls from them our 50-80 poll monitor volunteers, SEA 334 will make me less able to address poll access and other issues besides registration cancellations, which will inevitably come up on what is a very busy day for our organization (Election Day).

26. Common Cause Indiana volunteers at polling sites on Election Day will also have to spend more time assisting the increase in voters who have been erroneously removed from the rolls and be less able to assist voters with other poll access issues. In addition, with

15,000 members, there is a concern that some of Common Cause Indiana members might be erroneously removed from the rolls under these procedures in the future.

27. The time that Common Cause Indiana has and will continue to expend addressing the effects of SEA 334 necessarily diverts time that the organization spends on its other advocacy, education, voter assistance, and lobbying efforts, including, but not limited to, its efforts to expand early voting and implement non-partisan redistricting, as well as its education and assistance related to other issues by poll monitors and Common Cause Indiana volunteers on Election Day.

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

7/1/2020
Date

Julia Vaughn
Common Cause Indiana