| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA,<br><br>     Plaintiffs,<br><br>   v.<br><br>CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>     Defendants. | Docket No. 1:17-cv-02897 |

**SUPPLEMENTAL DECLARATION OF BARBARA BOLLING-WILLIAMS**

DECLARATION OF BARBARA BOLLING-WILLIAMS

I, Barbara Bolling-Williams, hereby state, under penalty of perjury, that the following information is true to my knowledge, information, and belief:

1. I hereby incorporate my declaration testimony submitted on March 7, 2018, Dkt. 44, addressing my personal background, my position, the Indiana State Conference of the NAACP, and the NAACP's civic engagement efforts.

2. It is my understanding that the Indiana Legislature enacted Senate Enrolled Act 334 ("SEA 334) earlier this year, establishing the Indiana Data Enhancement Association ("IDEA") to replace the Interstate Voter Registration Crosscheck program.

3. I understand that SEA 334 permits the removal of voters from registration lists immediately, without notice, an opportunity for the voter to respond, or a waiting period upon receipt of a written information from another state – even if that written information fails to include the voter's out-of-state registration. Voters who are purged in error will therefore have no warning or opportunity to correct the error.

4. I am concerned that purging voters in this way will disproportionately harm minority voters. African-Americans and other minority groups are more likely to have common shared names, and therefore could be more likely to be identified by the other states as having an out-of-state registration.

5. Because voters will be removed without prior notice, we will have no way of knowing in advance whether an NAACP member will be removed from the voter rolls, which could happen shortly before the November 2020 elections. If they are removed in this time window, there will be very little time to correct errors. Because the majority of NAACP members are African-American, they could be disproportionately likely to be removed under the program.

6. Because of the lack of notice that will accompany the removals, we also will have no way of knowing whether voters whom we have registered will be removed from registration lists between July 1, 2020 and the November election. It would defeat the entire purpose of registering voters if they were then erroneously deleted from the registration list. This would directly interfere with our goal of helping these voters overcome registration barriers. Because of the impending date of removal and the lack of notice given to voters or the public, there will be little time to correct mistakes even if they could be discovered.

7. We focus our efforts on boosting minority participation in part because, in my experience, problems in the election system often disproportionately burden African-American voters. For example, early voting limitations, precinct changes, and voter identification requirements have all posed particular problems for African-American voters. Immediate removal from the voter rolls could operate in the same way, and exacerbate existing problems.

8. I am concerned that voters who are removed in error will not be permitted to vote on Election Day or will have to vote using provisional ballots. In addition, delays at the polling place related to voter registration problems could burden other voters by increasing waiting times to vote. Already, many polling places with higher African-American populations have long lines and other problems at the polls.

9. As a poll monitor, I have witnessed voters being given provisional ballots. The provisional ballot process is very difficult for voters. For example, voters typically have to go to the county office soon after the election to get their ballot counted. In Lake County, the office is only open between 8 a.m. and 4:30 p.m. For those reliant on public transportation, it is extremely difficult to get to. I know an individual who had to travel to the county office using public transportation. She had to take two buses and a train to get there, and the trip took eight hours.

10. The NAACP has already expended effort to try to reduce these disparities, but problems connected to no-notice removals under SEA 334 could make them even worse. I am concerned that SEA 334 will cause us to expend our limited financial resources on rolling back the effects of the bill.

11. It is my understanding that SEA 334 has not been implemented yet (though the law is already technically in effect).

12. The NAACP has already expended needed resources to combat the effects of the Crosscheck program and SEA 442. For example, I spoke with officials and civic groups about the issue in other parts of the state. We encouraged voters to contact their representatives to express their concerns about the use of Crosscheck.

13. If SEA 334 is implemented, we will have to expand our voter education and poll monitoring programs to address its effects – and these efforts will be even more difficult because of limits to in-person engagement during the COVID-19 pandemic. In addition, we will have to encourage and assist voters in checking their registration status to ensure they have not been purged incorrectly.

14. The NAACP has very limited resources. The Indiana State Conference has no annual funding or paid staff; we are run entirely by volunteers. The branches typically have budgets of $6,000 to $7,000 per year that are spent on communications, copying costs, training, and rent (in the case of one branch). Further, the State Conference and all of our units depend on annual dinners and luncheons as fundraising events, which have now been cancelled because of COVID-19. We are very thinly spread as it is, with new costs arising from the pandemic (e.g., a Zoom plan to enable remote meetings). Combating the effect of purges under SEA 334 would drain resources we could be using to deal with all of the other issues we work on.

15. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of July, 2020.

*[signature]*

Barbara Bolling-Williams
President
Indiana State Conference of the NAACP

5