**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA,<br><br>Plaintiffs,<br><br>v.<br><br>CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>Defendants. | Docket No. 1:17-cv-02897-TWP-MPB |
| COMMON CAUSE INDIANA,<br><br>Plaintiff,<br><br>v.<br><br>CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>Defendants. | Docket No. 1:17-cv-03936-TWP-MPB |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    SEA 442 Allowed Cancellation of Voter Registrations Without Notice-and-Waiting ................................................................................................... 3

    B.    Plaintiffs Sued to Enforce the NVRA's Notice-and-Waiting Requirements .......... 3

    C.    This Court and the Seventh Circuit Held That Failure to Follow Notice-and-Waiting Requirements Violates the NVRA ....................................... 4

    D.    SEA 334 Amends SEA 442 but Keeps the Same Impermissible Cancellation Procedures ................................................................................... 6

ARGUMENT ............................................................................................................................ 9

    A.    Legal Standard ........................................................................................... 9

    B.    The Lawsuits Are Not Moot Because SEA 334 Continues the Same NVRA Violations from SEA 442 ......................................................................... 11

    C.    Granting Defendants' Motion Would Unnecessarily Waste Judicial Resources ................................................................................................. 14

CONCLUSION ....................................................................................................................... 16

# INTRODUCTION

This case is not about Crosscheck. It is about Indiana's compliance with the notice-and-waiting provisions of the National Voter Registration Act ("NVRA"). This Court enjoined the implementation of an Indiana law, SEA 442, because it failed to comply with the NVRA's required notice-and-waiting provisions. The Seventh Circuit affirmed. Indiana then chose to amend SEA 442 by enacting SEA 334. SEA 334 continues to violate the NVRA in the same way and injures Plaintiffs and Indiana voters in the same way. Notably, at no point in their motion to dismiss do Defendants represent that SEA 334 complies with the NVRA. That is because SEA 334 did not fix the fundamental problems with SEA 442, and these lawsuits are not moot.

Both this Court and the Seventh Circuit held that SEA 442 violated the NVRA by allowing Indiana to cancel voters' registrations on the basis of third-party data suggesting they had registered in another state, without either (1) direct contact with the voter or (2) mailing notice to the voter and waiting two federal election cycles. SEA 334 did not fix that flaw—it kept the same process. It still allows cancellation based on data provided by other states, without any direct voter contact, and without following the NVRA's notice-and-waiting procedures.

SEA 334 stopped Indiana's use of the highly unreliable Kansas Interstate Voter Registration Crosscheck program ("Crosscheck") to identify voters who may have moved out of state, but simply replaced Crosscheck *with an identical program*—the Indiana Data Enhancement Association, or "IDEA." SEA 334 uses IDEA the same way that SEA 442 used Crosscheck, allowing counties to cancel voter registrations because the voter has purportedly moved based solely on data received from other states, without hearing directly from the voter or following the NVRA's notice-and-waiting requirements. Defendants conspicuously do not mention IDEA in their motion, even though two Defendants (Secretary Lawson and Co-Director King) championed the IDEA system and all three will administer it.

1

Defendants also fail to offer the whole picture when they represent that SEA 334 allows voters' registrations to "be canceled only once the voter authorizes the cancellation . . . after having moved to another state." *Common Cause* Dkt. 181 at 4, *NAACP* Dkt. 137 at 4.[1] That omits that SEA 334 ***also*** instructs counties to consider information supplied by other states as ***equivalent*** to a voter's authorization. This is the same argument Defendants used to defend SEA 442's procedures—that information passed along from other states via Crosscheck was equivalent to a voter "confirmation" of a move or "request" to cancel their registration. And it is the same argument this Court and the Seventh Circuit rejected to hold that the NVRA demands direct voter contact or notice-and-waiting before a voter can be removed from the rolls, and to enjoin Indiana from equating third-party information with a voter's "confirmation" or "request." Indiana either disagrees with or misunderstands these holdings, as SEA 334 still directs counties to treat third-party information from another state "as **confirmation** that the individual is registered in another jurisdiction and **has requested** cancellation of the Indiana registration." SEA § 5.5(f)(2) (emphasis added). But Defendants may not use state law to *redefine* the meaning of "request of the registrant" or "confirm[ation] in writing" under the NVRA. *See* 52 U.S.C. §§ 20507(a)(3)(A), (d)(1)(A).

Seventh Circuit law does not require Plaintiffs to play litigation whack-a-mole; they need not refile a new case to address superficial or ineffectual changes to the law that fail to remedy settled NVRA violations or injuries to Plaintiffs. Because the amendment to SEA 442 did not stop the practices that Plaintiffs sued to enjoin, did not bring the law into compliance with the NVRA, and did not cease causing injury to Plaintiffs, this case is not moot. The Court should deny Defendants' motion to dismiss and grant Plaintiffs' motion for summary judgment.

---

[1] Hereinafter, references to documents filed in the case *Indiana State Conference of the National Association for the Advancement of Colored People (NAACP) et al. v. Lawson et al.*, No. 1:17-cv-02987-TWP-MPB, shall be cited as "*NAACP* Dkt. #,*" and references to documents filed in the case *Common Cause Indiana v. Lawson et al.*, No. 1:17-cv-03936-TWP-MPB, shall be cited as "*Common Cause* Dkt. #."

# BACKGROUND

A. **SEA 442 Allowed Cancellation of Voter Registrations Without Notice-and-Waiting**

Defendants are correct that this lawsuit concerns section 8 of the NVRA, which includes specific procedures states must follow before removing a voter from the rolls "for changing addresses." *Common Cause* Dkt. 181 at 2, *NAACP* Dkt. 137 at 2. In 2017, the Indiana General Assembly enacted SEA 442, which amended Indiana's law as it related to cancelling registrations of voters who might have moved out of state. *Common Cause* Dkt. 1 ¶ 6.

Before SEA 442, Indiana used Crosscheck as one tool to identify voters who may have moved out of state. *Id.* ¶ 5. Crosscheck purported to do this by comparing the names and birthdates of Indiana voters with voter data submitted by other states to find records "matches," *i.e.*, where it appeared the same person had registered to vote in both states. *Id.* ¶ 27. Indiana required counties to mail Crosscheck-identified voters notice and to wait two full federal election cycles of voter inactivity before cancelling their registration if they did not respond. *Id.* ¶ 29. This complied with the NVRA's "Notice-and-Waiting" procedure. *Id.* ¶ 20; 52 U.S.C. § 20507(a)(3), (a)(4)(B), (d)(1)(A)-(B). While Crosscheck—the source of the out-of-state voter data—had accuracy problems, Notice-and-Waiting procedures provided crucial federally required safeguards. *Common Cause* Dkt. 103 at 21.

SEA 442 amended the law to delete the Notice-and-Waiting procedures, requiring Indiana counties to *immediately* cancel the registrations of voters identified by Crosscheck. *Common Cause* Dkt. 1 ¶ 30.

B. **Plaintiffs Sued to Enforce the NVRA's Notice-and-Waiting Requirements**

It was that change to the law—discarding the NVRA-mandated Notice-and-Waiting requirements—that prompted Plaintiffs' lawsuits. As Common Cause Indiana stated in its complaint:

3

> [SEA 442] now permits Indiana counties to cancel voter registrations *immediately* once they receive information through Crosscheck . . . . The counties are no longer required to send the requisite written confirmation or wait for two general elections in which the voter is inactive before removing the voter from the rolls.

*Common Cause* Dkt. 1 ¶ 6; *see also id.* ¶ 7 (noting that the unreliability of Crosscheck "compound[ed] this problem."). The Indiana NAACP and League of Women Voters of Indiana likewise stated:

> [SEA 442] flagrantly violates [the NVRA's] requirements by, among other things, removing voters without the notice, response opportunity, and waiting period expressly required by the NVRA.

*NAACP* Dkt. 1 ¶ 4; *see also id.* (noting that "[b]y using the Kansas-administered Crosscheck program to identify voters who allegedly have moved and registered in another state without the necessary protections, the Indiana Code, as amended by [SEA] 442, also exposes voters to removal based on a list maintenance procedure that is neither reasonable, uniform, nor nondiscriminatory"). Both lawsuits specifically sought to halt Indiana's practice of "permitting removal of voter records without the voters' explicit written authorization, or without sending a confirmation notice to the registrant and waiting the requisite two election cycles." *Common Cause* Dkt. 1 ¶ 61 *see also NAACP* Dkt. 1 ¶¶ 55-58. Plaintiffs asked for injunctive relief, to reinstate any voters removed by the illegal procedures, and for a statutory award of attorneys' fees and costs. *Common Cause* Dkt. 1 at 16; *see also NAACP* Dkt. 1 at 20.

### C. This Court and the Seventh Circuit Held That Failure to Follow Notice-and-Waiting Requirements Violates the NVRA

This Court granted Plaintiffs' motions for preliminary injunction. *Common Cause* Dkt. 103, *NAACP* Dkt. 63. It held:

> The act of registering to vote in a second state as determined by Crosscheck cannot constitute a written request to be removed from Indiana's voter rolls or a confirmation in writing from the voter that they have changed their address. A voter's act of registering to vote is simply that—a registration to vote. There is no request for removal, and the voter is not confirming for Indiana that they have had a change in residence.

*Common Cause* Dkt. 103 at 21. While the Court noted that information coming from Crosscheck "may or may not be reliable," its holding made clear that the problem was not the program's use. Rather, as Plaintiffs had argued, Indiana's failure to follow the NVRA's Notice-and-Waiting safeguards doomed SEA 442. *See id.* ("Because SEA 442 removes the NVRA's procedural safeguard required in particular cases of providing for notice and a waiting period, the Court determines that Common Cause has a high likelihood of success on the merits of its claim.").

The Seventh Circuit affirmed. It held that the NVRA "forbids a state from removing a voter from that state's registration list unless: (1) it hears *directly* from the voter via a 'request' or a 'confirm[ation] in writing' that the voter is ineligible or does not wish to be registered; or (2) the state goes through the statutorily prescribed [Notice-and-Waiting requirements]." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 959 (7th Cir. 2019) (emphasis added; first alteration in original). And explained that "[b]oth of these avenues focus on *direct* contact with the voter." *Id.* (emphasis added). The "omi[ssion of] any direct contact with the voter," the Seventh Circuit held, "is fatal." *Id.* at 958.

Plaintiffs' motions never argued that Crosscheck's use particularly violated the NVRA. Nor did this Court nor the Seventh Circuit hold that Crosscheck's use was "fatal" to SEA 442. In fact, the Seventh Circuit disclaimed the point, "stress[ing] that [it did] *not* evaluat[e] the question whether Indiana may choose to participate in Crosscheck or any other program." *Id.* at 957 (emphasis added). Its "concern," instead, was "only with the way the state is using the information it receives, and in particular whether that use complies with the NVRA." *Id.* It added:

> Act 442's problem has nothing to do with the reliability of Crosscheck or Indiana's confidence factors. What does matter is that the system it chose flouts the NVRA's command that the state rely on the registrant herself.

*Id.* at 961.

      **D.    SEA 334 Amends SEA 442 but Keeps the Same Impermissible Cancellation Procedures**

In March 2020, Indiana enacted SEA 334, which amended SEA 442. While Indiana abandoned the inaccurate Crosscheck program, it simply replaced Crosscheck with a functionally identical, Indiana-run program called the Indiana Data Enhancement Association ("IDEA"). SEA 334 § 5.5(b). Defendants and SEA 334's proponents describe IDEA literally as another Crosscheck: SEA 334's nominal author, State Senator Greg Walker, said SEA 334 "creat[ed] a voter maintenance list crosscheck database . . . .";[2] the SEA 334's House sponsor, State Representative Timothy Wesco, described SEA 334 as "[c]reating a cross-check of voter registrations with other states . . . ";[3] and testifying *against* SEA 334, Co-Director Nussmeyer said she did "not [] support [] the state creating a Kansas Crosscheck program" whose primary effect would "have Indiana become the next Kansas."[4] Indiana's Fiscal Impact Statement also confirms SEA 334 does not substantially change voter list maintenance procedures even though it has swapped Crosscheck for IDEA. *See Common Cause* Dkt. 184-4 at 3 ("*Voter Cancellation*—Similarly, as described under the IDEA section directly above, county voter registration offices would have very similar procedures to conduct voter checks and cancellations under the IDEA program as under the current program.").

While Kansas ran Crosscheck, the Co-Directors and Secretary Lawson administer IDEA (Secretary Lawson and Co-Director King were primary drafters of SEA 334 and proponents of IDEA). S. Hr'g.[5] Like Crosscheck, IDEA collects voter lists from other states and compares voter

---

[2] *Hr'g before the Ind. S. Comm. on Elections*, Jan. 23, 2020 (hereinafter "S. Hr'g"), http://iga.in.gov/information/archives/2020/video/committee_elections_3500/.
[3] *See Common Cause* Dkt. 185-1 at 1.
[4] S. Hr'g.
[5] Testifying on his and the Secretary's behalf in support of SEA 334, Co-Director King stated, "*[t]he Secretary of State's office has proposed in the bill*, as introduced, stepping in to form [IDEA] . . . ." S. Hr'g. Senator Walker, the Bill's nominal author, stated, "334 does have Amendment No. 1, which is pertaining to the adoption of the voter list maintenance program, *to get that in the form as the Secretary of State's looking to implement and adopt that program.*" *Id.* (emphasis added).

names and birthdates to identify potential matches. SEA 334 § 5.5(c)(1)-(2); see also S. Hr'g (King: IDEA is a program "where each state would voluntarily provide data to Indiana, Indiana would use the existing confidence factors in our state statutes, and provide data back to the participating states."). As SEA 442 previously required with Crosscheck, SEA 334 requires Indiana to run a series of so-called "confidence factors" to try to improve the reliability of the matches, then pushes the matches to county election offices. SEA 334 § 5.5(c). As with Crosscheck, IDEA does not collect or disseminate the actual voter registration documents underlying its "matches," *id.* § 5.5(b), (f), and does not involve direct contact with registrants. *Id.* § 5.5(1)-(b).

Under SEA 334, after the counties receive the matches from IDEA, they must make the exact same two "determin[ations]" they did under SEA 442 with Crosscheck matches: (1) whether the person "identified in the report provided . . . is the same individual who is a registered voter of the county; and (2) registered to vote in another state on a date following the date that voter registered in Indiana." SEA 334 § 5.5(d)(1)-(2).

SEA 334 added one more determination the counties must make before cancelling a voter registration—that the voter "(3) authorized the cancellation of any previous registration by the voter when the voter registered in another state." *Id.* § 5.5(d)(3). If a county cannot make this third determination, it must follow Notice-and-Waiting procedures. It was this third determination and Notice-and-Waiting requirement that SEA 442 removed from Indiana law, prompting Plaintiffs' lawsuits. And it is its reintroduction that Defendants claim renders this lawsuit moot. But unlike the pre-SEA 442 law, SEA 334 has one significant loophole: it specifically tells counties that they should treat information created and sent by third-party states as equivalent to a voter "authorizing" cancellation of their Indiana registration—something that the courts in this lawsuit *have already held* violates the NVRA.

Specifically, SEA 334 provides that if the Indiana election division (run by Defendants) "forwards written notice" from another state to a county, the county "should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration." SEA 334 § 5.5(f). SEA 334 makes clear: "A copy of the actual voter signature *is not required* to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division." *Id.* (emphasis added).

"[W]ritten notice" is a broader concept than a voter registration form or direct contact with a registrant. *See, e.g., NAACP* Dkt. 42-22 at 41:19-42:13 (Co-Director King: "It can be a printout from a county voter registration office that identifies the individuals who've indicated an address somewhere in Indiana. It can take the form of a copy of the individual's new voter registration record. And it can also come as a compilation made at the state level that lists that information. Can also take the form of emails from an individual at the county or in some states municipal level regarding that voter registration activity."). State Representative Wesco confirmed that the "written information" or "written notice" from another state need not be a signed out-of-state voter registration form or a direct communication with the registrant. He wrote, "When a voter registers in a new state, it is common practice for election officials to send notice of cancellation to the voter's previous state. . . . *These notices use different formats and contain different levels of detail regarding the voter's registration in the new state*." *Common Cause* Dkt. 185-1 at 2 (emphasis added). Representative Wesco provided six sample "notices" that would allow immediate cancellation of a voter's registration under SEA 334, only two of which contained direct communication with a registrant. *Id.* at 3-8.

Facing questions regarding SEA 334's compliance with federal law and effective injunctions, Co-Director King testified before Indiana's legislature that "the most important point to understand is that no final ruling has yet been issued in this litigation" and that "Indiana election

8

legislation has gone on to the US Supreme Court. That's the only place where we will have a final answer, either by a hearing, or by denial of certiorari to this particular litigation, assuming it continues without settlement." H.R. Hr'g. King further stated "I don't want anyone to be under the misimpression that a court has definitively ruled anything with regard to the provisions that are in current law or as amended by 334. Although, certainly the Seventh Circuit has indicated that it has serious issues with them." *Id*. King did not represent that SEA 334 complied with the NVRA or cured Defendants' NVRA violations. *Id.*

Plaintiffs made substantial efforts to stop the Indiana legislature from enacting a new law that simply repeated the same NVRA violations—through lobbying, through an op-ed, and through counsel in this case—all to no avail. *See, e.g.*, *Common Cause* Dkt. 185 ¶¶ 4-12. As a result of SEA 334's passage, Plaintiffs have suffered and will suffer injuries substantially the same as incurred as a result of SEA 442. *Common Cause* Dkt. 183 at 19-23; *NAACP* Dkt. 137 at 19-23.

## ARGUMENT

### A. Legal Standard

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff . . . [and] 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel v. Michel*, 66 F.3d 894, 897 (1995) (quoting *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993) (per curiam), quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)).

For federal courts to have subject matter jurisdiction over a case, Article III requires "an actual controversy . . . be extant at all stages of review." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Defendants' motion asserts there is no actual controversy because the passage

9

of SEA 334 has rendered these lawsuits moot, but "[t]he burden of demonstrating mootness 'is a heavy one.'" *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000), quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992), *quoting Mills v. Green*, 159 U.S. 651 (1985)). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id*. at 307-08 (quoting *Ellis v. Ry Clerks*, 466 U.S. 435, 442 (1984)).

When a challenged law "is repealed or amended mid-lawsuit—a 'recurring problem when injunctive relief is sought'—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted." *Smith v. Exec. Dir. of Indiana War Mem'ls Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014); *see also* 13C Charles Alan Wright & Arthur R. Miller, et al., Fed. Prac. & Proc. § 3533.6 (3d ed.) ("[R]epeal followed by reenactment of provisions similar to those repealed does not moot a continuing challenge"). The "[a]mendment or repeal of a challenged statute 'does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001), quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).[6]

---

[6] *Zessar* provides an instructive counter-example. In *Zessar*, the plaintiff sued the Illinois State Election Board after it erroneously rejected his absentee ballot and did not notify him until a year after the election. 563 F.3d at 790-91. At the time, the code required no notice to voters whose absentee ballots had been rejected or opportunity for them to contest it. *Id.* at 791. During the course of litigation, the state general assembly amended the code to explicitly require meaningful notice and a hearing opportunity for rejected absentee ballots. Because, unlike SEA 334 vis-a-vis SEA 442, "the post-amendment Code [wa]s *not* substantially similar to the provisions Zessar challenged in bringing suit, and there [wa]s no indication that the defendants plan[ned] to reenact the Code as it stood prior to amendment," the 7th Circuit found Zessar's claims moot. *See id.* at 795 (emphasis added).

10

Put another way, when an "amendment provides no assurance that the complained-of conduct will cease, the case is not moot." *Rembert v. Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995) ("[I]f the injury of which a plaintiff complains continues even under the amended statute, then . . . a court may act.").

**B. The Lawsuits Are Not Moot Because SEA 334 Continues the Same NVRA Violations from SEA 442**

SEA 334's amendment to Indiana Code § 3-7-38.2-5 reenacts SEA 442's fundamental NVRA violations. The amendment failed to moot this lawsuit because the "change does not actually correct the asserted constitutional problem . . . ." *Smith*, 742 F.3d at 287.

In *Smith*, for example, the court enjoined as unconstitutional a vague policy requiring a permit for any gatherings at a public war memorial for a "specific purpose," which the defendant had used to remove the plaintiff during a small protest. *Id.* The entity in charge of the memorial changed its policy mid-lawsuit to provide more detail on "purposes" requiring a permit. *Id.* The court found that the new policy still would have infringed on a protest like plaintiff's. *Id.* at 288. The Seventh Circuit held that the policy change did not moot the lawsuit because the policy still encroached on First Amendment rights for the same fundamental reasons (albeit through superficially different means). *See also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (*"*The new ordinance may disadvantage [plaintiffs] to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way. We hold that the case is not moot.").

The same principle drove the result in *ADT Security Services, Inc. v. Lisle-Woodridge Fire Protection District*, 724 F.3d 854, 864 (7th Cir. 2013). There, a local fire district enacted an ordinance requiring all commercial property owners to discontinue private security contracts and run security/alarms through a centralized district-operated system. *Id.* at 857. After substantial litigation—including an injunction and appeal—the district replaced its ordinance with a new one

11

allowing commercial property owners to use private vendors for security. *Id.* at 861. But the new ordinance still required companies to run alarm systems through the district, meaning companies had to modify them and purchase additional components to make them compatible. *Id.* at 864-65. Although the new ordinance dropped the most draconian measure (declaring all private contracts with security vendors "null and void"), it still "did not resolve the disputes between the parties" and kept "several requirements from the original ordinance that would continue to injure the alarm companies by effectively blocking them from monitoring in the District or that are beyond the District's authority to impose." *Id.* at 864. As a result, the case was not moot. *Id.* at 865-66.

The same holds true here as it did in *Smith* and *ADT*. SEA 334 made some changes to the law—swapping out Crosscheck for IDEA and adding the "authorization" determination back into the list maintenance procedure (albeit with a massive loophole). But SEA 334 still expressly allows Indiana to continue the same, NVRA-violating practice of cancelling voter registrations based on information passed along from other states, without direct voter contact or the Notice-and-Waiting process. *See* Section II.D, *above*. In fact, SEA 334 goes a step further and directly contradicts the holdings in this case by making third-party information ***equivalent*** to a voter's "confirmation" or "request" to cancel their registration under Indiana law. This is the precise argument that Defendants advanced to defend SEA 442 and which both courts rejected in clear, detailed terms. If anything, SEA 334 only makes the NVRA violation more explicit. Further, SEA 334 is still causing damage to Plaintiffs. *Id*.

None of the authority that Defendants cite supports finding mootness here. In *County of Los Angeles v. Davis*, 440 U.S. 625 (1979), job applicants brought a civil rights action against a fire department alleging that its proposed temporary hiring procedure was discriminatory. The Supreme Court found the claims moot after the department completely abandoned the proposal during litigation and replaced it with a hiring system that not only addressed discrimination

concerns, but actually increased minority representation among employees. *Id.* at 633. Likewise, in *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007), the Seventh Circuit found that a cemetery's claims against the city of Chicago for a proposed airport expansion were moot after the city instead approved a layout plan that left the cemetery completely unaffected. Instead of supporting Defendants' claim of mootness, these cases highlight that mootness arises only when defendants enact new systems or policies that ***fully*** address the plaintiffs' underlying complaints and injuries.

Until Indiana law stops allowing cancellation of voter registrations based on information passed along from third parties (including other states), without direct voter contact or the Notice-and-Waiting procedures, Defendants have not fixed the fundamental problem at the heart of Plaintiffs' lawsuits or shown that Plaintiffs' injuries no longer exist. Changing *some* aspects of SEA 442—even aspects that Plaintiffs also challenged in this lawsuit—does not moot this case. *See Ne. Fla. Chapter*, 508 U.S. at 662 ("Nor does it matter that the new ordinance differs in certain respects from the old one. [Otherwise], a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect."). Plaintiffs' challenge to SEA 442 would not have been mooted if Kansas, who administers Crosscheck, changed the program's name or made other superficial but ineffectual changes. Likewise, Indiana cannot extinguish a live controversy by calling its enjoined law by another name.

Finally, because Co-Director King and Secretary Lawson were involved in the passage of SEA 334, it bears pointing out that they and the legislative proponents of SEA 334 do not appear concerned with whether SEA 334 fixes the NVRA violations found by this Court and the Seventh Circuit. During Co-Director King's testimony before legislators, he said that this litigation "is not over and the Seventh Circuit has not issued a final opinion," and the legality of SEA 442 would not be resolved until ruled upon by the United States Supreme Court. H.R. Hr'g. He also testified

13

that—notwithstanding the uncontested evidence in this lawsuit—Indiana counties performed voter list maintenance in a uniform way that complied with the NVRA (a claim also repeated by State Senator Walker). *Id.*; *Common Cause* Dkt. 185 ¶ 10; *see also Common Cause* Dkt. 103 at 15. Defendants also do not argue in their motion to dismiss that SEA 334 complies with the NVRA.

This is particularly relevant because Defendants administer IDEA and tell counties when to immediately cancel a voter's registration based on information received from another state. To the extent Defendants suggest this litigation is moot because they intend to issue guidance or take other future action to render SEA 334 compliant with the NVRA, such a claim is worthy of skepticism. In the *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706 (M.D. Tenn. 2019), the court held the plaintiffs' First Amendment challenge to a Tennessee law governing voter registration communications was not moot simply because election officials submitted declarations "to the effect that they have not yet issued any regulations pursuant to the Act and do not intend to penalize anyone until those regulations are issued." *Id* at 718. The provisions of that law were going "into effect regardless of whether there has been any rulemaking and regardless of what the defendants say in non-binding statements offered in the context of trying to escape judicial review." *Id*. at 718-19; *cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (holding that case was not moot despite repeal of challenged statute where city had announced its intent to reenact the statute if district court's judgment were vacated). Only an enforceable order ensuring that Indiana will not cancel voter registrations based on third-party information without *direct* voter contact or Notice-and-Waiting Procedures will remedy the NVRA violations at issue in this lawsuit.

**C.   Granting Defendants' Motion Would Unnecessarily Waste Judicial Resources**

Three years into litigation, Defendants are asking the Court to dismiss these cases and make Plaintiffs file new cases, over the same provision of Indiana Code (Ind. Code § 3-7-38.2), the same

14

section of the NVRA (52 U.S.C. § 20507), and the same challenged conduct (first, permitting cancellation of a voter's registration on the basis of second-hand, indirect information without providing notice to the affected voter and waiting, and, second, non-uniform voter list maintenance). *See Common Cause* Dkt. 181 at 3 ("Should the Plaintiffs take issue with any current protocol the State uses to manage voting rolls, that would be a matter for a new case."); *id.* at 9 ("Any alleged violations under SEA 334, would be entirely new claims, and should be treated as such, by, for example, allowing for discovery and a full hearing of the issues that would arise from that purely speculative case."). Defendants appear to want the same parties to start all over with a new judge without three years of experience in the case, defend against new motions to dismiss, file for new preliminary injunctive relief, repeat fact and expert discovery, file new dispositive motions, and prepare for trial, hoping not to have to start all over again due to insignificant changes in a law that is frequently amended.

Neither the Court nor the parties and their constituents should have to bear the burden of re-litigating indistinguishable claims. For the reasons articulated above, Defendants' motion should be denied and summary judgment granted in Plaintiffs' favor. But if the Court disagrees, at most, Defendants allege a curable pleading deficiency that Plaintiffs can address through supplementing their pleadings under Federal Rule of Civil Procedure 15(d); *see also GEFT Outdoor, L.L.C. v. City of Westfield*, No. 1:17-cv-04063-TWP-TAB, 2019 WL 2142887 at *5 (S.D. Ind. May 16, 2019) (Baker, M.J.) ("GEFT's new claims in its proposed supplement are sufficiently related such that litigating them in a separate action risks waste."). Plaintiffs would request leave to amend their complaints with limited additional allegations addressing SEA 334 and asserting identical claims to enjoin Defendants' implementation of (i) Indiana Code § 3-7-38.2-5.5(d)-(f) and cancellation of voters' registrations absent direct contact and without following the NVRA's notice-and-waiting requirements and (ii) non-uniform voter list maintenance.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Dated: July 15, 2020

*/s/Alexandre J. Tschumi*

| | |
|---|---|
| Alexandre J. Tschumi | Matthew R. Jedreski* |
| Sascha N. Rand | Grace Thompson* |
| Ellyde R. Thompson | DAVIS WRIGHT TREMAINE LLP |
| Ellison Ward Merkel | 920 Fifth Ave, Suite 3300 |
| Geneva McDaniel | Seattle, WA 98104 |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | (206) 622-3150 |
| 51 Madison Avenue, 22nd Floor | Sophia Lin Lakin* |
| New York, NY 10010 | Adriel I. Cepeda Derieux* |
| (212) 849-7000 | Dale Ho* |
| | AMERICAN CIVIL LIBERTIES UNION |
| Myrna Pérez | 125 Broad Street, 18th Floor |
| Eliza Sweren-Becker | New York, NY 10004 |
| BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW | (212) 519-7836 |
| 120 Broadway, Suite 1750 | |
| New York, NY 10271 | |
| (646) 292-8310 | |

**[Signature Block Continued on Next Page]**

16

<div style="display: flex;">

Trent A. McCain  
MCCAIN LAW OFFICES, P.C.  
363 S. Lake St., Suite 2  
Gary, IN 46403  
(219) 884-0696  

*Counsel for Plaintiffs Indiana State Conference of the National Association for the Advancement of Colored People (NAACP) and League of Women Voters of Indiana*

Stuart C. Naifeh *  
Kathryn C. Sadasivan*  
DEMOS  
80 Broad Street, 4th Floor  
New York, NY 10004  
(212) 485-6055  

Chiraag Bains*  
DEMOS  
740 6th St., NW, 2nd Floor  
Washington, DC 20001  
(202) 864-2746  

Gavin M. Rose, No. 26565-53  
Stevie J. Pactor, No. 35657-49  
ACLU OF INDIANA  
1031 E. Washington Street  
Indianapolis, IN 46202  
(317) 635-4059  

William R. Groth, No. 7325-49  
FILLENWARTH DENNERLINE GROTH & TROWE LLP  
429 E. Vermont Street, Suite 200  
Indianapolis, IN 46202  
(317) 353-9363  

</div>

*Admitted pro hac vice*

*Counsel for Plaintiff Common Cause Indiana*

17

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's filing system. Parties may access this filing through the Court's system.

Dated this 15th day of July, 2020

<div style="text-align:right">

*/s/  Alexandre J. Tschumi*
Alexandre J. Tschumi

</div>