UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:17-cv-02897-TWP-MPB |
| CONNIE LAWSON, in her official capacity as Secretary of State of Indiana, J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division, ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, et al., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

| | | |
|---|---|---|
| COMMON CAUSE INDIANA, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:17-cv-03936-TWP-MPB |
| CONNIE LAWSON, in her official capacity as Secretary of State of Indiana, J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division, and ANGELA M. NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs brought their lawsuits to challenge Indiana's participation in the Interstate Voter Crosscheck Program (Crosscheck), but now ask this Court to grant a permanent injunction prohibiting implementation of a new law unrelated to Crosscheck that complies with the National Voter Registration Act. Consequently, the Court should deny the plaintiffs' motion for summary judgment and dismiss these cases.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

The National Voter Registration Act of 1993 ("NVRA") was passed to establish procedures to ensure that eligible individuals are able to register to vote and local and federal governments ensure those procedures are implemented to increase voter participation in elections. 52 U.S.C. § 20501. The voter lists are maintained by the county boards, but the local county officials receive guidance from the election division.

Plaintiffs initiated this lawsuit in 2017 because of Indiana's participation in Crosscheck and how Indiana election officials were to process the Crosscheck information. In 2017, Indiana enacted SEA 442 that outlined the requirements for local county voter registration offices to remove the registration of individuals that were registered to vote in another state after the date they registered in Indiana after they confirmed the matches with the information received through Crosscheck, eliminating a mailer confirmation to the individual of their cancellation. Ind. Code § 3-7-38.2-5.

Indiana has not participated in Crosscheck since 2017, when it ceased operations. In particular, as of March 25, 2020, Indiana no longer participates in the Crosscheck program, having withdrawn from the memorandum of understanding after the passage of SEA 334. [Dkt. 135, Ex. 1.] SEA 334 required Indiana to withdraw from Crosscheck and instead established a different data sharing program for voter list maintenance with different processing requirements. Ind. Code § 3-7-38.2-5.1(a).

## STATEMENT OF MATERIAL FACTS IN DISPUTE

*SEA 442*

Senate Bill 442, enacted in 2017 but never fully implemented, changed the way Indiana election officials would use Crosscheck data that identified matches of voters who were registered in states other than Indiana. Specifically, to maintain the voter registration list, the election officials, after receiving information through Crosscheck of an individual register to vote in another state, would compare the first and last name, and date of birth with the other state, and make a determination. A decision to cancel the voter's registration would be made where the individual identified by Crosscheck was the same individual registered in the county and they were registered to vote in another state after initially registering to vote in Indiana. Ind. Code § 3-7-38.2-5(d)-(e). SEA 442 did not require a county election official to confirm a voter's cancellation of a previous registration from another state.

*SEA 334*

3

SEA 334 conforms to the requirements of the NVRA. Specifically, SEA 334 establishes a voter list maintenance program. Ind. Code § 3-7-38.2-5.1(a). SEA 334 requires that local county officials confirm whether registered voters intended to cancel their registration if they are registered to vote in another state. Ind. Code § 3-7-38.2-5.1 (d)(3). County officials must review the dates the individual registered to vote in Indiana and when the individual registered to vote in another state to confirm the most recent registration. Ind. Code § 3-7-38.2-5.1 (f). County officials are required to send a confirmation to the individual's address before cancelling the registration and, where it does not appear that the individual did not authorize the cancellation, the county official must send an address confirmation to the voter's Indiana address. Ind. Code § 3-7-38.2-5.1(e). The new law sets forth new confidence factors, new points system, and ensures the voter registration cancellation is forwarded if the individual's name matches the registration in another state or the confidence factors are met. Ind. Code § 3-7-38.2-5.1 (b)(5).

Under the new law, if, within 30 days of the Indiana Election Division receiving information that an individual has registered to vote in another state, his or her first and last names, and date or birth are confirmed with the out of state information and they score 75 points or more on the confidence factors, only then is this information provided to the local county officials. SEA 334 § 8(c). In addition to confirming whether the individual is the same individual registered in the county, has registered in another state after registering in Indiana, the individual must have authorized the cancellation of their voter registration in another state – only then is the registration

4

cancelled. Ind. Code § 3-7-38.2-5.1(e) Where the individual has not authorized the cancellation in another state, local officials must take an additional step of sending a confirmation notice to the voter's Indiana address—direct contact with the voter that SEA 442 did not incorporate and a key element that Plaintiffs took issue with in regards to SEA 442. *Id*. Additionally, where another state provides information of a later registration to Indiana, via written notice, the state must provide the individual's signed voter registration application that specifically authorizes the cancellation of any previous registrations. Ind. Code § 3-7-38.2-5.1(f) A similar provision in SEA 442 was not addressed by the Seventh Circuit. *Common Cause Ind. V. Lawson*, 397 F.3d 944, 961 (7th Cir. 2019).

## STANDARD OF REVIEW

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir. 1990). Under this standard, a dispute of fact that is relevant to the moving party's legal position will defeat summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48.

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S.

at 248. In determining the existence of a genuine issue of material fact, the court construes all facts in a light most favorable to the non-movant and draws all reasonable inferences in his favor. *Id*. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. After drawing all reasonable inferences from the facts in favor of the non-movant, if a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

If a new argument is made in summary judgment briefing, "the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Company v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (holding that a Plaintiff forfeited a new argument because the new argument necessarily changed the complaint's factual theory, and the Plaintiff did not allege facts supporting the new claim in its complaint "and had not otherwise signaled its pursuit of this theory until after discovery had closed"). While a plaintiff may generally amend the legal theories asserted in a complaint, "it cannot alter 'the factual basis of [its] complaint at summary judgment'" because that constitutes "an unacceptable attempt to amend the pleadings through summary judgment argument." *BRC Rubber & Plastics, Inc. v. Continental Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018) (quoting *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)).

6

**ARGUMENT**

## I.  Granting Summary Judgment is Improper Because SEA 442 Has Been Substantially Amended

On August 23, 2017, the NAACP and League of Women Voters filed their lawsuit, alleging that "Senate Bill 442 flagrantly removes protections mandated by the NVRA and instead provides for the *immediate* removal of a voter based solely on the possibility of changed residence by the Crosscheck database . . . [*NAACP* Dkt. 1, ¶ 26] (emphasis in original). They further argued that "[i]n practice, Crosscheck produces inaccurate results, false positives, and leads to the discriminatory disenfranchisement of many legally registered voters" [*NAACP* Dkt. 1, ¶ 36], noting that Crosscheck's high rate of false positives has been well documented. [*NAACP* Dkt. 1, ¶ 39.] They requested that the Court declare the voter removal provision of Indiana SB 442 violate [the NVRA]. [*NAACP* Dkt. 1, p. 20.]

On June 8, 2018, this Court issued a preliminary injunction "prohibiting Defendants from taking any action to implement *SEA 442* until this case has been finally resolved," issuing a similar ruling in *Common Cause Indiana v. Lawson et al. . . .*" *Indiana State Conference of Nat'l Ass'n for Advancement of Colored People v. Lawson*, 326 F. Supp. 3d 646, 664 (S.D. Ind. 2018), *aff'd sub nom. Common Cause Indiana v. Lawson*, 937 F.3d 944, (7th Cir. 2019)(emphasis added). Following an appeal, the Seventh Circuit affirmed the district court's holding that Plaintiffs are likely to succeed on the merits of their challenge to *Act 442*. *Common Cause Indiana v. Lawson*, 937 F.3d 944, 962 (7th Cir. 2019) (emphasis added).  In essence, Plaintiffs' lawsuit to declare that SEA 442 violates the NVRA was based on the assertion that

a Crosscheck "match" (the interstate program designed to identify voters who have moved to, and registered to vote, in another state) does not constitute a voter's authorization to cancel any previous registrations. *NAACP*, 326 F. Supp. 3d at 657.

On March 21, 2020, SEA 334 was signed into law. SEA 334 voided the actions of NVRA officials to execute a memorandum of understanding with the Kansas Secretary of State and ordered the Indiana Secretary of State to promptly notify the Kansas Secretary of State that Indiana is no longer a party to the memorandum of understanding. § 7. SEA 334 also established the Indiana data enhancement association (IDEA), and introduced new protocol for cancelling voter registrations. § 8. On March 25, 2020, Indiana Secretary of State Connie Lawson informed Kansas Secretary of State Scott Schwab that, effective immediately, Indiana was withdrawing from the Memorandum of Understanding entered with Kansas and other states regarding the Crosscheck program. [Dkt. 135, Ex. 1.]

The passage of SEA 334 effectively eliminated SEA 442, abolishing the voter registration removal procedure in dispute in this litigation and withdrawing Indiana from Crosscheck, the very same database whose unreliability and flaws the Plaintiffs' Complaints centered upon. Now Plaintiffs, under the auspices of a Motion for Summary Judgment, are asking this Court to switch gears and grant them relief far beyond the one requested in their Complaints and outside the scope of this litigation: namely, to permanently enjoin Defendants' implementation of SEA 334 § 8 (d) – (f) and to prohibit Defendants from otherwise removing any Indiana registrant from the list of eligible voters because of a change in residence absent direct contact from the

voter or the Notice-and-Wait method. [Dkt. 183, p. 33.] Such relief may only be requested by initiating a separate cause of action, complete with its own claims, defenses, discovery, and relief.

This Court enjoined the implementation of SEA 442 until this case has been finally resolved. *NAACP*, 326 F. Supp. 3d at 664. SEA 442 does not exist and therefore the case has been resolved. Plaintiffs' Motion for Summary Judgment should be denied.

## II.   Summary judgment briefing is premature as SEA 334 substantially differs from SEA 442

Because Plaintiffs have attempted to alter the factual basis of Plaintiffs' complaint through summary judgment briefing, this Court should deny their summary judgment motion.

SEA 334 is a substantially different law than SEA 442. SEA 334 re-introduces the requirement that, before a county registration official removes a voter from the registration list based on information received from Indiana's NVRA official, the county registration official must first determine whether the voter "authorized the cancellation of any previous registration by the voter when the voter registered in another state." SEA 334 § 8(d)(3); Common Cause Dkt. 184-3 at 10; NAACP Dkt. 137-4 at 10. This language existed in the Indiana Election Code prior to SEA 442, and Plaintiffs do not allege that the statute violated the NVRA prior to SEA 442's enactment. *See* Common Cause Dkt. 184-1 at 10; NAACP Dkt. 137-2 at 10.

9

Furthermore, SEA 334 requires that, if a county voter registration official receives written information directly from another state regarding a voter's registration, rather than from the NVRA officials, before the Indiana county voter registration official may cancel the voter's registration, the other state must provide the official with "a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration." SEA 334 § 8(f)(1). The plain language of the statute contradicts Plaintiffs' assertion that IED policy does not require a county to review a copy of an out-of-state voter registration form to determine that an individual authorized cancellation of his prior registrations. Indeed, to support this assertion, Plaintiffs rely on outdated deposition testimony of Defendant King taken over two years ago and taken in the context of how Crosscheck operated under SEA 442. *See* Common Cause Dkt. 183 at 14; NAACP Dkt. 135 at 14. SEA 442 had removed the requirement that a county had to determine that a voter authorized the cancellation of any previous registration by the voter when the voter registered in another state, and SEA 334 re-introduced that provision, a vital consideration when evaluating the applicability of deposition testimony taken in light of the law in place at the time of the testimony.

Some states use voter registration forms that include an authorization by the voter to cancel the registration at a prior address. *See* Common Cause Dkt. 194 at 2; NAACP Dkt. 142 at 2. The Seventh Circuit expressly declined to address whether such a confirmation, when passed through multiple hands to get to the jurisdiction where the voter had previously been registered, violated the NVRA. *Common Cause*

*Indiana v. Lawson*, 937 F.3d 944, 961 (7th Cir. 2019). Accordingly, contrary to Plaintiffs' assertions, the law of the case does not apply here as the Seventh Circuit did not address this issue.

Plaintiffs also take issue with SEA § 8(f)(2), which provides:

> If the election division forwards written notice from another state to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. A copy of the actual voter signature is not required to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division.

SEA § 8(f)(2). Plaintiffs assert that "written notice" could be "just about anything" based on deposition testimony taken of Defendant King over two years' prior to the passage of SEA 334, where Defendant King was being questioned about what constituted written notice under SEA 442. Common Cause Dkt. 183 at 30; NAACP Dkt. 135 at 30. Again, the applicability of deposition testimony taken regarding the earlier law which differs significantly from the current law is useless as supporting evidence for Plaintiffs' new claims. Notably, in contrast to SEA 442, SEA 334 explicitly provides in Section 8(f)(1) that if a county receives information directly from another state, and not from the Indiana Election Division, "the out-of-state voter registration official must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration."

11

As the U.S. Supreme Court has long recognized, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan v. Dept. of Treasury*, 489 U.S. 803, 809 (1989). Under the doctrine of statutory construction, considering Section 8(f)(1) and 8(f)(2) together, Section 8(f)(1) implies that under Section 8(f)(2), if the Indiana Election Division notifies a county official that the voter cancelled registration, the Indiana Election Division also received a copy of the voter's signed voter registration application authorizing cancellation. The NVRA provides that a state generally cannot remove a voter from the registration rolls without direct contact from voter, but the NVRA does not address whether a state official in possession of a signed voter registration form authorizing cancellation can notify a county official that a voter in another state authorized cancelling his or her Indiana voter registration without providing a copy of the signed voter registration to the county official before the county official removes the voter from the rolls. 52 U.S.C. § 20507(d)(1); *see also Common Cause Indiana v. Lawson*, 961 F.3d 944, 961 (7th Cir. 2019) ("when a *state* does not itself possess a copy of a communication from a suspected Indiana registrant, it does not have a 'request of the registrant' sufficient by itself to permit immediate removal of that voter's name from the rolls" (emphasis added)).

SEA 334 also re-introduces the notice and waiting requirement that had been included in the Indiana Election Code before SEA 442's implementation, something Plaintiffs challenged in their Complaints. *See* SEA § 8(e); Common Cause Dkt. 184-1

at 10; NAACP Dkt. 137-2 at 10; Common Cause Dkt 1 at 2, ¶ 5; NAACP Dkt. 1 at 3, ¶ 4. Notably, SEA 334 requires that if a county voter registration official determines that the voter did not authorize the cancellation of any previous registration when the voter registered in another state, the county voter registration must send an address confirmation notice. SEA § 8(e). This provision of SEA 334 expressly addresses the Seventh Circuit's concern that SEA 442 bypassed entirely NVRA's notice and waiting required procedure, and the Seventh Circuit explicitly stated that Indiana may use a program like IDEA to launch this process. *Common Cause Indiana v. Lawson*, 937 F.3d 944, 962 (7th Cir. 2019).

Importantly, Plaintiffs argue that IDEA's implementation violates the NVRA, but provide no evidence that SEA 334's provision establishing IDEA has actually been implemented. Plaintiffs provide no evidence that either the Indiana Election Division Co-Directors or the Indiana Secretary of State have implemented an Order yet as required by SEA 334 § 8(b) to establish IDEA's administration of voter registration list maintenance, that any states have joined as members, or that states have begun exchanging voter registration data using IDEA.

Plaintiffs improperly rely on evidence in the record collected during discovery and in the context of the law in place at the time, SEA 442, to support their assertions that the Defendants' implementation of SEA 334—a substantially different law on its face—violates the NVRA and to support their assertions that counties do not implement voter registration list maintenance uniformly. Similarly, Plaintiffs improperly rely on recorded legislative testimony as evidence of how SEA 334 will be

13

implemented. Under Indiana law, video, or audio footage of legislative sessions does not constitute part of the legislative history or an expression of legislative intent, unless certain conditions are met. I.C. § 2-5-1.1 *et al.* The legislative statements used by Plaintiffs in support of their contention that SEA 334 violates the NVRA were made under the protection of that statute and, therefore, it is improper to rely on them in place of discovery. See *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (stating that the newly presented claims required discovery specific to them). Regardless, "[l]egislative history is not the law." *Azar v. Allina Health Services*, __ U.S. ___, 139 S. Ct. 1804, 1814 (2019).

Because SEA 334 is significantly different from its predecessor and does not, on its face, violate the NVRA as Plaintiffs suggest, summary judgment in Plaintiffs' favor is improper. By challenging the methods of implementing the new law, Plaintiffs have attempted to amend the factual basis of their Complaint through summary judgment briefing, and this Court should consequently deny their request for summary judgment.

## III.   Defendants Are Not Responsible for Implementing the Challenged Portions of SEA 334

None of the Defendants implement and/or enforce the provisions of the statute at issue, specifically, SEA 334 §§ 5.5(d)-(f). Sovereign immunity therefore bars Plaintiffs' claims for relief against those officials on the basis of that provision, and thus their motion for summary judgment should be denied.

Plaintiffs' request for summary judgment, and the subsequent grant of a permanent injunction prohibiting Defendants' implementation of SEA 334 §§ 5.5(d)-

(f), requires that the Defendants are in fact the parties who implement and enforce that statute. Since none of the Defendants presently named in this action do, Plaintiffs' request for summary judgment is barred by sovereign immunity.

The *Ex parte Young* doctrine establishes the exception(s) by which state officers acting in their official capacities can be sued for alleged violations of federal law (or the Constitution), thereby piercing the veil of protections granted by state sovereign immunity. *See generally Ex parte Young*, 209 U.S. 123 (1908). "[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, [he or she] is not the State for sovereign-immunity purposes." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Thus, Plaintiffs' requests for relief can only be granted against Defendants if they enforce SEA 334, which they do not.

> [T]he *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required "connection", but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty...it must include the right *and the power* to enforce the statutes of the state, including, of course, the act in question..."

*Okpalobi v. Foster*, 244 F.3d 405 (416–17) (5th Cir. 2001) (emphasis in original).

At bottom, Plaintiffs face a standing issue with respect to the defendants they've named. To satisfy the standing requirements, "[t]here must be a causal connection between the plaintiff's injury and the conduct of which he complains." *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir.)(2018), *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Further, even if the plaintiff were to establish this causal

connection, the plaintiff must further "show that it is likely a favorable decision against the named defendant would redress the plaintiff's injury." *Id.*

The mere fact that Secretary Lawson is the Secretary of State of Indiana, and that Defendants King and Nussmeyer are Co-Directors of the Indiana Election Division, is not sufficient to make them appropriate Defendants in the present action. The mere fact that Defendants Lawson, King, and Nussmeyer have responsibilities with regards to overseeing state elections does not provide a sufficiently direct connection to the statute Plaintiffs seek to challenge. *See also Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir.), *cert denied*, 139 S. Ct. 126, 202 L. Ed. 2d 33 (2018) (stating that "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.").

In *Doe v. Holcomb,* the Seventh Circuit declined to hold high-level state officials as de facto appropriate defendants merely because they held roles which generally required them to uphold the laws of the state. The rationale applied in *Doe v. Holcomb* applies here as well. Notably, none of the Defendants in this case has the "requisite connection" to bring them within *Ex parte Young's* reach with regards to SEA 334. Specifically, the challenged portions of SEA 334 §§ 5.5(d)-(f) delegate the responsibility for determining which individuals meet the qualifications as set out in SEA 334 § 5.5(d) to the "individual county voter registration offices", as they are defined in Ind. Code § 3-5-2-16.2.

Plaintiffs have failed to demonstrate that Defendants have, or will, exert any direction or control over the determinations made under SEA 334 §§ 5.5(d)-(f), such that they would have a "substantial connection" to that process, and thus, are within the ambit of *Ex parte Young*. Additionally, there is nothing to suggest that Defendants have the authority to coerce the individual county voter registration offices to make specific determinations with regards to the removal of any Indiana registrants from the list of eligible voters due to a chance in residence.

As a consequence of Plaintiffs' failure to show that Defendants are the parties who implement and/or enforce the challenged portions of SEA 334, Defendants are not proper parties to this action, and thus Plaintiffs' request for summary judgment is barred by sovereign immunity.

## CONCLUSION

Because Plaintiffs' summary judgment motion is an improper attempt to amend their pleadings through summary judgment briefings, and because SEA 334 is a substantially different law than SEA 442, the law challenged in Plaintiffs' complaints, this Court should deny Plaintiffs' summary judgment motion. Furthermore, this Court should deny Plaintiffs' summary judgment motion because Plaintiffs' claims against Defendants are barred by sovereign immunity as the Defendants are not responsible for removing voters from the voter registration list.

Respectfully submitted,

Office of the Indiana Attorney General

Date: July 29, 2020                 By:     Jefferson S. Garn
                                            Section Chief, Administrative & Regulatory
                                            Enforcement Litigation

                                            Aleksandrina P. Pratt
                                            Deputy Attorney General

                                            Courtney L. Abshire
                                            Deputy Attorney General

                                            Parvinder K. Nijjar
                                            Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Phone: (317) 234-7119
Email: Jefferson.Garn@atg.in.gov