UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA, | |
| Plaintiffs, | |
| v. | Docket No. 1:17-cv-02897 |
| CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, | |
| Defendants. | |
| COMMON CAUSE INDIANA, | |
| Plaintiff, | |
| v. | Docket No. 1:17-cv-03936 |
| CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Myrna Pérez
Eliza Sweren-Becker
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271

Sascha N. Rand
Ellyde R. Thompson
Ellison Ward Merkel
Geneva McDaniel
Alexandre J. Tschumi
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Trent A. McCain
MCCAIN LAW OFFICES, P.C.
5655 Broadway
Merrillville, IN 46410
(219) 884-0696

*Counsel for Plaintiffs Indiana State
Conference of the National Association for the
Advancement of Colored People (NAACP) and
League of Women Voters of Indiana*

Sophia Lin Lakin*
Adriel I. Cepeda Derieux*
Dale Ho*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7836

Stuart C. Naifeh*
Kathryn C. Sadasivan
DEMOS
80 Broad Street, 4th Floor
New York, NY 10004
(212)485-6055

Matthew R. Jedreski*
Grace Thompson*
Kate Kennedy*
DAVIS WRIGHT TREMAINE LLP
1200 Third Avenue, 22nd Floor
Seattle, WA 98101
(206) 622-3150

Chiraag Bains*
DEMOS
740 6th St., NW, 2nd Floor
Washington, DC 20001
(202) 864-2746

Gavin M. Rose, No. 26565-53
Stevie J. Pactor, No. 35657-49
ACLU OF INDIANA
1031 E. Washington Street
Indianapolis, IN 46202
(317) 635-4059

William R. Groth, No. 7325-49
FILLENWARTH DENNERLINE GROTH &
TROWE LLP
429 E. Vermont Street, Suite 200
Indianapolis, IN 46202
(317) 353-9363

*Counsel for Plaintiff Common Cause Indiana*

* Admitted *Pro hac vice*

ii

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

I.    SEA 334 STILL PERMITS CANCELLATION OF A VOTER REGISTRATION
WITHOUT DIRECT CONTACT WITH A REGISTRANT ...............................................2

    A.    SEA 334 Does Not "Substantially Amend" SEA 442 and They Do Not
"Substantially Differ" ...............................................................................2

    B.    Defendants' Nonsensical Interpretation of SEA 334 Is Belied By Its Text
and the Evidence ......................................................................................4

    C.    Plaintiffs' Theory of Liability and Request for Relief Have Not Changed ...........10

II.    DEFENDANTS RAISE NO LEGALLY COGNIZABLE DISPUTES .............................9

    A.    Defendants Concede this Court and the Seventh Circuit's Holdings on the
NVRA's Requirements and Plaintiffs' Organizational Standing .........................10

    B.    Defendants Fail to Respond to Substantially All of Plaintiffs' Statement of
Material Facts Not in Dispute, Thereby Admitting Them .....................................10

    C.    Defendants' Statements of Material Facts in Dispute Are Unsupported and
Should Be Disregarded ............................................................................12

    D.    Lacking Evidence of Their Own, Defendants Incorrectly Attack Plaintiffs'
Direct Quotations of Them .......................................................................14

III.    SOVEREIGN IMMUNITY DOES NOT BAR SUMMARY JUDGMENT
AGAINST DEFENDANTS ..........................................................................15

    A.    Defendants *Are* Responsible for NVRA Compliance and for Implementing
the Challenged Portions of SEA 334 ..............................................................16

    B.    *Ex Parte Young* Does Not Bar Summary Judgment Against Defendants .............19

CONCLUSION.......................................................................................20

## <u>INTRODUCTION</u>

Plaintiffs' Motion for Summary Judgment demonstrated that SEA 334 violates the NVRA in precisely the same manner as its predecessor, SEA 442: its plain text permits the cancellation of Indiana voter registrations without direct voter contact or following the NVRA's Notice-and-Waiting Requirements. In turn, Defendants' implementation of SEA 334 will also violate the NVRA. In their Response, Defendants do not offer *any* evidence to contest the facts Plaintiffs laid out, because Defendants cannot. Instead, Defendants try their hand at misdirection in two ways. First, they seek a second bite at the apple on their Motion to Dismiss, repeating its arguments. Those arguments are unavailing for reasons Plaintiffs have already laid out: SEA 334 perpetuates the same NVRA violations as SEA 442, only now under the banner of an interstate voter roll comparison system operated by Indiana instead of Kansas. Second, Defendants offer a new, tortured interpretation of Section 5(f) of SEA 334 to assert it does not violate the NVRA. But SEA 334's plain language contradicts Defendants' made-for-litigation interpretation – the statute bluntly states that county officials may cancel Indiana voter registrations on the basis of "written notice" forwarded by Defendants, rather than direct contact with a registrant or procurement of a signed out-of-state voter registration form. Defense counsel's reading of SEA 334—unsupported by affidavits from Defendants or any guidance disseminated to county officials reflecting that construction—is neither evidence nor law, and it is binding on no one. Because the uncontested facts show SEA 334 still permits unlawful purges of Indiana voters without direct voter contact or following the NVRA's Notice-and-Waiting Requirements, the Court should grant summary judgment in Plaintiffs' favor.

# I.    SEA 334 STILL PERMITS CANCELLATION OF A VOTER REGISTRATION WITHOUT DIRECT CONTACT WITH A REGISTRANT

Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment,[1] *NAACP* Dkt. 143 ("Opp. Br."), is largely redundant of Defendants' arguments in support of their Motion to Dismiss. *NAACP* Dkts. 135, 142. Part I argues that "SEA 442 has been substantially amended" because Indiana has withdrawn from Crosscheck. *See* Opp. Br. 7-8. In Part II, Defendants similarly argue that SEA 334 "substantially differs" from SEA 442 and accuse Plaintiffs of altering the factual basis of their Complaint. *Id.* at 9. Part II also advances an illogical and unsupported construction of SEA 334. *Id.* at 9-13. None of these arguments has merit.[2]

## A.    SEA 334 Does Not "Substantially Amend" SEA 442 and They Do Not "Substantially Differ"

SEA 334 is just lipstick on a pig: it amends SEA 442 with purely cosmetic changes that do not cure the deficiencies complained of in Plaintiffs' earlier pleadings because Defendants can still allow cancellation of Indiana registrations without direct contact with registrants or following the NVRA's Notice-and-Waiting Requirements. Therefore, SEA 334 does not "substantially differ[]," Opp. Br. 9, from SEA 442. As set forth in Plaintiffs' moving brief, *NAACP* Dkt. 137 ("Br."), SEA 334 merely swaps one voter list maintenance procedure for a functionally identical one: IDEA is Crosscheck with a new name; like Crosscheck, IDEA does not collect or disseminate actual voter registration documents; like Crosscheck, IDEA generates purported "matches;" and

---

[1] Plaintiffs and Defendants have filed single briefs on both dockets for the cases *Indiana State Conference of the National Association for the Advancement of Colored People (NAACP) et al. v. Lawson et al.*, No. 1:17-cv-02987-TWP-MPB, and *Common Cause Indiana v. Lawson et al.*, No. 1:17-cv-03936-TWP-MPB. For ease of reference, Plaintiffs will cite only the briefs and documents filed on the docket No. 1:17-cv-02987-TWP-MPB (hereinafter, "*NAACP* Dkt."). All undefined, capitalized terms shall have the same definitions set forth in Plaintiffs' moving brief, *NAACP* Dkt. 137.

[2] Because Defendants' arguments are largely redundant of their arguments in support of Defendants' Motion to Dismiss, *NAACP* Dkts. 135, 142, Plaintiffs' point the Court to their Response in Opposition to Defendants' Motion to Dismiss, *NAACP* Dkt. 138, to avoid additional redundant briefing.

2

like Crosscheck, Defendants forward IDEA "matches" meeting the same criteria from Indiana's old system to county voter registration offices, *id.* at 10-11. Defendants do not challenge Plaintiffs' facts with any specificity; instead, they offer the conclusory and unsupported claim that "[t]he new law sets forth new confidence factors [and a] new points system." Opp. Br. 4.[3]

After Defendants send IDEA's matches to county registration offices, SEA 334 requires that counties make three "determinations" prior to cancelling voter registrations. Br. 11-12. Like SEA 442, SEA 334 requires that county registration offices determine "whether the individual: (1) identified in the report provided by the NVRA official . . . is the same individual who is a registered voter of the county [and] (2) registered to vote in another state on a date following the date that voter registered in Indiana . . . ." SEA 442 § 5.5(d)(1)-(2). SEA 334 reinstates a third determination: "whether the individual: . . . (3) authorized the cancellation of any previous registration by the voter when the voter registered in another state." *Id.* § 5.5(d)(3).[4] If all three determinations are made, the registration "shall" be cancelled and the Notice-and-Waiting Requirement is ignored. *Id.* § 5.5(e). SEA 334 also adds a loophole that allows county officials to remove registrants from the Indiana rolls based on second-hand information from another state. *Id.* at 30-32. Thus—just like SEA 442—SEA 334 permits the cancellation of registrations without direct voter contact and without satisfying the Notice-and-Waiting Requirements, in violation of this Court and the Seventh Circuit's clear interpretations of the NVRA. *See id.* at 10-15.

Defendants' bare assertion that SEA 334 "substantially differs" from SEA 442 is both incorrect and insufficient to raise an issue of material fact. *See Smith v. Lamz*, 321 F.3d 680, 683

---

[3] This unsupported claim is also patently false. *See* Br. 11 (quoting Co-Director King's testimony that IDEA is a program "where each state would voluntarily provide data to Indiana, Indiana would use *existing confidence factors* in our state statutes, and provide data back to the participating states." (emphasis added)).

[4] Defendants do not dispute that the term "authoriz[ation of] cancellation" has no basis in federal law and is not parallel to the text of the NVRA, which refers only to removals at the "request of the registrant" or following "confirm[ation] in writing that the registrant has changed residence." Br. 12.

(7th Cir. 2003) ("A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (citations and quotation marks omitted); *Holleman v. Penfold*, 2012 WL 566142, at *1 (S.D. Ind. Feb. 21, 2012) (Pratt, J.) (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)) ("The opposing party's burden cannot be met with conclusory statements or speculation" and "self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement."); *see also infra* Part II (addressing Defendants failure to substantiate *any* of their factual assertions and the consequences under the Federal Rules of Evidence and Southern District of Indiana Local Rules).

## B. Defendants' Nonsensical Interpretation of SEA 334 Is Belied By Its Text and the Evidence

SEA 334 sets forth two methods for satisfying "authoriz[ation] of cancellation": county voter registration offices may rely on "written information" (1) sent by another state to the county voter registration office directly or (2) sent by another state to the IED and forwarded to the county voter registration office. SEA 334 § 5.5(f). If the county voter registration office receives "information . . . directly from the other state . . . , the out-of-state voter registration official must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration."[5] *Id.* § 5.5(f)(1). But if the IED receives "written notice . . . from another state" and "forwards [it] to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. *A copy*

---

[5] To be clear, *Plaintiffs do not challenge on summary judgment this method as violating the NVRA*, so long as it requires, as the text of SEA 334 seems to, that the county voter registration office receive and review an actual voter registration form, signed by the voter, before cancelling a voter's registration record.

4

*of the actual voter signature is not required to be provided to the county for the voters status to be canceled if the written notice is forwarded by the election division.*" *Id.* § 5.5(f)(2) (emphasis added). The loophole in this second method swallows the rule, *see* Br. 30-32, permitting Defendants to do third-hand (rely on written notice without a registrant's signature if the notice travels from another state to the IED to the county) what they cannot do second-hand (rely on written notice without a registrant's signature if the notice travels from the other state to the county directly). Curiously, Defendants defend this by claiming the Seventh Circuit declined to address whether information "passed through multiple hands to get to the jurisdiction where the voter had previously registered, violated the NVRA," Opp. Br. 10 (citing *Common Cause Ind. v. Lawson*, 937 F.3d 944, 961 (7th Cir. 2019)), as though the Seventh Circuit had suggested it might be *better* if second-hand information passed through *more* hands.[6]

Defendants' interpretation of SEA 334 contradicts its text and collapses on itself. They argue:

> Under the doctrine of statutory construction, considering Section 8(f)(1) and 8(f)(2) together, Section 8(f)(1) implies that under Section 8(f)(2), if the Indiana Election Division notifies a county official that the voter cancelled registration [sic], the Indiana Election Division also received a copy of the voter's signed voter registration application authorizing cancellation.

Opp. Br. 12.[7] But SEA 334 states expressly the opposite:

---

[6] Notwithstanding Defendants' befuddling logic, they also misrepresent the Seventh Circuit's opinion. The Seventh Circuit decided that it needed not determine whether Indiana could cancel an Indiana registration upon receipt of an out-of-state "registration [form], prepared personally by the voter" and passed from the other state to Indiana through Crosscheck because Crosscheck did not collect registration forms. *Common Cause Ind.*, 937 F.3d at 961 ("Even if (counterfactually, on the present record) Crosscheck sent Indiana a copy of the new voter registration, prepared personally by the voter, there would be another problem: the NVRA emphasizes the state's duty diligently to reach out to its electorate. For present purposes, we may leave for another day the question whether a state is entitled to rely on documents passed through multiple hands."). That is, the Seventh Circuit had no reason to grapple with whether it was relevant that a registrant is technically communicating directly with the *other* state when submitting a registration to that other state and not Indiana.

[7] *See also* Opp. Br. 5 (claiming SEA 334 requires that "where another state provides information of a later registration to Indiana, via written notice, the state must provide the individual's signed voter registration

5

(f) The county voter registration office may rely on written information . . . **forwarded** from the election division from the office in the other state as follows:

\*\*\*

(2) If the election division **forwards** written notice from another state to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. **A copy of the actual voter signature is not required to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division.**

SEA 334 § 5.5(f)(2). That is, the "written information" or "written notice" is *forwarded* by the IED to the county voter registration offices, meaning that the county voter registration offices receive what was sent to the IED by the other state. And further, the county voter registration office should consider this "written information" or "written notice" to constitute "confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration," and should do so specifically where an "actual voter signature" is <u>not</u> provided. *Id.* Contrary to Defendants' "context[ual]" reading of SEA 334, the statue *never* references the IED "receiv[ing] a copy of [any] voter's signed voter registration application authorizing cancellation." *Compare* Opp. Br. 12 *with* SEA 334 § 5.5(f) (referencing "written information . . . forwarded from the election division," the "election division forward[ing] written notice," "written notice . . . forwarded by the election division," and specifically stating that such forwarded written notice need not contain an "actual voter signature"). Receipt of "written information" from another state is just another form of the "indirect contact with the voter" that the Seventh Circuit held unlawful. *Common Cause Ind.*, 937 F.3d at 959. The process under SEA 334 still "does away with the process of personal contact with the suspected ineligible voter and allows Indiana election officials to remove a person from the rolls . . . *without direct notification of any kind*." *Id.*; *see also id.* at 962

---

application that specifically authorizes the cancellation of any previous registrations"); *id.* at 10 ("The plain language of the statute contradicts Plaintiffs' assertion that IED policy does not require a county to review a copy of an out-of-state voter registration form to determine that an individual authorized cancellation of his registrations.").

("[T]he system [Indiana] chose flouts the NVRA's command that the state rely on the registrant herself.").

Even if "written information" or "written notice" satisfied the NVRA's requirements, Defendants do not address that SEA 334 is phrased permissively, offering sources Defendants and counties "may" rely upon in making "determinations," including whether a voter "authorized the cancellation." Br. 13. That is, counties are not technically bound by Subsection 5.5(f) of SEA 334. In his deposition, Co-Director King testified that "authoriz[ation of] . . . cancellation" does not require review of a signed out-of-state voter registration form or direct contact with a registrant:

> Q. Do you, in making that determination that a voter registration application constitutes voter authorization, is it your position that in order to cancel an Indiana registration based on an out of state registration, subsequent out of state registration, are you required to see the actual form?
> A. No.
> Q. Would it be enough that an out of state official represented to you that such a form exists?
> A. Yes.
> Q. So your position is that a county can cancel that voter registration record without seeing the actual form, the actual voter registration form from the out of state registration?
> A. That is correct.
> Q. That's the position of the Indiana Election Division?
> MR. GARN: Objection; form; foundation.
> A. I think I can say that has been the practice of the Indiana Election Division since the enactment of the NVRA . . . .

Br. 14 (quoting *NAACP Dkt.* 42-22 at 70:23-71:21). While Defendants argue Co-Director King's testimony regarding the types of written notice the IED receives is "outdated," *see* Opp. Br. 10-11, they do not disclaim Co-Director King's own definition of voter authorization.

Plaintiffs' common-sense reading of the actual text of SEA 334 and its NVRA violation is corroborated, while Defendants' atextual, made-for-litigation interpretation is unsupported and directly contradicted by evidence. SEA 334 Sponsor and State Representative Wesco's letter to Julia Vaughn confirms that "written information" or "written notice" from another state is not a

7

signed out-of-state voter registration form or a direct communication with the registrant. *See* Br. 13. Representative Wesco attached six sample "notices," only two of which even arguably contained direct communication with a registrant. *Id.*[8] He stated that these notices, alone, will form the bases for cancellation of registrations. *Id.*[9] Defendants also fault Plaintiffs for using Co-Director King's unambiguous deposition testimony regarding what constitutes "written notice" against them, claiming it is "useless as supporting evidence" because "King was being questioned about what constituted written notice under SEA 442." Opp. Br. 11. Not so. In fact, SEA 442 did not reference "written notice" *at all*. SEA 442 §§ 5(d)-(e). Rather, Plaintiffs asked King about the types of written information received by Indiana from other states. *NAACP* Dkt. 42-22 at 41:19-42:13. That evidence is probative of what written notices the IED receives and that will form the basis for a cancellation under SEA 334. And the examples King offered are corroborated by the approximately identical notices attached by Representative Wesco, some of which lacked direct communication with a registrant. Further, Defendants impliedly assert that the reference to "written information" received by the IED in SEA 334 § 5.5(f) really means that the IED receives a voter registration form. But the General Assembly knew how to use the words "voter registration" and opted for something different and broader. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000) ("Different words in a statute . . . should be given different meanings unless the context indicates otherwise."); *Briggs v. Review Bd. of Ind. Dep't of Workforce Dev.*, 648 N.E.2d 1225, 1228 (Ind. Ct. App. 1995) ("The legislature must have intended the words . . . to have different meanings in the statute. Courts

---

[8] The attached notices appear to have been received by Representative Wesco from Defendants, who were addressees and original recipients of some or all of them.

[9] Wesco also suggested that Indiana has been violating and continues to violate federal law "[s]ince the implementation of NVRA in 1995," writing, "Indiana has followed the common practice across the country of allowing counties to choose to cancel a voter registration based on *notice* received from another state." *NAACP* Dkt. 137-13 at 2.

presume that every word in a statute was intended to have meaning. All statutory language is deemed to have been used intentionally . . . ." (citations omitted)).

### C.  Plaintiffs' Theory of Liability and Request for Relief Have Not Changed

Plaintiffs did not "br[ing] their lawsuits to challenge Indiana's participation in . . . Crosscheck," as Defendants claim. Opp. Br. 2; *see also NAACP* Dkt. 135 at 1. These cases are and always have been about Indiana's compliance with the NVRA's Notice-and-Waiting Requirements. *See NAACP* Dkt. 138.[10] On this motion, Plaintiffs even seek substantively identical relief as requested in their Complaints. For example, the injunctive relief sought by the Indiana NAACP and League of Women Voters of Indiana was "that the Court . . . [g]rant a . . . permanent injunction enjoining Defendants and . . . all persons who are in active concert or participation with them from canceling the registration of voters without following the required procedures set forth in [the NVRA]." *NAACP* Dkt. 1 at 20. That is the same primary relief sought in Plaintiffs' Motion for Summary Judgment, which merely sets forth the specifically required procedures: "a permanent injunction . . . prohibiting Defendants from otherwise removing any Indiana registrant from the list of eligible voters because of a change in residence absent: (1) a 'request' or 'confirm[ation] in writing' directly from the voter that the voter is ineligible or does not wish to be registered; or (2) the National Voter Registration Act-prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting two inactive federal election cycles." Br. 33-34. Plaintiffs do not, as Defendants claim, seek "relief far beyond the one requested in their Complaints and outside the scope of this litigation." Opp. Br. 8. In fact,

---

[10] Indiana was a Crosscheck member for years without being sued by Plaintiffs for violating the NVRA, belying Defendants assertion that Plaintiffs' gripe was with Indiana's participation in Crosscheck. Rather, Plaintiffs sued when Defendants sought to cancel voter registrations on the basis of second-hand information, which happened to be produced by Crosscheck.

Plaintiffs' proposed relief is derived from the Seventh Circuit's earlier holding. *Compare id. with Common Cause Ind.*, 937 F.3d at 959.

## II.     DEFENDANTS RAISE NO LEGALLY COGNIZABLE DISPUTES

Defendants' disputes are few and far between. First, Defendants concede entirely the clear requirements of the NVRA. Second, Defendants make half-hearted and conclusory challenges to Plaintiffs' detailed evidence. None of Defendants' asserted factual disputes is supported by any evidence. Plaintiffs put forth a meticulously cited, eighteen-page Statement of Material Facts. Br. 6-23. At best, Defendants' Response, which amounts largely to mere *legal* argument on the statutory construction of SEA 334, offers scant, perfunctory factual allegations that this Court should not countenance on a summary judgment motion because they are unsupported, and in violation of the Federal Rules of Civil Procedure and Southern District of Indiana Local Rules.

### A. Defendants Concede this Court and the Seventh Circuit's Holdings on the NVRA's Requirements and Plaintiffs' Organizational Standing

Defendants do not challenge anything in this Court or the Seventh Circuit's rulings. *See, e.g.*, Opp. Br. 12 (conceding "[t]he NVRA provides that a state generally cannot remove a voter from the registration rolls without direct contact from voter[sic]"); *id.* (citing with approval the Seventh Circuit's holding that "when a state does not itself possess a copy of a communication from a suspected Indiana registrant, it does not have a 'request of the registrant' sufficient by itself to permit immediate removal of that voter's name from the rolls" (*Common Cause Ind.*, 937 F.3d at 961)). Defendants also no longer challenge Plaintiffs' standing, which was confirmed by this Court and affirmed by the Seventh Circuit. *See, e.g.*, *id.* at 946.

### B. Defendants Fail to Respond to Substantially All of Plaintiffs' Statement of Material Facts Not in Dispute, Thereby Admitting Them

"The nonmoving party bears the burden of demonstrating that . . . a genuine issue of material fact exists." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir.

2008). The consequence of failing to respond to or properly support assertions of material factual dispute is the non-movant's "conce[ssion of] the [movant's] version of the events." *Holleman*, 2012 WL 566142 at *1 (citing *Smith*, 321 F.3d at 683); *see also Bell v. Par Pharm. Cos.*, 2013 WL 2244345, at *5 (S.D. Ind. May 21, 2013) (Pratt, J.) ("[T]he court will assume that the facts as claimed and supported by the movant are admitted without controversy except to the extent that the non-movant specifically controverts the facts in its 'Statement of Material Facts in Dispute.'").

Plaintiffs submitted a thorough Statement of Material Facts with direct citations to the record evidence. Br. 6-23. Defendants ignore altogether the vast majority of these statements—thereby admitting those out of hand—including:

- The entire Section titled "Defendants Oversee and Administer Indiana's Voter List Maintenance," *id.* at 6-7, which explains that Defendants are responsible for coordinating Indiana's responsibilities under the NVRA and have unfettered control over centralized aspects of voter list maintenance in Indiana, including the implementation, design, and functionality of the Statewide Voter Registration System. *Id.* at 7. It also explains that the Co-Directors' guidance is mandatory and binding on county voter registration offices and that the Co-Directors control what information the county voter registration offices receive. *Id.* at 7.

- Secretary Lawson and Co-Director King were the primary drafters of SEA 334 and proponents of IDEA. *Id.* at 10-11. IDEA is an organization functionally identical to Crosscheck that receives member states' voter lists and returns purported matches. *Id.* at 10. IDEA does not collect or disseminate the actual voter registration documents underlying its "matches" and does not involve direct contact with registrants. *Id.* at 11.

- Representative Wesco, an SEA 334 Sponsor, confirmed that "written information" or "written notice" from another state need not be a signed out-of-state voter registration form or a direct communication with the registrant, *id.* at 13-14, and attaching example notices that could only have been received from Defendants.

- Co-Director King testified that, when determining "authoriz[ation of] cancellation," there is no "require[ment] to see the actual form," that "it would be enough that an out of state official represented to you that such form exists," and that "a county can cancel that voter registration record without seeing the actual form." *Id.* at 14. The IED could merely ask another state whether a registration form had language discussing an authorization to cancel previous registrations, without seeing a form itself. *Id.* at 14-15.

11

- Co-Director King did not represent to the Indiana Legislature that SEA 334 complied with the NVRA or cured Defendants' NVRA violation. *Id*. at 15.

- The entire Subsection titled "Non-Uniformity," *id*. at 15-18, which explains that the Co-Directors (i) often receive and respond to counties' inquiries regarding voter list maintenance independently, and without consulting one another. *id*. at 15-16; (ii) disagree on policies and procedures in response to counties' inquiries, *id.* at 16; (iii) give no written guidance, manual, step by step instruction, or standard operating procedure stating that any additional inquiry is required to make "determinations," *id*.; (iv) relegate responsibility for NVRA compliance to the counties by directing counties to use their best judgment in implementing the Co-Directors instructions, *id*.; (v) and that, as a result, counties conduct voter list maintenance non-uniformly, *id.* at 17-18.

- The entire Subsection titled "Date of Registration," *id*. at 18-19, which explains that (i) Indiana cannot and does not distinguish between other states that have completely different definitions for what "date of registration" may mean, *id*. at 18; (ii) counties receive no guidance or training on how to analyze dates of registration, *id.* at 19; and (iii) counties do not do any inquiry into dates of registration and cannot do so because Defendants withhold that date of registration data, *id.*

- The entire Section titled "The Plaintiffs," *id.* at 19-23, including all facts regarding Plaintiffs' injuries.

### C. Defendants' Statements of Material Facts in Dispute Are Unsupported and Should Be Disregarded

The few factual disputes Defendants try to manufacture are not supported by *any* evidence and amount to pure legal argument. As a result, Defendants have failed to put forth any triable issue of fact. "The nonmoving party bears the burden of demonstrating that . . . a genuine issue of material fact exists." *Harney*, 526 F.3d at 1104. "A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L. R. 56-1(e); *see also Charles v. Lighter*, 2016 WL 772651 at *1 (S.D. Ind. 2016) (Pratt, J.). A non-movant's factual assertions are assumed to be true only "to the extent admissible evidence supports them." S.D. Ind. L. R. 56-1(f)(2). *see also Holleman*, 2012 WL 566142 at *1; *Bell*, 2013 WL 2244345 at *5.

Defendants' Statement of Material Facts in Dispute cites *no* evidence. Opp. Br. 3-5.

12

Defendants do not even put forth an affidavit stating how they intend to implement SEA 334 and whether that intended implementation is consistent with their arguments. Further, SEA 334 requires, not later than July 1, 2020, "the NVRA official shall adopt an order for the administration of voter list maintenance programs to be performed by IDEA." *Id.* § 5.5(b). If the Co-Directors failed to adopt an order by then, the Secretary of State is required to step into their shoes. *Id.* Rather than submitting such an order as an exhibit or even acknowledging whether it exists, Defendants cryptically fault Plaintiffs for "provid[ing] no evidence that either the . . .  Co-Directors or the Indiana Secretary of State have implemented an Order yet . . . to establish IDEA's administration of voter registration list maintenance . . . ." Opp. Br. 13. But it is Defendants' "burden [to] demonstrate[e] that . . . a genuine issue of material fact exists." *Harney*, 526 F.3d at 1104. Defendants decision not to submit even an affidavit in support of its Response is inexplicable. *See Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp. 2d 924, 928 (N.D. Ill. 2009), *as amended* (June 10, 2009) ("[T]he claim of mistake was not supported by affidavit, and a lawyer's unsupported statements in briefs are not evidence."). Defendants' counsel's bare assertions are worthless at summary judgment. *See Woolard v. Woolard*, 547 F.3d 755, 760 (7th Cir. 2008) (affirming summary judgment and rejecting bare assertions without citation in non-movant's brief); *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("[A]rguments in a . . . brief, unsupported by documentary evidence, are not evidence."); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."). By citing no evidence in support of their Statement of Material Facts in Dispute, Defendants have conceded Plaintiffs' version of events. *Charles*, 2016 WL 772651, at *1; *Holleman*, 2012 WL 566142, at *1; *Bell*, 2013 WL 2244345, at *5.

Instead of offering facts supported by evidence, Defendants argue an untenable

interpretation of SEA 334. The only citations in Defendants' Statement of Material Facts in Dispute are to the Indiana Code itself. This is not evidence and does not rebut Plaintiffs' Statement of Material Facts Not in Dispute. "A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith*, 321 F.3d at 683 (citations and quotation marks omitted). "The opposing party's burden cannot be met with conclusory statements or speculation" and "self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement." *Holleman*, 2012 WL 566142, at *1 (citing *Greer*, 267 F.3d at 727).

## D. Lacking Evidence of Their Own, Defendants Incorrectly Attack Plaintiffs' Direct Quotations of Them

What little of Plaintiffs' evidence Defendants do dispute, they do so on meritless, procedural grounds. Faced with Co-Director King's damning testimony as to his and Secretary of State Lawson's drafting of SEA 334, his intended implementation of the law, and admission that "the Seventh Circuit has indicated that it has serious issues" with "the provisions that are in current law or as amended by 334," H.R. Hr'g, Defendants make no denials, cite no countervailing evidence, and put in no clarifying affidavits. Instead, Defendants argue that Co-Director King's statements "were made under the protection of [an Indiana] statute and, therefore, it is improper to rely on them in place of discovery." Opp. Br. 14. But the Indiana Code provision is not a "protection."[11] Defendants cannot and do not even allege these statements are inadmissible or

---

[11] Defendants accuse Plaintiffs of "improperly rely[ing] on recorded legislative testimony as evidence of how SEA 334 will be implemented[, because u]nder Indiana law, video, or audio footage of legislative sessions does not constitute part of the legislative history or an expression of legislative intent, unless certain conditions are met." Opp. Br. 14. The Indiana Code does not state that Co-Director King's statements, for example, do not constitute legislative history; they do. Rather, the Code says that the video and audio recordings of his statements do not constitute legislative history unless, for example, "the content of the incorporated audio or video coverage is certified for accuracy and completeness by the principal clerk or

inaccurately transcribed. Nor could they. State law is irrelevant to admissibility under the Federal Rules of Evidence. *See* Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."); *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999) ("When it comes to the admissibility of evidence in federal court, the federal interest in enforcement of federal law, including federal evidentiary rules, is paramount. . . . [S]tate rules on any subject . . . cannot trump the Federal Rules of Evidence.").[12] Defendants also cast too wide a net, arguing that "Plaintiffs improperly rely on recorded legislative testimony as evidence of how SEA 334 will be implemented." Opp. Br. 13-14. But Indiana law, if applicable, relates only to the use of video coverage as "an expression of the legislative intent, purpose, or meaning of an act," Ind. Code § 2-5-1.1-15; it would not apply, for example, to Co-Director King's statements as to how Defendants will implement SEA 334.

## III.   SOVEREIGN IMMUNITY DOES NOT BAR SUMMARY JUDGMENT AGAINST DEFENDANTS

Defendants argue that sovereign immunity bars this Court from granting Plaintiffs' Motion for Summary Judgment. Opp. Br. 14-18. It doesn't and this issue is resoundingly settled against Defendants as a matter of law. Defendants' argument also hinges on the conclusory and patently incorrect assertion that they are uninvolved in the implementation of Indiana law or the Indiana's compliance with the NVRA.

---

principal secretary of the chamber . . . ." Ind. Code § 2-5-1.1-14(2); *id.* § 2-5-1.1-15(2). King's statements were not, as Defendants claim, "made under the protection of that statute," Opp. Br. 14, as the statute is not a "protection." It exists to prevent inaccurate or incomplete transcriptions from supporting arguments about legislative intent. But Defendants do not dispute the accuracy or completeness of the video coverage or the accuracy or completeness of Plaintiffs' transcribed citations. Defendants cannot use the statute as a sword to pretend they didn't say the things they said.

[12] It does not even usurp Indiana's rules of evidence. *C.f. T.H. v. Ind. Dep't of Child Servs. (In re B.H. & B.H.)*, 989 N.E.2d 355, 361 (Ind. Ct. App. 2013) (holding that "[w]here there is a conflict between a statute and a rule of evidence, the rule of evidence prevails over any statute").

### A.  Defendants *Are* Responsible for NVRA Compliance and for Implementing the Challenged Portions of SEA 334

Defendants disingenuously abdicate their responsibility for compliance with federal law and assert that "[n]one of the Defendants implement and/or enforce the provisions of the statute at issue." Opp. Br. 14. This is incorrect and unsupported by fact or law. Defendants incorrectly claim that the "mere fact that Secretary Lawson is the Secretary of State of Indiana, and that Defendants King and Nussmeyer are Co-Directors of the [IED], is not sufficient to make them appropriate Defendants" and the "mere fact that Defendants Lawson, King, and Nussmeyer have responsibilities with regards to overseeing state elections does not provide a sufficiently direct connection the statute Plaintiffs seek to challenge." *Id.* at 16. This is a straw man. Defendants completely ignore that the Co-Directors are Indiana's *NVRA Official*. Br. 6-7.[13] The NVRA imposes an affirmative responsibility on Defendants to ensure compliance with the Act; as a legal matter, Plaintiffs are not trying to enforce SEA 334, they are trying to enforce the NVRA, which places the responsibility to comply with it squarely on Defendants' shoulders. 52 U.S.C. § 20509. Indeed, that is why the NVRA directs that notice of violations of said law be directed to the state's chief election official and further provides a right of action against Defendants as the NVRA officials in the state. 52 U.S.C. § 20510.

Defendants are not merely under a "general duty to enforce state laws." Opp. Br. 16 (quoting *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018)). Contrary to *Doe v. Holcomb*—in which, by Defendants' own description, "the Seventh Circuit declined to hold high-level state officials as de facto appropriate defendants merely because they held roles which generally

---

[13] In fact, the responsibilities SEA 334 imposes on them are primarily in their capacities as Indiana's NVRA Official. *See* SEA 334 § 5.5 (a) ("IDEA shall be administered by the *NVRA official* . . . ."); *id.* § 5.5(b) ("[T]he *NVRA official* shall adopt an order for the administration of voter list maintenance programs to be performed by IDEA."); *id.* § 5.5(c) ("[T]he *NVRA official* shall provide the appropriate county voter registration office with the name and any other information obtained under this subsection . . . .").

required them to *uphold the laws of the state*," Opp. Br. 16 (emphasis added)—Defendants *are* under a *specific* duty to enforce and comply with *federal* election law as spelled out in no uncertain terms by the NVRA.

Indiana law and federal law specifically delegate to Defendants the exclusive responsibility for Indiana's NVRA compliance. *See* Br. 6-7. Defendants jointly own the Statewide Voter Registration System that county voter registration offices use to conduct list maintenance, Ind. Code § 3-7-26.3-4, and state law requires the list "[c]ontain full audit controls and management reports to track and manage the work of county voter registration office employees, including the ability of the secretary of state or the co-directors of the election division to determine whether a county voter registration office is performing voter list maintenance functions in the manner required by [Indiana Code Article 7, which governs voter registration]," *id*. § 3-7-26.3-29(a)(10). The Co-Directors must promulgate official policies, guidance, and standard operating procedures instructing county election boards and boards of registration on their duties under state and federal law, and provide training on these policies and procedures. *Id.* § 3-6-4.2-14; Br. 6-7. These materials govern Indiana list maintenance, and their "business rules," which restrict what actions counties can and cannot take with respect to a voter registration record, constrain the functionality of all voter list maintenance software, Br. 6-7. The Co-Directors' guidance is mandatory. *Id.*[14] Defendants dispute *none* of these facts. *Compare* Br. 6-7

---

[14] Defendants already litigated this issue without citing *Ex parte Young* and lost. *See, e.g.*, *Ind. State Conference of NAACP v. Lawson*, 326 F. Supp. 3d 646, 651 (S.D. Ind. 2018) ("Lawson . . . is the Indiana Secretary of State, and in that capacity she is the chief election official in the State of Indiana. She is charged with performing all ministerial duties related to the state's administration of elections . . . King and Nussmeyer thus are charged with coordinating county voter registration. They are considered Indiana's 'NVRA officials'."); *id.* ("While the county boards are responsible for actually physically maintaining their voter registration records, this list maintenance is dictated by the policies, procedures, and guidance established by the election division co-directors and constrained by the election division's business rules . . . . King and Nussmeyer are responsible for building, managing, and maintaining the statewide voter registration system, which includes creating the protocols within the system and issuing official policies,

(Section of Plaintiffs' Statement of Material Facts titled "Defendants Oversee and Administer Indiana's Voter List Maintenance), *with* Opp. Br. 3-5 (Statement of Material Facts in Dispute); *see also* Br. 15-18 (citing specific examples of statewide dysfunction caused by Defendants' abdication of their responsibilities to oversee voter list maintenance). Nor did Defendants dispute that Co-Director King and Secretary of State Lawson *drafted* SEA 334. Br. 10-11.

Defendants' claim that they do not "implement and/or enforce the provisions of [SEA 334]" is farcical. *See* Opp. Br. 14. Defendants are inextricably intertwined in the implementation of SEA 334 and expressly delegated responsibilities thereunder. IDEA is "administered by" the Co-Directors, SEA 334 § 5.5(a), who are also charged with "adopt[ing] an order for the administration of voter list maintenance programs to be performed by IDEA," *id.* § 5.5(b). Both these responsibilities are delegated within their joint responsibility as "NVRA official." *Id.* §§ 5.5(a)-(b). If they do not adopt an order, the responsibility reverts to Secretary Lawson. *Id.* Not later than 30 days following the generation of IDEA matches, the "NVRA official" must provide the matches to the county voter registration offices. *Id.* § 5.5(c). With regard to the gaping loophole permitting cancellation of a voter's registration on the basis of "written information" or "written notice," those documents are received by the Co-Directors. *Id.* § 5.5(f). "[I]f the written notice is forwarded by the election division," then "[a] copy of the actual voter signature is not required to be provided to the county for the voter's status to be cancelled." *Id.* § 5.5(f)(2). That is, the Co-Directors' provision of "written notice" is the specific act that exempts counties from needing to direct contact with the registrant. *Id.*[15]

---

guidance, and standard operating procedures to guide the county boards on their duties under state and federal law. They also provide training to the county boards. The official guidance from King and Nussmeyer as reflected in the protocols, documents, and trainings are mandatory.") (citations omitted).

[15] The mendacity of Defendants' argument is laid bare by Defendants' own reading of the provisions: "Section 8(f)(1) implies that under Section 8(f)(2), if the Indiana Election Division notifies a county official that the voter cancelled registration, the Indiana Election Division also received a copy of the voter's signed

### B.  *Ex Parte Young* Does Not Bar Summary Judgment Against Defendants

Conspicuously, Defendants cite no case law applying *Ex parte Young* to the NVRA or in any other election-related situation. *See* Opp. Br. 14-17. This is unsurprising, because the case law on point—*including a different NVRA case against Secretary Lawson, Co-Director King, and Co-Director Nussmeyer's predecessor*—is universally against them. Also conspicuously missing from Defendants' Response is any acknowledgment of the distinction in *Ex parte Young*'s progeny between cases seeking *prospective* injunctive relief and seeking relief for retrospective harms. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("To ensure the enforcement of federal law, . . . the Eleventh Amendment permits suits for *prospective* injunctive relief against state officials acting in violation of federal law." (emphasis added)); *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013) ("*Ex parte Young* recognized what has become one of several well-established exceptions to the Eleventh Amendment bar on suing states in federal court, permitting private citizens to sue state officials in their official capacities to require them to comply with federal law on an *ongoing* basis." (emphasis added)). As set forth exhaustively *supra*, Plaintiffs seek prospective relief.

Defendants do not acknowledge *Judicial Watch, Inc. v. King*, an NVRA case against two of the same three Defendants, who were represented by overlapping counsel at the Office of the Attorney General. 2014 WL 12755049, at *1 (S.D. Ind. 2014) (Lawrence, J.). Presumably, they ignore it because it explains the frivolousness of their argument. As Judge Lawrence explained:

> "[P]rivate citizens [may] sue state officials in their official capacities to require them to comply with federal law on an ongoing basis" *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (citing *Ex Parte Young*). "'In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges

---

voter registration application authorizing cancellation." Opp. Br. 12. Defendants' defense of the lawfulness of their new scheme relies *precisely* on Defendants themselves implementing and enforcing the provisions that they also disclaim all responsibility for administering.

an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 1051 (quoting *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

*Id.* at *1. There, as here, the law governing Defendants' challenged conduct occurred was amended. After reading the parties' cross-motions for summary judgment, the Court noted *sua sponte* that—unlike in this case—"Plaintiffs' motion for summary judgment . . . fail[ed] to address the impact of the new legislation" and did not focus on "any ongoing violations that the Court properly could enjoin," *id.* at *1-2, and issued an Order to Show Cause.[16] In its motion for summary judgment, Judicial Watch effectively conceded that the new Indiana law complied with the NVRA, but suggested that Defendants might someday violate the new NVRA-compliant state law, thereby violating the NVRA. *Id.* at *2. Here, Plaintiffs allege an uncured and ongoing NVRA violation by Defendants, continuing after passage of an amended state law that, itself, violates the NVRA in near-identical fashion as the preceding state law. And here, Plaintiffs' Motion for Summary Judgment meticulously addresses the amended law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant summary judgment in their favor and enter a permanent injunction prohibiting Defendants' implementation of SEA 334 §§ 5.5(d)-(f) and prohibiting Defendants from otherwise removing any Indiana registrant from the list of eligible voters because of a change in residence absent: (1) a "request" or "confirm[ation] in writing" directly from the voter that the voter is ineligible or does not wish to be registered; or (2) the NVRA-prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting two inactive federal election cycles.

---

[16] The Order to Show cause was never resolved—the parties settled.

20

DATED: August 5, 2020                              Respectfully submitted,

_/s/ Alexandre J. Tschumi_                         _/s/ Matthew R. Jedreski_
Sascha N. Rand                                     Matthew R. Jedreski*
Ellyde R. Thompson                                 Grace Thompson*
Ellison Ward Merkel                                Kate Kennedy*
Geneva McDaniel                                    DAVIS WRIGHT TREMAINE LLP
Alexandre J. Tschumi                               1200 Third Avenue, 22nd Floor
QUINN EMANUEL URQUHART & SULLIVAN,                 Seattle, WA 98101
LLP                                                (206) 622-3150
51 Madison Avenue, 22nd Floor
New York, NY 10010                                 Sophia Lin Lakin*
(212) 849-7000                                     Adriel I. Cepeda Derieux*
                                                   Dale Ho*
Myrna Pérez                                        AMERICAN CIVIL LIBERTIES UNION
Eliza Sweren-Becker                                125 Broad Street, 18th Floor
BRENNAN CENTER FOR JUSTICE                         New York, NY 10004
AT NYU SCHOOL OF LAW                               (212) 519-7836
120 Broadway, Suite 1750
New York, NY 10271                                 Stuart C. Naifeh *
(646) 292-8310                                     Kathryn C. Sadasivan*
                                                   DEMOS
Trent A. McCain                                    80 Broad Street, 4th Floor
MCCAIN LAW OFFICES, P.C.                           New York, NY 10004
363 S. Lake St., Suite 2                           (212) 485-6055
Gary, IN 46403
(219) 884-0696                                     Chiraag Bains*
                                                   DEMOS
_Counsel for Plaintiffs Indiana State Conference of_   740 6th St., NW, 2nd Floor
_the National Association for the Advancement of_      Washington, DC 20001
_Colored People (NAACP) and League of Women_          (202) 864-2746
_Voters of Indiana_
                                                   Gavin M. Rose, No. 26565-53
                                                   Stevie J. Pactor, No. 35657-49
                                                   ACLU OF INDIANA
                                                   1031 E. Washington Street
                                                   Indianapolis, IN 46202
                                                   (317) 635-4059

                                                   William R. Groth, No. 7325-49
                                                   FILLENWARTH DENNERLINE GROTH &
                                                   TROWE LLP
                                                   429 E. Vermont Street, Suite 200
                                                   Indianapolis, IN 46202
                                                   (317) 353-9363

                                                   _Counsel for Plaintiff Common Cause Indiana_

                                                   *Admitted _Pro hac vice_

## CERTIFICATE OF SERVICE

I, Alexandre J. Tschumi, an attorney, certify that on August 5, 2020, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment to be served on counsel for Defendants.

*/s/ Alexandre J. Tschumi*
Alexandre J. Tschumi
