UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and LEAGUE OF WOMEN VOTERS OF INDIANA,<br><br>Plaintiffs,<br><br>v.<br><br>CONNIE LAWSON, in her official capacity as the Indiana Secretary of State; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; ANGELA NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>Defendants. | Docket No. 1:17-cv-02897 |

**<u>PLAINTIFFS' TRIAL BRIEF</u>**

Plaintiffs, by counsel, submit their trial brief, pursuant to Part VIII.A.5 of the Order on Case Management Plan. Dkt 79.[1]

**INTRODUCTION**

After nearly three years of litigation, the Indiana legislature ignored two court rulings and passed legislation, at Defendants' urging, that fails to address the violations of federal law that led this court to enjoin Senate Enrolled Act ("SEA") 442.[2] Defendants have swapped in one interstate database for another and continue to permit voter registration cancellations based solely on third-

---

[1] Plaintiffs reserve the right to supplement or amend according to the facts elicited and arguments advanced at trial.

[2] Hereinafter, "SEA 442" shall refer to Senate Enrolled Act 442, sec. 15, Ind. Code §§ 3-7-38.2-5(d)-(e) (2017); "HEA 1253" shall refer to House Enrolled Act 1253, sec. 3, Ind. Code §§ 3-7-38.2-5(d)-(f) (2018); "SEA 334" shall refer to Senate Enrolled Act 334, secs. 6-8, Ind. Code §§ 3-7-38.2-5, -5.1, -5.5 (2020).

party information. This Court and the Seventh Circuit enjoined Defendants from doing just that under Senate Enrolled Act 442. Both courts made resoundingly clear that Indiana officials cannot remove a voter from the rolls on the basis that the voter has moved absent direct contact with the voter, unless officials provide notice and wait two general election cycles, as the National Voter Registration Act ("NVRA") requires. Yet, Defendants prepared an amendment, SEA 334, that *still* permits unlawful purges of Indiana voters without the NVRA-mandated notice and waiting period.

Before SEA 442, Indiana required federally-mandated notice to remove a voter from the rolls. SEA 442 eliminated that notice requirement when a voter was flagged as a "match" in the Interstate Voter Registration Crosscheck Program ("Crosscheck"). But after this Court and the Seventh Circuit concluded that SEA 442's procedure was unlawful, Secretary Lawson and Co-Director King drafted language that once again fails to bring state law into compliance with the NVRA's clear mandate. Although SEA 334 restores Indiana's pre-SEA 442 language requiring a determination as to whether a voter "authorized" cancellation, SEA 334 adds a yawning loophole that allows officials to remove voters in the same way that this Court and the Seventh Circuit forbade. Specifically, SEA 334 provides that county registrars should "consider" "written notice from another state to an Indiana county voter registration official" as "confirmation that [an] individual is registered in another jurisdiction and has requested cancellation of the Indiana registration." SEA 334 § 5.5(f)(2). Explicitly, "[a] copy of the actual voter signature ***is not required*** to be provided to the county ***for the voter's status to be canceled*** if the written notice is forwarded by the election division." *Id.* (emphasis added). In other words, SEA 334 still expressly allows purges without direct contact from the voter, and without notice and waiting. This unequivocally violates the NVRA, which

> forbids a state from removing a voter from that state's registration list unless: (1) it **hears directly** from the voter via a "request" or a "confirm[ation] in writing" that

> the voter is ineligible or does not wish to be registered; or (2) the state goes through the statutorily prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting *two* inactive election cycles before removing a suspected ineligible voter who never responds to the notice. **Both of these avenues focus on direct contact with the voter.**

*Common Cause Ind. v. Lawson*, 937 F.3d 944, 959 (7th Cir. 2019) (first and third emphases added).

Rather than comply with the NVRA, SEA 334 makes superficial changes while failing to remedy the core flaw of SEA 442 that gave rise to this litigation. Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor and that the Court permanently enjoin Defendants from implementing any voter list maintenance program that permits county voter registration officials to remove, or otherwise removing, any Indiana registrant from the list of eligible voters because of a change in residence absent: (1) a "request" or "confirm[ation] in writing" directly from the voter that the voter is ineligible or does not wish to be registered; or (2) the National Voter Registration Act-prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting two inactive federal election cycles.

## I. DEFENDANTS ARE RESPONSIBLE FOR INDIANA AND ITS COUNTIES' COMPLIANCE WITH THE NVRA

In their Response in Opposition to Plaintiffs' Motion for Summary Judgment, Defendants sought to have it both ways. First, they confidently asserted an atextual argument to claim that SEA 334 will be implemented in compliance with the NVRA. Dkt. 143 at 9-14. But then they abdicated all responsibility for or connection to the SEA 334's implementation and compliance with the NVRA. *See* Dkt. 143 at 16. ("[T]he challenged portions of SEA 334 §§ 5.5(d)-(f) delegate the responsibility for determining which individuals meet the qualifications as set out in SEA 334 § 5.5(d) to the 'individual county voter registration offices' . . . ."); *id.* at 17 ("Plaintiffs have failed to demonstrate that Defendants have, or will, exert any direction or control over the determinations made under SEA 334 . . . [and] there is nothing to suggest that Defendants have the authority to

coerce the individual county voter registration offices to make specific determinations with regards to the removal of any Indiana registrants."). As such, they already concede they won't actively ensure the NVRA-compliant implementation of SEA 334, itself a dereliction of their duties as Indiana's NVRA Official.

But as a matter of state and federal law, Defendants are responsible for Indiana's compliance with the NVRA, which includes their and the county voter registration offices' compliance. *See Az. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *6 (D. Az. Nov. 3, 2016) (rejecting the Secretary of State's contention that she "d[id] not have authority under Arizona law to declare who is, and who is not, a registered voter" because state law "delegate[d] to the Counties, not the State th[at] responsibility"). As the Arizona District Court correctly concluded in Reagan, the NVRA imposes an "authority" and "duty" on the NVRA Official "to ensure that voter registration regulations are administered in a fair and uniform manner," which "extend[ed] to the Secretary's oversight of voter registration as carried out by the counties." *Id.* Defendants may not abdicate or delegate this responsibility. *See United States v. Mo.*, 535 F.3d 844, 850 (8th Cir. 2008) ("Under the NVRA's plain language, [a State] may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such program is not reasonably conducted."); *accord Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008) (concluding that Ohio's chief election official, was responsible for "implementation and enforcement" of the NVRA).

## II. SEA 334 ALLOWS CANCELLATION WITHOUT DIRECT CONTACT WITH A REGISTRANT, IN VIOLATION OF THE NVRA

SEA 334 sets forth two methods for satisfying "authoriz[ation] of cancellation": county voter registration offices may rely on "written information" (1) sent by another state to the county voter registration office directly or (2) sent by another state to the IED and forwarded to the county

voter registration office. SEA 334 § 5.5(f). If the county voter registration office receives "information . . . directly from the other state . . . , the out-of-state voter registration official must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration." *Id.* § 5.5(f)(1). But if the IED receives "written notice . . . from another state" and "forwards [it] to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. *A copy of the actual voter signature is not required to be provided to the county for the voters status to be canceled if the written notice is forwarded by the election division.*" *Id.* § 5.5(f)(2) (emphasis added).

Befuddlingly, Defendants have chosen to advance the uncontroversial argument that "the words of a statute must be read in their context," *see* Dkt. 143 at 12, to support a nonsensical interpretation of SEA 334. By their logic, somehow SEA 334's dictate that "[a] copy of the actual voter signature is *not required* to be provided to the county for the voters status to be canceled if the written notice is forwarded by the election division," SEA 334 § 5.5(f)(2) (emphasis added), really means that "where another state provides information of a later registration to Indiana, via written notice, the state *must* provide the individual's signed voter registration application . . . ," Dkt. 143 at 4 (emphasis added). This tortured, self-contradictory interpretation defies belief.

The only reasonable interpretation of Section 5.5(f)(2) of SEA 334 is a loophole that swallows the NVRA, permitting Defendants to do third-hand (rely on written notice without a registrant's signature if the notice travels from another state to the IED to the county) what they cannot do second-hand (rely on written notice without a registrant's signature if the notice travels from the other state to the county directly).

SEA 334 is clear: "written information" or "written notice" is "*forwarded*" by the IED to the county voter registration offices, meaning that the county voter registration offices receive what was sent to the IED by the other state. SEA 334 § 5.5(f)(2). And further, the county voter registration office should consider this "written information" or "written notice" to constitute "confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration," and should do so specifically where an "actual voter signature" is <u>not</u> provided. *Id.* Contrary to Defendants' "context[ual]" reading of SEA 334, the statue *never* references the IED receiving a copy of any voter's signed voter registration application. Receipt of "written information" from another state is just another form of the "indirect contact with the voter" that the Seventh Circuit held unlawful. *Common Cause Ind.*, 937 F.3d at 959. The process under SEA 334 still "does away with the process of personal contact with the suspected ineligible voter and allows Indiana election officials to remove a person from the rolls . . . *without direct notification of any kind*." *Id.*; *see also id.* at 962 ("[T]he system [Indiana] chose flouts the NVRA's command that the state rely on the registrant herself.").

Even if "written information" or "written notice" satisfied the NVRA's requirements, SEA 334 is phrased permissively, offering sources Defendants and counties "may" rely upon in making "determinations" like whether a voter "authorized the cancellation." SEA 334 § 5.5(f). That is, counties are not technically bound by Subsection 5.5(f) of SEA 334.

Further, Defendants have impliedly asserted that the reference to "written information" received by the IED in Section 5.5(f) of SEA 334 really means that the IED receives a voter registration form. But the General Assembly knew how to use the words "voter registration" and opted for something different and broader. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000) ("Different words in a statute . . .

should be given different meanings unless the context indicates otherwise."); *Briggs v. Review Bd. of Ind. Dep't of Workforce Dev.*, 648 N.E.2d 1225, 1228 (Ind. Ct. App. 1995) ("The legislature must have intended the words . . . to have different meanings in the statute. Courts presume that every word in a statute was intended to have meaning. All statutory language is deemed to have been used intentionally . . . ." (citations omitted)).

Plaintiffs' common-sense reading of the actual text of SEA 334 and its NVRA violation is corroborated, while Defendants' atextual, made-for-litigation interpretation is unsupported.

### III. SEA 334 WILL NOT BE IMPLEMENTED UNIFORMLY

The NVRA instructs states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). The NVRA further mandates that any such program "shall be *uniform* [and] nondiscriminatory." *Id.* § 20507(b)(1). As Indiana's NVRA Official, the Co-Directors are responsible for Indiana's uniform voter list maintenance. *Id.*; *see also Az. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *6 (D. Az. Nov. 3, 2016). Secretary of State Lawson is the state's chief election official and is charged, with the consent of the Co-Directors, with implementing "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, and interactive statewide voter registration list . . . ." Ind. Code § 3-7-26.3-3.

The NVRA's mandate that state voter list maintenance programs be uniform and nondiscriminatory requires that counties across a state may not apply different standards in implementing the program. H.R. REP. No. 103-9, at 15 (1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, No. 95 C 174, 1995 WL 532120, at *2 (N.D. Ill. Sept. 7, 1995) (uniformity must be ensured from county to county to comply with § 20507(b)(1), which requires the "uniformity and non-discriminatory nature of '[a]ny State program or activity

to protect the integrity of the electoral process'"); *Project Vote v. Madison Cty. Bd. of Elections*, 1:08-cv-2266, 2008 WL 4445176, at *11-12 (N.D. Ohio Sept. 29, 2008) (granting temporary restraining order "to require a single county to follow the absentee procedures that every other county in the state will be following"); *Az. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *6 (D. Az. Nov. 3, 2016) (holding NVRA official has "not only authority, but a duty to ensure that voter registration regulations are administered in a fair and uniform manner[, which] extends to the [NVRA official's] oversight of voter registration as carried out by the counties").

The Co-Directors' duties include promulgating Indiana's official policies, guidance, and standard operating procedures instructing county election boards and boards of registration on their duties under state and federal law, including the NVRA, and providing training on these policies and procedures to county election officials. *Id.* § 3-6-4.2-14. Evidence will show that county voter registration offices consider the Co-Directors' guidance to be mandatory, but that Defendants do not use this authority to implement uniform voter list maintenance programs. Nor do Defendants use their control over functionality of the Statewide Voter Registration System to design the system to prevent NVRA non-compliant cancellations by county officials.

Evidence will also show that, in advising the counties, Co-Directors King and Nussmeyer often receive and respond to counties' inquiries independently, and without consulting one another. Co-Directors King and Nussmeyer may also disagree on policies and procedures in response to counties' inquiries. Because county officials typically reach out to the Co-Director with whom they share political affiliations, differences in the Co-Directors' interpretations will yield nonuniform implementation of law statewide. In making determinations under SEA 442's predecessor law—which imposed the same three "determin[ations]" as SEA 334—counties did

not review nor request any material outside of the data provided to them by the Election Division. Some clerks approve matches on the basis of unusual names.

The nonuniformity among counties of the State's voter list maintenance program is confirmed by Defendants' data showing that counties approved "matches" at markedly different rates under SEA 442's predecessor law, yielding the clear inference that they were applying different criteria. Some counties rubber stamped matches, others were more careful, and some rejected *all* records. Again, this pre-SEA 442 data shows the rates at which counties made the identical "determin[ations]" now required by SEA 334.

## IV. PLAINTIFFS HAVE STANDING

Defendants have not challenged Plaintiffs' standing. It has already been affirmed that "the plaintiff organizations . . . adequately demonstrated their standing to bring these actions . . . ." *Common Cause*, 937 F.3d at 946.

## CONCLUSION

Based on the foregoing, the Court should permanently enjoin Defendants from implementing any voter list maintenance program that permits county voter registration officials to remove, or otherwise removing, any Indiana registrant from the list of eligible voters because of a change in residence absent: (1) a "request" or "confirm[ation] in writing" directly from the voter that the voter is ineligible or does not wish to be registered; or (2) the National Voter Registration Act-prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting two inactive federal election cycles.

DATED: August 7, 2020                                Respectfully submitted,

/s/ Alexandre J. Tschumi
Sascha N. Rand
Ellyde R. Thompson
Ellison Ward Merkel
Geneva McDaniel
Alexandre J. Tschumi
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Myrna Pérez
Eliza Sweren-Becker
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310

Trent A. McCain
MCCAIN LAW OFFICES, P.C.
363 S. Lake St., Suite 2
Gary, IN 46403
(219) 884-0696

*Counsel for Plaintiffs Indiana State Conference of the National Association for the Advancement of Colored People (NAACP) and League of Women Voters of Indiana*

## CERTIFICATE OF SERVICE

I, Alexandre J. Tschumi, an attorney, certify that on August 7, 2020, I caused a true and correct copy of the foregoing Trial Brief to be served on counsel for Defendants.

/s/ *Alexandre J. Tschumi*
Alexandre J. Tschumi