UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), and LEAGUE OF WOMEN VOTERS OF INDIANA, <br><br> Plaintiffs, <br><br> v. <br><br> CONNIE LAWSON in her official capacity as Secretary of State of Indiana, J. BRADLEY KING in his official capacity as Co-Director of the Indiana Election Division, and ANGELA NUSSMEYER in her official capacity as Co-Director of the Indiana Election Commission, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:17-cv-02897-TWP-MPB |

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) by Defendants Connie Lawson ("Lawson"), Bradley King ("King"), and Angela Nussmeyer ("Nussmeyer") (collectively, "Defendants") (Filing No. 134). Also pending before the Court is a Motion for Summary Judgment filed pursuant to Rule 56 by the Plaintiffs Indiana State Conference of the National Association for the Advancement of Colored People ("NAACP") and League of Women Voters of Indiana ("League") (collectively, "Plaintiffs") (Filing No. 136). The Plaintiffs initiated this lawsuit to challenge the legality of Indiana's voter registration laws on the basis that they violate the procedural safeguards established by the National Voter Registration Act of 1993, 52 U.S.C. §§ 20507–20511 ("NVRA"). On June 8, 2018, the Court entered a preliminary injunction against the Defendants, which they appealed (Filing

No. 63).  The Seventh Circuit affirmed the Court's issuance of the preliminary injunction and remanded the case for further proceedings (Filing No. 104).  The pending Motions ensued after the remand.  For the reasons discussed below, the Court **denies** the Defendants' Motion to Dismiss and **grants** the Plaintiffs' Motion for Summary Judgment.

## I.   BACKGROUND

The NVRA was enacted to reduce barriers to applying for voter registration, to increase voter turnout, and to improve the accuracy of voter registration rolls.  The NVRA placed specific requirements on the states to ensure that these goals were met.  It established procedural safeguards to protect eligible voters against disenfranchisement and to direct states to maintain accurate voter registration rolls.  Under the NVRA, a voter's registration may be removed from the rolls if the voter requests to be removed, if they die, because of a criminal conviction or mental incapacity, or because of a change in residency.  The NVRA provides, "In the administration of voter registration for elections for Federal office, each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4).

The NVRA further provides, "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1).  Furthermore, the NVRA directs,

> A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant-
>
> > (A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or
> >
> > (B) (i) has failed to respond to a notice described in paragraph (2); and

(ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

52 U.S.C. § 20507(d)(1).  Paragraph (2) describes that the notice must be "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address."  52 U.S.C. § 20507(d)(2).

Thus, in the context of removing voter registrations because of a change in residency, Section 20507(d)(1) requires either (1) the voter confirms in writing their change in residency, or (2) notice was mailed to the voter who then did not return the notice card and did not vote during the next two federal general elections.

Plaintiff NAACP is a nonpartisan, nonprofit organization that was chartered in 1940.  It was founded to assist African-American citizens to ensure political, educational, social, and economic equality and to fight against racial discrimination.  The NAACP has made it part of its mission to promote civic engagement by educating voters, monitoring polls, and facilitating voter registration.  Voter registration is central to the NAACP's mission of empowering minority voters because of the barriers the registration process has posed to participation for these communities. The NAACP has approximately 5,000 members in Indiana.  The NAACP already has expended scarce resources to combat Indiana's election laws and practices that threaten to wrongfully purge voters from the voter registration rolls (Filing No. 44; Filing No. 137-14).

Plaintiff League is a nonpartisan, nonprofit organization that was founded in 1920.  It is affiliated with the national League of Women Voters. The League conducts voter registration drives, encourages and assists individuals in voting, and conducts other activities to boost civic engagement, which has been essential to its mission since its founding.  The League has more than 1,300 members in Indiana.  Like the NAACP, the League has expended scarce resources to combat

3

Indiana's election laws and practices that threaten to wrongfully purge voters from the voter registration rolls (Filing No. 43; Filing No. 137-15).

Defendant Lawson is the Indiana Secretary of State, and, in this capacity, she is the chief election official in the State of Indiana. She is charged with performing all ministerial duties related to the state's administration of elections. Ind. Code §§ 3-6-3.7-1, 3-6-4.2-2(a). Defendants King and Nussmeyer are co-directors of the Indiana Election Division within the Secretary of State's office. In this capacity, King and Nussmeyer are the chief state election officials responsible for the coordination of Indiana's responsibilities under the NVRA. Defendants King and Nussmeyer thus are charged with coordinating county voter registration. They are considered Indiana's "NVRA officials." Ind. Code § 3-7-11-1.

Each county in the State of Indiana has either a county election board or a county board of registration. Ind. Code §§ 3-6-5-1, 3-6-5.2-3. Pursuant to the official policies, guidance, and standard operating procedures issued by King and Nussmeyer as the co-directors, the individual county boards conduct elections and administer election laws within their county. Ind. Code §§ 3-6-5-14, 3-6-5.2-6. The county boards are responsible for maintaining the voter registration records in their county by adding, updating, and removing voter registrations (Filing No. 42-21 at 12–15).

While the county boards are responsible for actually physically maintaining their voter registration records, this list maintenance is dictated by the policies, procedures, and guidance established by the election division co-directors and constrained by the election division's business rules governing the electronic statewide voter registration system (Filing No. 42-21 at 12–15). This electronic statewide voter registration system is "a single, uniform, official, centralized, and interactive statewide voter registration list." Ind. Code §§ 3-7-26.3-3, 3-7-26.3-4. King and Nussmeyer are responsible for building, managing, and maintaining the statewide voter

registration system, which includes creating the protocols within the system and issuing official policies, guidance, and standard operating procedures to guide the county boards on their duties under state and federal law. They also provide training to the county boards (Filing No. 42-21 at 12–15); Ind. Code § 3-6-4.2-14. The official guidance from King and Nussmeyer as reflected in the protocols, documents, and trainings are mandatory (Filing No. 42-21 at 82; Filing No. 42-23 at 21–22).

Regarding the electronic statewide voter registration system, King and Nussmeyer establish the standard operating procedures and the business rules that determine how the system operates. This includes dictating what information will be provided to county election officials to help them maintain their individual county voter rolls, and it also dictates what actions the county officials are able to take within the "online portal" of the statewide system (Filing No. 42-21 at 77, 110–11).

King and Nussmeyer receive and respond to questions from county election officials through telephone calls and emails. In advising county officials, King and Nussmeyer often respond to the county's inquiries independently and without consulting one another (Filing No. 42-21 at 20–21). King and Nussmeyer do not always agree on the required policies and procedures, including about voter registration and list maintenance, when they respond to inquiries from the counties. *Id.* at 22–23. Nussmeyer and King ultimately relegate responsibility for NVRA compliance to the counties by directing counties to use their best judgment in implementing the instructions the co-directors provide. *Id.* at 12–13, 24; Filing No. 42-24 at 62–63.

At the time that the Plaintiffs filed this lawsuit in August 2017, Indiana participated in the Interstate Voter Registration Crosscheck Program ("Crosscheck") as a method for identifying voters who may have become ineligible to vote in Indiana because of a change in residence. Ind.

Code § 3-7-38.2-5(d).  Crosscheck is an interstate program that was created and administered by the Kansas Secretary of State. The program was designed to identify voters who have moved to and registered to vote in another state.  This was accomplished by comparing voter registration data provided by participating states.  The participating states would submit their voter registration data to Crosscheck, which then compared the first name, last name, and birthdate of registered voters to identify possible "matches" or duplicate voter registrations.  The output data of possible matches was then sent back to the participating states.  The individual states would then decide what to do with the Crosscheck data. Crosscheck did not receive or distribute primary voter registration documents, and it did not include signatures or former addresses among the identifying information provided to participating states (Filing No. 42-2).

Each year during the time that Indiana participated in Crosscheck, Indiana would provide its statewide voter registration list to the Kansas Secretary of State to compare the data with the other data from other participating Crosscheck states. Crosscheck then sent a list of possible matches back to Indiana, and within thirty days of receiving this list, Indiana's statute required that the "NVRA official" (in this case King and Nussmeyer) "shall provide [to] the appropriate county voter registration office" the name and any other information obtained on any Indiana voters who share "identical . . . first name, last name and date of birth of [a] voter registered in [another] state." Ind. Code § 3-7-38.2-5(d); Filing No. 137-2 at 10–11.  While the statute required King and Nussmeyer to provide this voter data to the county election officials, they only forwarded the data to the county officials if the data met a certain "confidence factor," which King and Nussmeyer determine based on additional matching data points such as address, middle name, or social security number (Filing No. 42-21 at 67–71; Filing No. 42-22 at 23–24).

6

After voter data was provided to the county officials, they determined whether the voter identified as a possible match was the same individual who was registered in the county and whether the voter registered to vote in another state on a date after they had registered in Indiana. Ind. Code § 3-7-38.2-5(d). Within the statewide voter registration system, the county official could select for each possible matched voter registration "match approved," "match rejected," or "research needed". (Filing No. 42-20 at 7.) The information provided from Crosscheck to the county officials in the statewide voter registration system was limited to the personal data of voters; it did not include any underlying source documents (Filing No. 42-21 at 97–98). County officials generally do not review or request any material outside of the Crosscheck data provided to them by King and Nussmeyer. No written guidance, manual, step-by-step instruction, or standard operating procedure states that any additional inquiry is required or recommended (Filing No. 42-23 at 31; Filing No. 42-25 at 31–33; Filing No. 42-28 at 30–31, 43–44; Filing No. 42-15 at 41; Filing No. 42-16 at 4).

Under the Crosscheck program, the statewide voter registration system did not provide information about the dates of registration in Indiana and other states to assist in determining what state registration occurred first (Filing No. 42-20 at 7; Filing No. 42-21 at 126). Some county officials just assumed that the Indiana registration predated the other state's registration, which would lead to cancelling the Indiana registration (Filing No. 42-25 at 33; Filing No. 42-28 at 77; Filing No. 42-23 at 34; Filing No. 42-24 at 57–58). Even if dates of registration information were provided, the information was incomplete or inconsistent because states that participated in Crosscheck did not always populate the registration date field, and they had different policies for determining which date to use, so there was no uniform practice among states. Some states did

not even provide a definition for "date of registration." (Filing No. 42-21 at 100; Filing No. 42-22 at 29; Filing No. 42-19 at 2.)

King and Nussmeyer do not provide guidance or a standardized procedure to the county election officials for how to determine whether the record of an Indiana voter is actually the same individual who is registered in another state or how to determine whether the out-of-state registration is more recent (Filing No. 42-22 at 44–45). Some counties simply approve all matches that appear as possible matches from Crosscheck (Filing No. 42-14). Each county has the discretion to cancel or not cancel a voter's registration based on their analysis of the data received from other states and Crosscheck (Filing No. 42-22 at 44).

The state statutory authority and directives upon which the above-described processes are based is found at Indiana Code § 3-7-38.2-5(d)–(e). Prior to its amendment in 2017, Indiana Code § 3-7-38.2-5(d)–(e) read:

> (d) The NVRA official shall execute a memorandum of understanding with the Kansas Secretary of State. Notwithstanding any limitation under IC 3-7-26.4 regarding the availability of certain information from the computerized list, on January 15 of each year, the NVRA official shall provide data from the statewide voter registration list without cost to the Kansas Secretary of State to permit the comparison of voter registration data in the statewide voter registration list with registration data from all other states participating in this memorandum of understanding and to identify any cases in which a voter cast a ballot in more than one (1) state during the same election. Not later than thirty (30) days following the receipt of information under this subsection indicating that a voter of Indiana may also be registered to vote in another state, the NVRA official shall provide the appropriate county voter registration office with the name of and any other information obtained under this subsection concerning that voter, if the first name, last name, and date of birth of the Indiana voter is identical to the first name, last name, and date of birth of the voter registered in the other state. **The county voter registration office shall determine whether the individual: (1) identified in the report provided by the NVRA official under this subsection is the same individual who is a registered voter of the county; (2) registered to vote in another state on a date following the date that voter registered in Indiana; and (3) authorized the cancellation of any previous registration by the voter when the voter registered in another state.**

(e) If the county voter registration office determines that the voter is described by subsection (d)(1) through (d)(3), the county voter registration office shall cancel the voter registration of that voter. **If the county voter registration office determines that the voter is described by subsection (d)(1) and (d)(2), but has not authorized the cancellation of any previous registration, the county voter registration office shall send an address confirmation notice to the Indiana address of the voter.**

(Emphasis added.)

However, Indiana Senate Enrolled Act 442 (2017) ("SEA 442") amended this Code section, effective July 1, 2017, to read:

(d) The NVRA official shall execute a memorandum of understanding with the Kansas Secretary of State. Notwithstanding any limitation under IC 3-7-26.4 regarding the availability of certain information from the computerized list, on January 15 of each year, the NVRA official shall provide data from the statewide voter registration list without cost to the Kansas Secretary of State to permit the comparison of voter registration data in the statewide voter registration list with registration data from all other states participating in this memorandum of understanding and to identify any cases in which a voter cast a ballot in more than one (1) state during the same election. Not later than thirty (30) days following the receipt of information under this subsection indicating that a voter of Indiana may also be registered to vote in another state, the NVRA official shall provide the appropriate county voter registration office with the name of and any other information obtained under this subsection concerning that voter, if the first name, last name, and date of birth of the Indiana voter is identical to the first name, last name, and date of birth of the voter registered in the other state. **The county voter registration office shall determine whether the individual: (1) identified in the report provided by the NVRA official under this subsection is the same individual who is a registered voter of the county; and (2) registered to vote in another state on a date following the date that voter registered in Indiana.**

**(e) If the county voter registration office determines that the voter is described by subsection (d), the county voter registration office shall cancel the voter registration of that voter.**

(Emphasis added.)

SEA 442 removed from the statute the requirement to determine whether the individual voter authorized the cancellation of any previous registrations when they registered in another state. The amendment also removed the requirement to send an address confirmation notice to the

voter when cancellation had not been confirmed by the voter.  Before the statute was amended, pursuant to business rules set by King and Nussmeyer, whenever a county official determined that a possible match was indeed truly a match and approved the match, that selection in the statewide voter registration system would generate a confirmation notice that was mailed to the voter. This mailing allowed a person to confirm their registration at the current address, update their registration, or cancel it. If the voter did not respond to the mailer, they would be placed in "inactive" status.  After being placed in inactive status, only if the voter did not vote over the course of the next two federal general election cycles could Indiana cancel the voter's registration (Filing No. 42-22 at 47).

Also prior to the amendment by SEA 442, county officials were required to confirm that voters who appeared to have registered in another state had also authorized the cancellation of any previous registration by the voter when the voter registered in the other state.  If the county official could not determine that the voter had authorized the cancellation of any previous registration, the state statute required the county board to send an address confirmation notice to the Indiana address of the voter.  This was consistent with the written confirmation notice-and-waiting procedures in the NVRA at 52 U.S.C. § 20507(d).  However, this requirement was removed by SEA 442.  SEA 442 removed the requirement to make the determination that an individual "authorized the cancellation of any previous voter registration" and the requirement to send an "address confirmation notice." Under SEA 442, a county official's approval of matches would generate a cancellation of the voter registration rather than a notice mailer.  This resulted in cancellation of a voter registration without following the notice-and-waiting requirement for approved matches (Filing No. 42-22 at 38–39).

10

The Plaintiffs filed this lawsuit on August 23, 2017, seeking declaratory and injunctive relief, requesting that the Court declare Indiana Code § 3-7-38.2-5(d)–(e) violates the NVRA and enjoining Indiana from implementing and enforcing the amended statute (Filing No. 1). After the lawsuit was initiated, the Indiana General Assembly enacted House Enrolled Act 1253 ("HEA 1253"), which went into effect on March 15, 2018. HEA 1253 added "confidence factors" to Indiana Code § 3-7-38.2-5(d), thereby codifying King and Nussmeyer's policy of providing to the county officials only those registrations that met certain "match criteria."

On March 9, 2018, the Plaintiffs filed a Motion for Preliminary Injunction (Filing No. 41). After hearing the parties' oral arguments, the Court determined that each of the factors for the issuance of a preliminary injunction weighed in favor of the Plaintiffs.  Therefore, on June 8, 2018, the Court entered a preliminary injunction against the Defendants, "prohibiting [them] from taking any actions to implement SEA 442 until this case has been finally resolved."  (Filing No. 63 at 28.) The Defendants appealed the issuance of the preliminary injunction, and on August 27, 2019, the Seventh Circuit affirmed the Court's issuance of the preliminary injunction and remanded the case for further proceedings (Filing No. 104).

On October 30, 2019, the Court stayed this matter until May 1, 2020, to see whether the Indiana General Assembly would make any changes to SEA 442 that might affect the case (Filing No. 116; Filing No. 127 at 2).  "On March 21, 2020, Governor Holcomb signed into law Senate Enrolled Act 334 ('SEA 334'), which amends SEA 442."  (Filing No. 124 at 2; *see also* Filing No. 124-1.)

SEA 334 amended SEA 442, voided Indiana's memorandum of understanding with the Kansas Secretary of State, withdrew Indiana from participation in Crosscheck, and established the Indiana Data Enhancement Association ("IDEA") in place of Crosscheck.  IDEA is functionally

identical to Crosscheck in that it receives member states' voter lists and returns purported matches. The "NVRA official" (in this case King and Nussmeyer) administers IDEA (Filing No. 137-4 at 8–11 (SEA 334 §§ 5.1(a)–(b), 5.5(a)–(b))). SEA 334 requires that, "[n]ot later than July 1, 2020, the NVRA official shall adopt an order for the administration of voter list maintenance programs to be performed by IDEA." *Id.* at 10 (SEA 334 § 5.5(b)). "If the NVRA official does not adopt an order by July 1, 2020, . . . the secretary of state shall adopt or amend the order." *Id.* Thus, the oversight and administration of IDEA are placed in the Defendants.

Under SEA 334, IDEA uses a "matching" system, and within thirty days of comparing data from other states, the NVRA official is to provide to county officials a list of all Indiana voters having (1) an "identical" "first name, last name, and date of birth of the voter registered in the other state," and (2) whose records meet the "confidence factor" threshold. *Id.* at 11 (SEA 334 § 5.5(c)). IDEA does not collect or disseminate the actual voter registration documents underlying its "matches" and does not involve direct contact with voter registrants. *Id.* at 10–12 (SEA 334 § 5.5).

SEA 334 directs,

(d) The county voter registration office shall determine whether the individual:

> (1) identified in the report provided by the NVRA official under subsection (c) is the same individual who is a registered voter of the county;
> (2) registered to vote in another state on a date following the date that voter registered in Indiana; and
> (3) authorized the cancellation of any previous registration by the voter when the voter registered in another state.

(e) If the county voter registration office determines that the voter is described by subsection (d), the county voter registration office shall cancel the voter registration of that voter. If the county voter registration office determines that the voter is described by subsection (d)(1) and (d)(2), but has not authorized the cancellation of any previous registration, the county voter registration office shall send an address confirmation notice to the Indiana address of the voter.

(Filing No. 137-4 at 11–12 (SEA 334 § 5.5(d)–(e)).)

SEA 334 further provides,

(f) The county voter registration office may rely on written information provided either directly by a voter registration office in another state or forwarded from the election division from the office in the other state as follows:

(1) If this information is provided directly from the other state to the Indiana county voter registration official, the out-of-state voter registration official must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration.

(2) If the election division forwards written notice from another state to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. A copy of the actual voter signature is not required to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division.

County voter registration officials shall review the date the individual registered out of state and the date the individual registered in Indiana to confirm which registration is more recent when performing the officials' analysis under this subsection.

*Id.* at 12 (SEA 334 § 5.5(f)).

After the enactment of SEA 334, the stay in this matter was lifted in early May 2020 (Filing No. 123), after which the Defendants filed a Motion to Dismiss (Filing No. 134), and the Plaintiffs filed a Motion for Summary Judgment (Filing No. 136).

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc*., 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co*., 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding

whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B.     Summary Judgment Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively

14

demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

The Defendants ask the Court to dismiss this action on the basis that the case is now moot and, therefore, subject matter jurisdiction no longer exists because SEA 442—the law challenged by the Plaintiffs in their Complaint—was amended by SEA 334.  In contrast, the Plaintiffs ask the Court to enter summary judgment in their favor and to enter a permanent injunction prohibiting the Defendants from implementing Indiana's election laws that violate the NVRA. The Court will first address the Motion to Dismiss and then turn to the Motion for Summary Judgment.

### A.   Defendants' Motion to Dismiss

The Defendants contend the Court lacks subject matter jurisdiction to hear this case because there is no longer a live case or controversy. They note that Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies, which "requires an

actual controversy at all stages of review, not merely at the time the complaint is filed." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016) (internal citation and quotation marks omitted). Dismissing moot cases is appropriate because a moot case runs afoul of the "live case or controversy" requirement.

The Defendants argue the Plaintiffs' claim centers on Indiana's participation in Crosscheck and the enforcement of SEA 442 and the resulting violation of the NVRA. They assert, intervening events have occurred, thereby mooting the claim brought by the Plaintiffs. The Indiana General Assembly amended SEA 442 with the enactment of SEA 334, and Indiana has withdrawn from participation in Crosscheck. They argue there is no likelihood that Indiana will again participate in Crosscheck as it has been indefinitely suspended. The Defendants contend the relief sought by the Plaintiffs has been fully satisfied because SEA 442 will not be enforced as it has been amended, and Indiana will no longer participate in Crosscheck. Thus, the Defendants argue, there is no longer a case or controversy over the enforcement of SEA 442 and participation in Crosscheck. The Defendants assert, with no live controversy and with the relief sought already provided, the Court lacks subject matter jurisdiction to consider this case any further.

The Defendants further argue that Plaintiffs' claim specifically addresses SEA 442, and any possible claims that the Plaintiffs allege regarding SEA 334 (the new 2020 law) must be addressed in a new, separate lawsuit subject to discovery and a full hearing of the issues. SEA 442 involved participation in Crosscheck, and SEA 334 "ameliorated the alleged violations that existed under the previous law. Any alleged violations under SEA 334, would be entirely new claims, and should be treated as such." (Filing No. 135 at 9.)

In response, the Plaintiffs explain that this case is not about the Crosscheck program as characterized by the Defendants, rather, they filed this lawsuit to enforce the NVRA's notice-and-

waiting requirements.  The Plaintiffs explain that SEA 442 allowed Indiana to cancel voter registrations without complying with the notice-and-waiting requirements of the NVRA. The Plaintiffs sought a preliminary injunction on the basis that Indiana's election law failed to follow the provisions of the NVRA, and this Court and the Seventh Circuit held that the failure to follow the notice-and-waiting requirements violated the NVRA.

The Plaintiffs point out that when a challenged law "is repealed or amended mid-lawsuit— a 'recurring problem when injunctive relief is sought'—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted." *Smith v. Exec. Dir. of Ind. War Mems. Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014) (internal citation omitted). The Plaintiffs acknowledge that SEA 334 amended SEA 442; however, they assert, SEA 334 kept the same impermissible voter cancellation procedures, and it injures the Plaintiffs and Indiana voters in the same manner as SEA 442.  SEA 334 replaced the Crosscheck program with the identical IDEA program. And SEA 334 still allows voter cancellation based on data provided by other states, without any direct voter contact, and without following the NVRA's notice-and-waiting procedures. Therefore, this lawsuit is not moot because SEA 334 continues the same NVRA violations that occurred under SEA 442, and the Court can award relief by enjoining the ongoing NVRA violations.

Concerning the Defendants' argument that any claims relating to SEA 334 must be brought in a new lawsuit, the Plaintiffs argue that granting the Defendants' Motion to Dismiss and requiring a new lawsuit challenging SEA 334 would unnecessarily waste judicial resources. The Defendants' suggestion would require a new lawsuit challenging the same provision of the Indiana Code based on the same section of the NVRA because of the same wrongful conduct of the same Defendants. The parties would face the same motions for preliminary injunction, to dismiss, and for summary

judgment, and they would repeat the same discovery and prepare for trial based on insignificant amendments to a law that is frequently amended.  The Court and the parties should not be subjected to such a waste of resources or the burden of relitigating indistinguishable claims.

In reply, the Defendants reassert that this case really is about Crosscheck, and further, the Plaintiffs misread SEA 334. They contend that the "plain language of SEA 334 provides that if another state provides information to an Indiana county voter official, the other state must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration. SEA 334 § 8(f)(1)." (Filing No. 142 at 2.) The Defendants argue the provisions of SEA 334 are significantly different from SEA 442, so this case about SEA 442 is moot, and any claims pertaining to SEA 334 must be brought in a new action.

After a careful review of SEA 442, SEA 334, the Complaint, and the Court's Order issuing the preliminary injunction, the Court concludes this case is not mooted by the enactment of SEA 334.  The Plaintiffs' arguments are well-taken.  A case does not become moot if the amendment to the challenged law does not fully resolve the problem at issue in the case. The gravamen of Plaintiffs' Complaint is that Indiana's election law violates the NVRA by allowing cancellation of voter registrations without direct contact from the voter or, alternatively, providing notice to the voter and then waiting two election cycles before cancelling the voter registration. This Court and the Seventh Circuit understood this to be the issue when granting and affirming injunctive relief.

While SEA 334 amended SEA 442 and replaced Crosscheck with IDEA, the issue raised by the Complaint remains—allowing cancellation of voter registrations without direct contact from the voter or, alternatively, providing notice to the voter and then waiting two election cycles before cancelling the voter registration. SEA 334 expressly provides,

> If the election division forwards written notice from another state to an Indiana county voter registration official, the county should consider this notice as confirmation that the individual is registered in another jurisdiction and has requested cancellation of the Indiana registration. A copy of the actual voter signature is not required to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division.

(Filing No. 137-4 at 12 (SEA 334 § 5.5(f)(2)).)  Section 5.5(f)(2) allows cancellation of voter registrations without direct contact from the voter and without the NVRA's notice-and-waiting protection. Therefore, an actual controversy—the same controversy raised in the Complaint—still remains between the parties, and the Court is able to provide effectual relief; thus, the case is not moot. Subject matter jurisdiction still exists in this Court. The Court agrees with the Plaintiffs' position that requiring a new lawsuit for SEA 334 would be an unnecessary waste of the Court's and the parties' resources and time. The Defendants' Motion to Dismiss is **denied**.

## B.  <u>Plaintiffs' Motion for Summary Judgment</u>

The Plaintiffs filed their Motion for Summary Judgment, asking the Court to enter summary judgment in their favor and to permanently enjoin the Defendants from implementing Indiana's election laws that would allow county officials to remove voters' registration because of a change in residence without a request or confirmation in writing directly from the voter that the voter is ineligible or does not wish to be registered or without the NVRA's notice-and-waiting protections.

In support of their Motion for Summary Judgment, the Plaintiffs assert similar arguments they made in opposition to the Defendants' Motion to Dismiss. They argue that SEA 334, like its predecessor SEA 442, violates the NVRA by allowing cancellation of a voter's registration without direct contact with the registered voter.  SEA 334 permits cancellation without a request from the registered voter and without following the notice-and-waiting procedures.

The Plaintiffs assert,

> The District Court has already made factual findings consistent with the foregoing descriptions of the NAACP, the League, and Common Cause Indiana, their missions, and their efforts to counteract the effects of SEA 442, . . . [and] Plaintiffs['] actions are ongoing, as SEA 334 is substantially similar to SEA 442. Since the enactment of SEA 334, Plaintiffs have redoubled their efforts.

([Filing No. 137 at 27](.) .) The Plaintiffs further point out,

> Both this Court and the Seventh Circuit have ruled on the meaning of relevant NVRA requirements, which now operate as law of the case. Specifically, the Seventh Circuit affirmed that the NVRA requires that Indiana have "direct contact with the voter" prior to any removal from the voter registration rolls. *See Common Cause*, 937 F.3d at 958 ("Indiana insists that [SEA 442] complies with the NVRA, despite the fact that it omits any direct contact with the voter . . . . The state attempts to trivialize that omission, but a review of the NVRA reveals that it is fatal.").

*Id.* at 29.

The Plaintiffs support their position with additional language from this Court's and the

Seventh Circuit's decisions from earlier in this litigation:

> The Court "determine[d] that Plaintiffs have a high likelihood of success on the merits of their claim that SEA 442 violates some of the requirements of the NVRA and threatens disenfranchisement of eligible voters." *Id.* at 661. The Court found that SEA 442 removed the NVRA's "simple procedural safeguard[]" that "a state 'shall not remove the name of a registrant from the official list of eligible voters ... on the ground that the registrant has changed residence unless the registrant,' (1) 'confirms in writing that [they have] changed residence,' or (2) has failed to respond to a mailed notification and has not voted to two federal election cycles." *Id.* (quoting 52 U.S.C. § 20507(d)(1)); *see also id.* at 650.

([Filing No. 137 at 13](–14.).)

> The Seventh Circuit affirmed this Court "was correct to find that the Organizations are likely to succeed on the merits of their challenge," *Common Cause*, 937 F.3d at 949. The Court also held that the NVRA "forbids a state from removing a voter from that state's registration list unless: (1) it hears *directly* from the voter via a 'request' or a 'confirm[ation] in writing' that the voter is ineligible or does not wish to be registered; or (2) the state goes through the statutorily prescribed [notice and waiting process]. Both of these avenues focus on *direct* contact with the voter." *Id.* at 959 (emphases added; second alteration in original).

*Id.* at 14.

The Plaintiffs argue that, based on the clear law of the case set forth above, a permanent injunction prohibiting implementation of SEA 334 is appropriate because SEA 334 commits the same error as SEA 442, which has been determined to be fatal to the Indiana statute. It allows for cancellation of a voter's registration without any direct contact with the registered voter. Like SEA 442, SEA 334 ignores the NVRA's requirement of either a request from the registrant or confirmation in writing that the registrant has changed residence. And it allows cancellation without utilizing the notice-and-waiting procedures.

In response to the Motion for Summary Judgment, the Defendants advance similar arguments they made in support of their Motion to Dismiss. They argue that the Plaintiffs' case is really about participation in Crosscheck and SEA 442's elimination of a mailer confirmation procedure. However, they assert, SEA 334 has withdrawn Indiana from participation in Crosscheck, and it requires county officials to determine whether the voter cancelled previous registrations or to send a confirmation to the individual's address before cancelling the registration, pointing to SEA 334 §§ 5.1, 5.5. The Defendants argue that the amendments to SEA 442 found in SEA 334 put Indiana's election laws into compliance with the NVRA's requirements, and, thus, summary judgment is not appropriate.

The Defendants argue,

SEA 334 explicitly provides in Section 8(f)(1) that if a county receives information directly from another state, and not from the Indiana Election Division, "the out-of-state voter registration official must provide a copy of the voter's signed voter registration application which indicates the individual authorizes cancellation of the individual's previous registration."

(Filing No. 143 at 11.) They further argue,

Under the doctrine of statutory construction, considering Section 8(f)(1) and 8(f)(2) together, Section 8(f)(1) implies that under Section 8(f)(2), if the Indiana Election Division notifies a county official that the voter cancelled registration, the Indiana

Election Division also received a copy of the voter's signed voter registration application authorizing cancellation.

*Id.* at 12.

The Defendants again argue that the Plaintiffs may not present a new claim or argument in their summary judgment motion nor can they amend the pleadings via a summary judgment motion. The Defendants assert that SEA 334 has not yet been implemented in regard to IDEA, and they are not the individuals who implement or enforce SEA 334 as the county election officials actually perform the voter registration list maintenance.

As discussed in the section above addressing the Motion to Dismiss, the Court concludes that SEA 334 continues the violation of the NVRA that the Court determined existed under SEA 442. Section 5.5(f)(2) allows cancellation of voter registrations without direct contact from the voter and without the NVRA's notice-and-waiting protection. As the Seventh Circuit succinctly explained, the NVRA "does not set an accuracy threshold; it relies instead on follow-up with the individual voter." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 959 (7th Cir. 2019). That "follow-up with the individual voter" is still lacking under Section 5.5(f)(2) of SEA 334.

The Defendants argue that the Court should read Section 5.5(f)(2) in conjunction with Section 5.5(f)(1) to find that Section 5.5(f)(1) implies that under Section 5.5(f)(2), if the Indiana Election Division notifies a county official that the voter cancelled registration, the Indiana Election Division also received a copy of the voter's signed voter registration application authorizing cancellation. However, implying this conclusion is contrary to the explicit language of Section 5.5(f)(2), which states, "[a] copy of the actual voter signature is not required to be provided to the county for the voter's status to be canceled if the written notice is forwarded by the election division," and no other sections of SEA 334 state or even imply that the Indiana Election Division receives a copy of the voter's signed voter registration application authorizing

22

cancellation.  There still is no direct contact with the registered voter, and there is no notice-and-waiting procedure implemented under Section 5.5(f)(2).  Therefore, the NVRA still is violated by the Indiana statute.

The Plaintiffs are not, contrary to the Defendants' assertion, trying to change their theory of liability or amend their claims by filing for summary judgment on SEA 334.  The Plaintiffs' claims and theories still focus on Indiana's election laws violating the requirements of the NVRA for direct contact with the registered voter or utilizing the notice-and-waiting procedure. The Plaintiffs are not required to file a new lawsuit to challenge SEA 334.

Regarding the Defendants' argument that summary judgment is inappropriate because they are not the individuals who implement or enforce SEA 334 as the county election officials actually perform the maintenance of voter registration lists, the Court already has considered and rejected this argument.

> The Defendants are the NVRA officials in the state and are responsible for the state's compliance with the NVRA. Furthermore, they establish the guidelines, policies, and procedures for maintaining the state's voter registration rolls. The local county election officials are required to follow the Defendants' directives. Therefore, the injury in this case is fairly traceable to the named Defendants.

(Filing No. 63 at 21.)  The Defendants' reliance on *Ex parte Young* concerning sovereign immunity and summary judgment also is unavailing.  The named Defendants are directly responsible for implementing SEA 334, and the prospective relief sought by the Plaintiffs is permissible.  *See McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'").

Based on this Court's prior analyses and conclusions when issuing the preliminary injunction and the Seventh Circuit's guidance and decision when affirming the issuance of the preliminary injunction, and based on the designated evidence before the Court, the Court concludes that SEA 334 violates the NVRA by allowing cancellation of a voter's registration without direct contact with the registered voter and without utilizing the notice-and-waiting procedures. Therefore, the Court determines that summary judgment in favor of the Plaintiffs is appropriate.

The facts and evidence supporting the issuance of injunctive relief have not changed since the issuance of the preliminary injunction. Therefore, the Court adopts in full its analyses and conclusions found in the preliminary injunction Order (*see* Filing No. 63 at 13–28).

> As has been held by numerous other courts, a violation of the right to vote is presumptively an irreparable harm. *See, e.g.*, *Frank*, 196 F. Supp. 3d at 917; *Browning*, 863 F. Supp. 2d at 1167. Because an individual cannot vote after an election has passed, it is clear that the wrongful disenfranchisement of a registered voter would cause irreparable harm without an adequate remedy at law. The Court also agrees that "conduct that limits an organization's ability to conduct voter registration activities constitutes an irreparable injury." *Project Vote, Inc.*, 208 F. Supp. 3d at 1350.

(Filing No. 63 at 25–26.) Remedies available at law cannot adequately compensate for the wrongful disenfranchisement of voters or the curtailment of voter registration activities and other similar civic engagement activities.

> The Court finds that the balance of equities weighs heavily in favor of granting an injunction. Plaintiffs' members and the voters they seek to assist face the imminent and irrevocable consequence of disenfranchisement of thousands of Indiana voters, only months before a federal election. In contrast, Defendants would face only the prospect of [having to comply with the requirements of the NVRA].
> . . . An injunction prohibiting the implementation of SEA [334] will not impose any new or additional harm or burdens on the Defendants concerning their efforts to maintain accurate voter registration rolls and to ensure fair elections. The Defendants still have numerous ways that comply with the NVRA to clean up the state's voter registration rolls. On the other hand, not issuing an injunction and allowing SEA [334] to be implemented risks the imposition of significant harm on Plaintiffs and their members through the disenfranchisement of rightfully registered voters.

24

*Id.* at 26–27.

The public interest would not be disserved by a permanent injunction in this case. "[A]llowing eligible voters to exercise their right to vote without being disenfranchised without notice" is a significant public interest. *Id.* at 27.  Furthermore,

> If a voter is disenfranchised and purged erroneously, that voter has no recourse after Election Day. While the Defendants have a strong public interest in protecting the integrity of voter registration rolls and the electoral process, they have other procedures in place that can protect that public interest that do not violate the NVRA.

*Id.*

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' Motion to Dismiss (Filing No. 134) and **GRANTS** the Plaintiffs' Motion for Summary Judgment (Filing No. 136).  The Court **ISSUES A PERMANENT INJUNCTION** prohibiting the Defendants from implementing SEA 334 §§ 5.5(d)–(f) and prohibiting the Defendants from otherwise removing any Indiana registrant from the list of eligible voters because of a change in residence absent: (1) a request or confirmation in writing directly from the voter that the voter is ineligible or does not wish to be registered; or (2) the NVRA-prescribed process of (a) notifying the voter, (b) giving the voter an opportunity to respond, and (c) then waiting two inactive federal election cycles.  The trial and final pretrial conference are hereby **VACATED**.  Final judgment will issue under separate order and all other pending motions are terminated.

**SO ORDERED.**

Date:  8/20/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

25

DISTRIBUTION:

Courtney Lyn Abshire
INDIANA ATTORNEY
GENERAL
courtney.abshire@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY
GENERAL
Jefferson.Garn@atg.in.gov

Rebecca L. McClain
INDIANA ATTORNEY
GENERAL
rebecca.mcclain@atg.in.gov

Diana Lynn Moers
INDIANA ATTORNEY
GENERAL
diana.moers@atg.in.gov

Aleksandrina Penkova Pratt
INDIANA ATTORNEY
GENERAL
aleksandrina.pratt@atg.in.gov

Kelly Suzanne Thompson
INDIANA ATTORNEY
GENERAL
kelly.thompson@atg.in.gov

Trent A. McCain
MCCAIN LAW OFFICES, P.C.
Trent@McCain.Law

Ellison Sylvina Ward Merkel
QUINN EMANUEL URQUHART &
SULLIVAN LLP
ellisonmerkel@quinnemanuel.com

Myrna Perez
BRENNAN CENTER FOR JUSTICE
perezm@brennan.law.nyu.edu

Sascha N. Rand
QUINN EMANUEL URQUHART &
SULLIVAN LLP
sascharand@quinnemanuel.com

Eliza Max Sweren-Becker
BRENNAN CENTER FOR JUSTICE
eliza.sweren-becker@nyu.edu

Ellyde R. Thompson
QUINN EMANUEL URQUHART &
SULLIVAN LLP
ellydethompson@quinnemanuel.com

Alexandre J. Tschumi
QUINN EMANUEL URQUHART &
SULLIVAN LLP
alexandretschumi@quinnemanuel.com